**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone:  (818) 609-0807
Facsimile:   (818) 609-0892
sahagii@aol.com

Attorneys for Plaintiff, FRANCISCO J. CISNEROS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO J. CISNEROS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>Defendants | Case No. **2:19−cv−02798−VAP-SP**<br><br>Assigned to Hon. Virginia A. Phillips<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>***(Filed concurrently with the Declarations of Marcus J Bradley, Esq. Plaintiff Francisco J. Cisneros and Sean Hartranft of ILYM Group and [Proposed] Order)***<br><br>**Date:   March 29, 2021**<br>**Time:   2:00 p.m.**<br>**CR:      8A** |

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE THAT** on March 29, 2021 at 2:00 p.m. at the United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 8A, 8th Floor, Los Angeles, California, Plaintiff Francisco Cisneros, ("Plaintiff") individually and on behalf of those similarly situated, and Airport Terminal Services, Inc. ("Defendant") (collectively "Parties") hereby move this Court to:

1.	Grant preliminary approval of the class action settlement reached between the Parties as set forth in the Joint Stipulation of Class Action and PAGA Settlement and Release of Claims (hereinafter "Joint Stipulation") which is attached as Exhibit 1 to the Declaration of Marcus J. Bradley, filed concurrently herewith in support of Plaintiff's Motion for Preliminary Approval of Class and Representative Action Settlement ("Bradley Decl.");

2.	Conditionally certify the Class for settlement purposes, defined as: "all current and former non-exempt employees who currently work or formerly worked for Defendant in California at any time from November 27, 2014 through the date of preliminary approval of the settlement. (the "Settlement Period");

3.	Approve the Notice of Settlement of Class and Representative Action (in the form set forth as Exhibit A to the Joint Stipulation);

4.	Approve Francisco Cisneros as the Class Representative;

5.	Approve Bradley/Grombacher LLP and the Law Offices of Sahag Majarian II as Class Counsel;

6.	Approve ILYM Group, Inc., as the Settlement Administrator;

7.	Schedule the date for the final approval hearing; and

8.	Enter the [Proposed] Order Preliminarily Approving Class and Representative Action Settlement Agreement filed herewith.

NOTICE OF MOTION & MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

CASE NO. 2:19−CV−02798−VAP-SP

9.     This motion is unopposed as based on the Settlement Agreement.  This Motion is made on the grounds that:

a.     The Settlement Class meets all of the requirements for class certification for purposes of settlement pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

b.     The Settlement is fair, adequate and reasonable as required under Rule 23(e) of the Federal Rules of Civil Procedure;

c.     Plaintiff and his counsel are adequate to represent the Settlement Class as required by Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

d.     The notice procedures and related forms comport with all relevant due process requirements and the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

e.     Based on the foregoing, notice should be directed to Class Members and a final fairness hearing should be scheduled.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class and Representative Action Settlement; (3) the Declarations of Marcus Bradley, Francisco Cisneros and Sean Hartranft; (4)  Joint Stipulation of Class Action and PAGA Settlement and Release of Claims; (5) the Notice of Class and Representative Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class and Representative Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Further, pursuant to Central District Local Rule 11-6, Plaintiff respectfully requests that this Court grant Plaintiff relief from the twenty-five-page (25) limit and permit the filing of the attached Memorandum of Points and Authorities not to exceed

1  thirty (30) pages.  Such additional page length is needed to fully address the issues

2  raised in this motion.

3

4

5  DATED:  February 19, 2021          **BRADLEY/GROMBACHER, LLP**
                                       **LAW OFFICES OF SAHAG MAJARIAN II**

6

7                                      By:  /s/ *Marcus J. Bradley*

8                                           Marcus J. Bradley, Esq.
                                            Kiley L. Grombacher, Esq.

9                                           Lirit A. King, Esq.
                                            Sahag Majarian II, Esq.

10

11                                          Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND................................2

        A.      Background .................................................................................2

        B.      Investigation ...............................................................................3

        C.      Settlement Negotiations ..............................................................3

III.    SUMMARY OF SETTLEMENT ..........................................................3

        A.      The Proposed Class ....................................................................3

        B.      Settlement Terms ........................................................................3

                1.      Class Representative's General Release Payment.................4

                2.      Attorneys' Fees and Costs.......................................…....….4

                3.      Payment to the LWDA and PAGA Releasees ......................4

                4.      Settlement Administration Expenses...............................….5

                5.      Settlement Payments to Class Members...........................….5

                6.      Released Claims....................................….......…....……7

IV.     ARGUMENT ....................................................................….….8

        A.      The Court Should Conditionally Certify the Proposed Settlement Class ..8

        B.      The Settlement Class is Sufficiently Numerous and Ascertainable ...10

        C.      There Are Questions of Law and Fact Common to the Class ............10

        D.      The Representative Plaintiff's Claims Are Typical of the Claims of the Class ............................................................................................11

        E.      The Named Plaintiff Is Adequate to Represent the Settlement Class......13

        F.      The Class Can Be Conditionally Certified Because the Requirements of Rule 23(b)(3) Are Satisfied ..................................................14

                1.      Common Issues of Law and Fact Predominate………………………………………..........14

                2.      The class action mechanism is superior to any other methods of adjudication………………………..…….............15

1

G.   The Proposed Class Action Settlement Should Receive Preliminary Approval................................................................................15

2

3

1.   The Court's Scrutiny of the Proposed Settlement is Lowered at the Preliminary Approval Stage.....................15

4

2.   The Proposed Settlement Meets the Preliminary Approval Standards.................................................................. 15

5

6

3.   The Proposed Class Action Settlement is Procedurally Fair, Adequate, and Reasonable.........................................17

7

a.   The Settlement is the Product of Arms'-Length Negotiations and is Therefore Entitled to a Presumption of Fairness...17

8

9

b.   There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members.......18

10

c.   The Parties Conducted a Throrough Investigation of the Factual and Legal Issues.................................18

11

d.   Defendant Has Asserted Defenses That Create Risk That the Class Will Receive No Recovery If the Claims at Issue are Not Settled.................................................18

12

13

e.   Exposure Analysis..............................................21

14

f.   The Proposed Settlement is Substantively Within the Range of Reasonableness......................................29

15

16

g.   The Proposed Class Notice Adequately Informs Class Members about the Case and Proposed Settlement .......27

17

18

V.   CONCLUSION.....................................................................29

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**State Cases**

*Duran v. U.S. Bank National Assn.,*
   (2014) 59 Cal. 4th 1…………………………………….…..…..………22

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
   (2007) 42 Cal.4th 554……………………………………………... 23

*Neary v. Regents of University of California,*
   (1992) 3 Cal. 4th 273.. .......................................................................27

**Federal Cases**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)……………………………………..…….…..8, 9

*Betorina v. Randstad US, L.P.,*
   No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017)…………12

*Blackwell v. Skywest Airlines, Inc.,*
   245 F.R.D. 453 (S.D. Cal. 2007)……………………………………26

*Brown v. Fed. Express Corp., .*
   249 F.R.D. 580 (C.D. Cal. 2008)……………………….…………….26

*Carter v. Anderson Merchandisers, LP,*
   2010 WL 144067 (C.D. Cal. Jan. 7, 2010)…………………….…16

*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010)…………………………………16

*Churchill Vill. L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004)…………………………….…………15

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992)…………………………………15, 16

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
258 F.R.D. 545  (N.D. Ga. 2007).....................................................................8

*Costelo v. Chertoff*,
258 F.R.D. 600 (C.D. Cal. 2009) ...................................................................12

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).............................................................................17

*Dearaujo v. Regis Corp.*,
No. 2:14-CV- 01408-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016)................................................................................................................9

*Eddings v. Health Net, Inc.*,
2013 WL 169895 (C.D. Cal. Jan. 16, 2013) ..................................................15

*Edwards v. Nat'l Milk Producers Fed'n*,
2014 WL 4643639 (N.D. Cal. Sept. 16, 2014) ..............................................10

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156,  94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)................................28

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)..........................................................................11

*Evon v. Law Offices of Sidney Mickell*,
 F.3d 1015 (9th Cir. 2012)..............................................................................13

*Gonzalez v. Officemax N. Am.*,
2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) .............................26

*Hurst v. Buczek Enters.*, LLC,
870 F. Supp. 2d 810 (N.D. Cal. May 2, 2012)...............................................20

*In re Amtrak Train Derailment in Philadelphia, Pennsylvania*,
No. 15-MD-2654, 2016 WL 1359725 (E.D. Pa. Apr. 6, 2016) ........................9

*In re Apple Computer, Inc. Derivative Litig.*,
No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008 ..............................................................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)..................................................................18

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ...............................................................8

*In re Processed Egg Prod. Antitrust Litig.*,
   No. 08-MD-2002, 2014 WL 828083 (E.D. Pa. Feb. 28, 2014) .............9

*In re Synocor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008).................................................................16

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................17

*International Union of Operating Engineers-Employers Canst. Industry*
   *Pension, Welfare and Training Trust Funds v. Karr*,
   994 F. 2d 1426 (9th Cir. 1993).................................................................8

*Jimenez v. Allstate Ins. Co.*,
   2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012).......................26

*Kenny v. Supercuts, Inc.*,
   252 F.R.D. 641 (N.D. Cal. 2008)............................................................26

*La Fleur v. Medical Management Intern, Inc.*,
   No. 13-00398-VAP, 2014 WL 2967475 (C.D. Cal. June 25, 2014) ...................18

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998).................................................................27

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)...........................................................15, 25

*Ogiamien v. Nordstrom, Inc.*,
   2015 U.S. Dist. LEXIS 22128; 165 Lab. Cas. (CCH) P36, 317
   (C.D. Cal. February 24, 2015).................................................................21

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014)...................................................................10

*Prods. Liab. Litig.* ("*Volkswagen*"),
   2016 WL 4010049 (N.D. Cal. July 26, 2016)......................................................17

*Quinlan v. Macy's Corp. Servs., Inc.,*
   2013 U.S. Dist. LEXIS 164724 (C.D. Cal. 2013)...............................................21

*Radcliffe v. Experian Info. Sols. Inc.,*
   715 F.3d 1157 (9th Cir. 2013)..............................................................................13

*Reber v. Aimco/Bethesda Holdings, Inc.,*
   2008 U.S. Dist. LEXIS 81790 (C.D. Cal. August 25, 2008) ..............................20

*Rodriguez v. West Pub. Corp.,*
563 F.3d 948 (9th Cir. 2009) ...................................................................................25

*Simpson v. Fireman's Fund Ins. Co.,*
   231 F.R.D. 391 (N.D. Cal. 2005)..........................................................................12

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011)...............................................................................14

*Stiller v. Costco Wholesale Corp.,*
   298 F.R.D. 611 (S.D. Cal. 2014)..........................................................................21

*Torres v. Mercer Canyons Inc.,*
   835 F.3d 1125.........................................................................................................11

*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S. Ct. 1036 (2016) ..........................................................................................10

*Van Brokhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976).................................................................................16

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)...................................10

*Weeks v. Kellogg Co.,*
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)......................................................16

*Wolin v.  Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010)...............................................................................10

*Zinser v. Accufix Research Inst.,*
    253 F.3d 1180 (9th Cir. 2001).................................................................................9

**Statutes**

Cal. Lab. Code § 203(a)..............................................................................................21

Cal. Lab. Code § 226(e)..............................................................................................20

Cal. Lab. Code § 226(a)(2).........................................................................................13

Cal. Lab. Code § 510(b)..............................................................................................20

**Rules**

Fed. R. Civ. P. 23(a) ...............................................................................................9, 11

Fed. R. Civ. P. 23(c)(2)...............................................................................................28

Fed.R.Civ. P. 23(b)(3)(A)-(D)....................................................................................15

Fed. R. Civ. P. 23(a)(1)...............................................................................................10

Fed. R. Civ. P. 23(a)(2).........................................................................................10, 11

Fed. R. Civ. P. 23(a)(3)...............................................................................................11

Fed. R. Civ. P. 23(a)(4)...............................................................................................13

Fed. R. Civ. P. 23(b)(3) .............................................................8, 9, 10, 14,  15

Fed. R. Civ. P. 23(c)(2).........................................................................................27, 28

Fed.R.Civ.P. 23(e). .....................................................................................................16

**Other Authorities**

Newberg on Class Actions § 11.25 (4th ed. 2002)................................................15, 16

Newberg on Class Actions § 13:18 (5th ed.)................................................................9

Manual for Complex Litigation (4th ed. 2004) ...........................................................28

Manual for Complex Litigation, Third (Fed. Judicial Center 1995).........................28

I.    **INTRODUCTION**

Plaintiff Francisco J. Cisneros ("Plaintiff"), a former non-exempt employee of Defendant Airport Terminal Services, Inc., ("Defendant") (collectively referred to as the "Parties") now seek preliminary approval of the Parties' Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Joint Stipulation"). The proposed settlement is a non-reversionary $700,000.00 Gross Settlement Amount ("GSA") on behalf of approximately 2,271 class members. The proposed Class is defined as "all current and former non-exempt employees who currently work or formerly worked for Defendant in California at any time from November 27, 2014 through the date of preliminary approval of the settlement."[1] Participating Class Members[2] will automatically receive a pro rata share of the settlement funds without submitting a claim.

Assuming each Class Member participates in the Settlement, the Settlement is projected to pay each Class Member an estimated average net amount of $189.70[3], less employee taxes for the wages portion of the individual settlement share. The proposed Settlement was reached after considerable investigation – including the analysis of Defendant's employment policies, time keeping policies, and payroll records. The Settlement is reflective of the strengths and vulnerabilities of Plaintiff's case, the risks of class certification, as well as the risks of proceeding on the merits of the claims. When taking these risks into account, the proposed Settlement is in the best interests of the Class. Therefore, Plaintiff respectfully requests that the Court

---

[1] *Pederson v. Airport Terminal Services, Inc.,* Central District of California Case No. 5:15-cv-02400-VAP-SP, is a previously settled class action settlement had been granted preliminary approval on April 5, 2018. While the statutory period in the present case extends to November 27,2014, the class period commences on April 6, 2018 given the claims, with the exception of the background check claims, were released up to April 5, 2018.

[2] Participating Class Members are all Class Members who do not submit a valid and timely request to exclude themselves from the Settlement. *See* Agreement at Section I, paragraph HH.

[3] $430,815.16 Net Settlement Amount /2,271 Class Members.

grant preliminary approval of the Settlement, approve the Class Notice, appoint ILYM Group, Inc., as the Settlement Administrator, appoint Plaintiff as the Class Representatives, appoint Plaintiff's counsel as Class Counsel, and schedule a Final Approval Hearing.

Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA, Settlement Administration Costs, and the Plaintiff's Incentive Payment Award, the Net Settlement Fund will be distributed to all Participating Class Members.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant delivers services to the aviation community and serves approximately fifty (50) airports in the United States and Canada, and has over 3000 employees. Defendant provides ground handling services, hospitality, and VIP travel services to airlines and airports. Defendant employs non-exempt hourly employees at each of these locations. Plaintiff worked for Defendant at the LAX location.

### A.    Background

This lawsuit was initially filed by Plaintiff in the Los Angeles County Superior Court on November 27, 2018. On or about March 26, 2019, Plaintiff filed a First Amended Complaint.

Defendant removed the lawsuit to the United States District Court Central District of California on April 11, 2019 and answered the operative First Amended Complaint on May 17, 2019.

After the initial exchange of information, the Parties agreed to schedule a mediation, sought availability from mutually agreeable mediators, and were provided available mediation dates in February 2020. On July 15, 2019, the Court stayed the Action to permit the Parties to attempt to mediate the matter. The Parties subsequently met and conferred on numerous occasions and continued to discuss Plaintiff's claims and Defendant's defenses.

### B.    Investigation

Prior to mediation, Defendant produced documents related to its wage and hour policies, including meal and rest breaks, time keeping policies, electronic time and wage records, and its business organization charts.

### C.    Settlement Negotiations

On February 28, 2020, the Parties participated in a mediation. The Parties engaged in extensive, arm's-length negotiations mediated by respected wage and hour mediator, Lisa Klerman. After considerable negotiation, the Parties reached an agreement in principle to settle the case, the terms of which were negotiated over the following weeks and finalized in Agreement the Parties now ask the Court to preliminarily approve. *See* Declaration of Marcus J. Bradley, Exhibit 1 (Agreement).[4]

## III.    SUMMARY OF SETTLEMENT

The principal terms of the Agreement are as follows:

### A.    The Proposed Class

The Agreement proposes a Settlement Class comprised of: "any individual who is or was employed as a non-exempt employee by Defendant in the State of California at any time between November 27, 2014, through the date of a Preliminary Approval Order (the "Class Period")." (*See* Agreement at 1.1.7.) There are approximately 2,271 individuals who fall within this class definition.

### B.    Settlement Terms

Under the Agreement, Defendant will pay $700,000.00 to fully and finally settle this matter. This is the total amount Defendant can be required to pay under this agreement, with the exception of Employer payroll taxes, which will remain Defendant's exclusive responsibility and will be paid by Defendant separate and apart from the GSA. No portion of the GSA will revert to Defendant for any reason. The following deductions from the GSA will be made, subject to the Court's approval:

---

[4] All citations to the Agreement in **Exhibit 1** will be "Agreement, [insert]."

### 1.    Class Representatives Incentive Payment

Subject to Court approval, Plaintiff shall receive a payment not to exceed $5,000.00 in consideration for a general release of all claims against Defendant. If the amount awarded is less than the amount requested, the difference shall become part of the Net Settlement Amount ("NSA"). The payment is in consideration for a general release of Plaintiff's claims against Defendant. (*See* Agreement, 6.3.)

Moreover, as representative for the absent Class Members, Plaintiff risked a potential judgment taken against him for attorneys' fees and costs if this matter had not been successfully concluded. Case law holds that a losing party is liable for the prevailing party's costs.

### 2.    Attorneys' Fees and Costs

Subject to Court approval, Plaintiff's Counsel will request an award of attorneys' fees in an amount of $233,333.33 (33 1/3% of the GSA.) (*See* Agreement, 5.3.1.) This includes work remaining in documenting the settlement, securing Court approval, ensuring the settlement is fairly administered, and obtaining dismissal of the action. Also, subject to Court approval, Plaintiff's Counsel shall request a reimbursement from the GSA for actual litigation costs in an amount not to exceed $20,000.00[5]. *See* Agreement, Section 5.3.1.

### 3.    Payment to the LWDA and PAGA Releasees

Subject to Court approval, the Agreement allots $30,000.00 to PAGA penalties. Seventy-five percent (75% or $22,500.00) of the PAGA Payment shall be paid to the Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25% or $7,500.00) of the PAGA Payment will be distributed to the PAGA Releasees. The PAGA Releasees are those individuals who were employed by Defendant in California at any time as a non-exempt warehouse employee from November 27, 2017 through the date of a Preliminary Approval Order. (*See* Agreement, 1.19. Each PAGA Releasee will receive his or her pro rata share of 25%

---

[5] Currently, Plaintiff's Counsel's costs are $8,351.16.

of the PAGA Payment. PAGA Penalty Fund is to be distributed to PAGA Members as Individual PAGA Payments, based on the pro rata number of workweeks individual PAGA Members worked during the PAGA Period. (*See* Agreement 5.3.3.)

### 4.    Settlement Administration Expenses

After obtaining competing bids from multiple administrators, the Parties have agreed to the appointment of ILYM Group, Inc. ("ILYM") as the settlement administrator. ILYM is an experienced class administration company that has acted as claims administrator in numerous wage and hour cases. The Agreement allots an amount not to exceed $22,500.00 to administer the Settlement and ILYM's bid is capped at $22,500.00. *See* Declaration of Sean Hartranft re: Qualifications of ILYM Group, Inc as Settlement Administrator, ¶ 9.

The Administration Costs will be paid from the GSA. If ILYM's actual costs or the amount awarded is less than the amount allotted in the Agreement, the difference shall become part of the NSA and distributable to Participating Class Members. These costs are reasonable, as ILYM will mail notice packets to the class, maintain a website which has information about the Settlement and links to the settlement documents, and keep track of objections and requests for exclusion from the Settlement. Should preliminary and final approval be granted by the Court, ILYM will work with the Parties to facilitate the funding of the GSA, disbursement of all Court-approved payments, and disbursement of the NSA to Participating Class Members. (Hartranft Decl. ¶ 3-8.)

### 5.    Settlement Payments to Class Members

After all deductions have been made, it is estimated that a net average of $189.70.00 will be available for disbursement to Participating Class Members. The money available for payout to these individuals comes out of the NSA, which is what remains of the GSA after subtracting all Court approved attorneys' fees and costs, the Class Representative General Release Payments, Administration Costs, and the PAGA Payment. Each individual Settlement Share will be calculated as follows:

The Net Settlement Amount shall be allocated among Settlement Class Members by (i) calculating the total number of workweeks all Settlement Class Members worked during the period from November 27, 2014, through the date of a Preliminary Approval Order[6], (ii) determining the number of Settlement Class Members hired on or after March 26, 2017, and multiplying that number by five, and (iii) adding the two sub-totals to determine the "Total Settlement Class Member Shares." *(See* Agreement, 5.4.1).

Twenty percent (20%) of each Individual Settlement Share is intended to settle claims for unpaid wages and will be reported on an IRS Form W2, subject to all tax withholdings customarily withheld from an employee's wages. The remaining eighty percent (80%) will be allocated as interest and penalties and is intended to settle the non-wage claims for interest and penalties and will be reported on IRS Form 1099. (*See* Agreement, 5.4.)

### a.    Funding and Distribution of Settlement Funds

Subject to the Court's final approval and provided that there are no objections or appeals to the Court's Final Approval Order and Judgment, the GSA shall be funded by Airport Terminal Services within 15 business days after the Effective Final Settlement Date[7]. (*See* Agreement, 5.2.).

---

[6] The parties weighted the Agreement to resolve the Class Member claims occurring in the estimated 82,190 workweeks worked by Class Members following the preliminary approval of the settlement in the *Pederson* matter. To the extent that the number of workweeks worked by Class Members through the date of a Preliminary Approval Order exceeds 82,190 plus 10 % (or 90,409) workweeks, Defendant shall have the option to abridge the Settlement Class Members' Released Claims to include only through the pay period in which 90,409 workweeks after the *Pederson* preliminary approval order have been worked by Settlement Class Members or to increase the Gross Settlement Amount in proportion to the increase in workweeks in excess of 90,409.

[7] "Effective Date" means the later of 10 days after (a) the expiration of the time for any notice of intention of a post-judgment motion to be filed following a Final Approval Order or judgment, (b) if an objection has been made or a motion to intervene has been filed, the expiration of the time to appeal a Final Approval Order or judgment, or (c) if a post-judgment motion or appeal has been filed, the time a Final Approval Order or judgment is no longer appealable and constitutes a "final judgment" for purposes of res judicata or collateral estoppel. (*See* Agreement, 1.12).

### b.    Uncashed Checks and Cy Pres Beneficiary

Pursuant to the Agreement, all uncashed or undeliverable settlement checks will expire after 180 days after the postmarked date of mailing. At that time, the sum value of all expired checks will be tallied by the Administrator, who will direct the principal for any undeliverable or otherwise uncashed settlement checks to the California Secretary of State Unclaimed Property Fund or as otherwise approved by the Court in the Final Approval Order.

### 6.    Released Claims

In exchange for Defendant's promise to make the payments provided for in the Agreement, as of the Effective Final Settlement Date, Participating Class Members will release any and all claims or causes of action that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, including, but not limited to, any claims under federal law and state law for unpaid wages or overtime, meal or rest break violations, inaccurate wage statements, untimely payment of wages, or violation of the applicable Wage Order or Labor Code sections 200-204, 210, 216, 218.5, 218.6, 225.5, 223, 226, 226.3, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197, 1198, and 2802, violations of the *Fair Credit Reporting Act*, 15 U.S.C. §§ 1681 *et seq.* (FCRA), *Investigative Consumer Reporting Agencies Act*, Civ. Code §§ 1786 *et seq.* (ICRAA), and *Consumer Credit Reporting Agencies Act*, Civ. Code §§ 1785 *et seq.* (CCRAA), based on allegedly non-compliant disclosures, and any claims under *Business and Professions* Code section 17200 *et seq.* or *Labor Code* section 2698 *et seq.* based on alleged violations of these provisions. PAGA Members hereby fully release Defendant, and each Released Party from any and all claims or causes of action under Labor Code section 2698 *et seq.* that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, for alleged violations of the above Labor Code provisions. Only Plaintiff has agreed to a general release of all claims, including a waiver under California *Civil Code* section 1542.

Courts routinely approve releases of claims that were, or likely would have been, denied certification for purposes of litigation. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); see also See, e.g., *In re Initial Pub. Offering Sec. Litig*., 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of a settlement class that included certain members who had been excluded from the litigation class on grounds of "predominance") (citing *In re Initial Pub. Offering Sec. Litig.,* 226 F.R.D. at 194-95 (reasoning that the "predominance" and "manageability" concerns under Rule 23(b)(3) were intertwined and because the litigation was no longer going to trial, manageability was no longer an issue, and the "predominance defect [] no longer fatal")); *Columbus Drywall & Insulation, Inc. v. Masco Corp*., 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (certifying a settlement class in an antitrust case despite noting serious questions about whether a litigation class could be certified; finding "that the fact of settlement is relevant to the decision to certify a class" and that "Courts have, thus, certified classes at the settlement stage noting that such a certification does not present the same problems that certification of a litigation class proposing the same class definition would present").

Accordingly, the release in the Settlement Agreement is narrowly tailored to the claims alleged in the Action, or which could have been alleged in the Action. See *International Union of Operating Engineers-Employers Canst. Industry Pension, Welfare and Training Trust Funds v. Karr*, 994 F. 2d 1426, 1430 (9th Cir. 1993) ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action").

## IV.  **ARGUMENT**

### A.  **The Court Should Conditionally Certify the Proposed Settlement Class**

The Parties seek conditional certification of a Settlement Class defined as:

"All non-exempt employees who were employed by Defendant in California at any time between November 24, 2014 through the date of a Preliminary Approval Order."  A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3).  *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Courts often "declin[e] to treat formal class certification as a prerequisite for preliminary approval and undertak[e] a more cursory class certification analysis at the preliminary approval stage." Newberg on Class Actions § 13:18 (5th ed.) (*citing*, *e.g.*, *Dearaujo v. Regis Corp.*, No. 2:14-CV- 01408-KJM-AC, 2016 WL 3549473, at *6 (E.D. Cal. June 30, 2016) ("[D]espite the Supreme Court's cautions in *Amchem* . . . , a cursory approach appears the norm."); *In re Amtrak Train Derailment in Philadelphia, Pennsylvania*, No. 15-MD-2654, 2016 WL 1359725, at *4 (E.D. Pa. Apr. 6, 2016) ("[A] settlement class can be preliminarily certified based on a less rigorous analysis than that necessary for final certification."); *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2014 WL 828083, at *2 (E.D. Pa. Feb. 28, 2014) (at the preliminary approval stage, "the Court must determine whether the proposed class should be conditionally certified, and leave the final certification decision for the Fairness Hearing.").

Under even the most stringent standards, the present case satisfies all of the necessary requirements of Federal Rule of Civil Procedure 23(a):  Defendant's records show that the Class consists of 2,271 individuals, making joinder of all Class Members impracticable.  Further, because all Class Members are either current or former employees of Defendant, the Settlement Class is readily ascertainable from its regular business records.  The California and Federal statutes relating to each of Plaintiff's claims apply with equal force and effect to all Class Members, and Plaintiff's wage and hour claims and background check claims are typical of the proposed Settlement Class because they arise from the same factual basis and are

1    based on the same legal theories applicable to the other Class Members.  Finally,

2    Plaintiff is represented by competent counsel who have extensive experience in

3    litigating wage and hour class action cases. (*See* Bradley Decl. ¶¶ 39-48.)

4         Plaintiff also satisfies Rule 23(b)(3), as the "proposed classes are sufficiently

5    cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v.*

6    *Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  Finally, the potential for many lawsuits

7    for small amounts, resulting in potentially inconsistent rulings, makes class-wide

8    resolution a favored and superior method of adjudication.  Se*e Wolin v. Jaguar Land*

9    *Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (finding that superiority

10   is satisfied where the court finds that maintenance of the litigation as a class action

11   is efficient and fair).  A class action is therefore the most advantageous method of

12   dealing with the claims of the Settlement Class Members.

13        **B.    The Settlement Class is Sufficiently Numerous and Ascertainable**

14        Rule 23(a)(1) requires the class to be "so numerous that joinder of all

15   members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). As noted above, with an

16   estimated 2,271 potential participating class members, joinder is impracticable.

17   *Edwards v. Nat'l Milk Producers Fed'n*, 2014 WL 4643639, at *4 (N.D. Cal. Sept.

18   16, 2014) ("Although there is no absolute minimum number of plaintiffs necessary

19   to demonstrate that the putative class is so numerous so as to render joinder

20   impracticable, joinder has been deemed impracticable in cases involving as few as

21   25 class members[.]" (internal quotation marks and edits omitted)).

22        **C.    There Are Questions of Law and Fact Common to the Class**

23        Rule 23(a)(2) requires the existence of ─questions of law or fact common to

24   the class[.]‖ Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) even a single

25   common question will do." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359, 131

26   S. Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011) (internal quotation marks and brackets

27   omitted); *see Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (finding it is not

28   necessary "that every question in the case, or even a preponderance of questions, is

capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." (internal quotation marks omitted)).

Commonality requirement is satisfied in this action. Here, the Class claims of Defendant's employees turn upon answers to overarching common questions regarding Defendant's policies and procedures that are capable of class-wide resolution for settlement purposes. For settlement purposes, the common questions raised by employees, include: whether Defendant's meal period and rest break, timekeeping and compensation policies are compliant with California law and whether Defendant's uniform wage statements are compliant with California law. Because each and every member of the proposed Settlement Class, by definition, personally performed labor, each Settlement Class member was subject to the same policies and asserts the same types of injury arising from the same conduct by Defendant. Moreover, whether Defendant failed to make proper disclosures when conducting background checks subject the Class to the same policies and asserts the same types of injury arising from the same conduct by Defendant. Thus, these common questions establish Rule 23(a) commonality as to the Class.

### D. <u>The Representative Plaintiff's Claims Are Typical of the Claims of the Class</u>

Rule 23(a)(3) requires the representative parties' claims or defenses be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). This "serves to ensure that 'the interest of the named representative aligns with the interests of the class.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanlon*, 976 F.2d at 508). Rule 23(a)(3) requires that the class representative's claims are typical of the class.) "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). "Under the 'permissive standards' of this Rule, "representative claims

are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *18 (quoting *Hanlon*, 150 F.3d at 1020). The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

Here, Defendant's liability turns upon five principal courses of claimed conduct, each of which is shared by Plaintiff and the members of the putative Settlement Class:

(1)    "Off-the-Clock" Work:    Defendant required Plaintiff and Class Members to report and wait for a ride to their terminal location at the airport, including having to park their personal vehicle away from the airport and take a shuttle that would drop them off at the airport. Once at the airport, Plaintiff and the class members would have to wait for someone to give them a ride to their work stations. As a result, Plaintiff alleged that Defendant failed to pay employees any wages for time worked "off-the-clock."  Plaintiff's claim that these policies resulted in "off-the-clock" work is typical for all non-exempt employees because all non-exempt employees were allegedly subject to the same polices[8].

(2) Non-Compliant Meal and Rest Breaks Due to Under-Staffing and Production Requirements: Similarly, the understaffing allegations which resulted in break violations (both meal and rest) were also shared amongst Plaintiff and the members of the Class.  Throughout their employment, Plaintiff and the members of

---

[8] See e.g. *Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017) (Finding that the typicality requirement was satisfied because the Class Representatives, "possess the same interest as the putative Class because they were employed by Defendant as a non-exempt security guard employee and thus were entitled to all legally required meal and rest periods, reimbursement of business expenses, and overtime wages. Class Representatives also suffered the same injury as the putative Class: they were denied the legally required meal and rest periods and overtime wages and incurred unreimbursed business expenses, as a result of Defendant's uniform practice applicable to non-exempt security guard employees."

the class worked shifts, the duration of which entitled them to meal and/or rest breaks under California law. Yet, as a result of Defendant's alleged understaffing Plaintiff and the members of the Class claim they were denied timely and adequate break periods.

(3) <u>Wage Statement Claim</u>: Plaintiff also seeks redress based upon Defendant's wage statements. A derivative claim, the wage statement claim is based on Defendant's failure to include all wages owed.

(4) <u>Failure to Make Proper Background Check Disclosure Claim</u>: Plaintiff alleges that when he and the members of the FCRA Class applied for a position with Defendants that they were asked to execute a disclosure and authorization form so that Defendants could perform a background investigation. Plaintiff alleges that the form provided by Defendants for the background investigation does not meet the required disclosures and explanation of rights as required.

(5) <u>Violation of California *Labor Code* §2802</u>**:** TWS failed to reimburse and/or pay Cisneros and the other aggrieved employees for business related expenses, including cellular phones that were used to carry out job duties.

**E.    <u>The Named Plaintiff Is Adequate to Represent the Settlement Class</u>**

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (internal quotation marks omitted). "This requirement is rooted in due-process concerns— 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020).

In this case, there is no conflict of interest between the class representative and the proposed Settlement Class. *Villalpando*, 303 F.R.D. at 607. Furthermore, Plaintiff and class counsel are well qualified and willing to vigorously prosecute the interests of the Class. (Bradley Decl. at ¶37; Cisneros Decl. ¶18). The elements of *Federal Rules of Civil Procedure*, Rule 23(b)(3) are satisfied.

## F.    <u>The Class Can Be Conditionally Certified Because the Requirements of Rule 23(b)(3) Are Satisfied</u>

A class may be certified under Rule 23(b)(3) when "questions of law or fact common to the class members predominate over any questions affecting only individual members" and the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed.R.Civ.P. 23(b)(3). Here, both prongs of the Rule 23(b)(3) analysis are satisfied.

### 1.    Common Issues of Law and Fact Predominate

"The predominance inquiry ... asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). "The focus is on the relationship between the common and individual issues." *Id.* Here, common issues of law and fact clearly predominate over issues affecting only individual employees. The common issues include whether Defendant failed to pay for all time worked or failed to pay for all time paid after 8 hours at time and a half; whether Defendant's meal and rest break policies and procedures are compliant with California law; whether Class Members are owed waiting time penalties under *Labor Code* section 203; whether Defendant's uniform wage statements are compliant with California law; and whether Defendant conducted proper background checks. Each of these inquiries turns upon policies which apply across the board to Defendant's non-exempt employees. Moreover, to the extent that liability varies amongst members of the Settlement Class, the payment formula crafted by the Parties accounts for such.

### 2. The class action mechanism is superior to any other methods of adjudication.

Given the size of the class it is clear that the "superiority" element is satisfied. The fact that more than 2,271 individual claims "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" weighs heavily in favor of a class action. See *Hanlon* at 1023. Moreover, there is no indication that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason. Federal Rules of Civil Procedure, Rule 23(b)(3)(A)-(D).

### G. The Proposed Class Action Settlement Should Receive Preliminary Approval

#### 1. The Court's Scrutiny of the Proposed Settlement is Lowered at the Preliminary Approval Stage

At this preliminary approval stage, the Court determines whether the proposed settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval," such that it is worthwhile to give the class notice of the settlement and proceed to a formal fairness hearing. *Eddings v. Health Net, Inc.*, 2013 WL 169895, * 2 (C.D. Cal. Jan. 16, 2013); see also 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.25 (4th ed. 2002). The proposed settlement here meets all of these criteria.

#### 2. The Proposed Settlement Meets the Preliminary Approval Standards

The law favors the compromise and settlement of class-action suits. See, e.g., *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit

recognizes the "overriding public interest in settling and quieting litigation ... particularly ... in class action suits ..." *Van Brokhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); see also *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *10 (C.D. Cal. Nov. 23, 2013) (quoting *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)) ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026 (internal citations and quotations omitted). In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties ... [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (internal citations omitted); *Federal Rules of Civil Procedure*, Rule 23(e).

This determination involves a balancing of several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; [and] the extent of discovery completed'" among other factors. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850-51 (N.D. Cal. 2010) (quoting *Class Plaintiffs*, 955 F.2d at 1291).

At the preliminary approval stage, the Court need only find that the proposed settlement is within the "range of reasonableness" such that dissemination of notice to the class, and the scheduling of a fairness hearing, are appropriate. 4 Newberg § 11.25; see also *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067, at *4 (C.D. Cal. Jan. 7, 2010) *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80

(N.D. Cal. 2007). Preliminary approval of a proposed class action settlement is appropriate where: "[T]he proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. For several reasons, the instant settlement clearly meets the requirements for preliminary approval.

### 3.    The Proposed Class Action Settlement is Procedurally Fair, Adequate, and Reasonable

#### a.    The Settlement is the Product of Arms'-Length Negotiations and is Therefore Entitled to a Presumption of Fairness

In evaluating the Settlement for preliminary approval, the Court "first considers 'the means by which the parties arrived at settlement.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016).  "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here, the Parties participated in a full-day mediation session with Lisa Klerman, a well-respected mediator of wage and hour class actions.  Ms. Klerman helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides.  A mediator's participation weighs considerably against any inference of a collusive settlement. *See    In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.")  At all times, the Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiff was represented by Bradley/Grombacher LLP and The Law Offices of Sahag Majarian, firms that regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (*See* Bradley Decl. ¶¶39-48). Defendant was represented by Seyfarth Shaw LLP which operates a highly-respected nationwide class action defense practice.

As this Settlement is the "result of arms'-length negotiations by experienced class counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL 4010049, at *14 (internal citation omitted).

### b. There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at **14, 16. This Settlement contains no "glaring deficiencies" *Id*. at *14. The Settlement does not provide for a reversion of unpaid settlement funds to Defendant or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See Id*. at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)).

The Plaintiff will also seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive payment in the amount of $5,000 which is well within the range of such awards in the Ninth Circuit for his work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See*, *e.g.*, *La Fleur v. Medical Management Intern, Inc*., No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release).

### c.    The Parties Conducted a Thorough Investigation of the Factual and Legal Issues

The Settlement is the product of informed negotiations following extensive investigation by Plaintiff's Counsel.   During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law.   In the course of discovery, Class Counsel received and analyzed documents, *inter alia*, the following information and evidence with which to properly investigate and evaluate the claims, including: (1) Defendant's written policies regarding, e.g., meal and rest period policies, time-keeping, final pay, overtime and background checks; (2) wage statements; and (3) time and payroll records.

Overall, Class Counsel performed an exhaustive investigation into the claims at issue, which included: (1) determining Plaintiff's suitability as putative class representative through interviews, background investigation, and analysis of his employment files and related records; (2) evaluating all of Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing Defendant's labor policies and practices; (5) researching settlements in similar cases; (6) conducting a discounted valuation analysis of claims; (7) drafting the mediation brief; (8) participating in a full-day mediation session; and (9) finalizing the Settlement Agreement.   The extensive document and data exchanges have allowed Class Counsel to appreciate the strengths and weaknesses of the claims alleged against the benefits of the proposed Settlement.

### d.    Defendant Has Asserted Defenses that Create Risk that the Class will Receive No Recovery if the Claims at Issue are Not Settled

Throughout this litigation, Defendant has indicated that they intended to vigorously contest class certification and Plaintiff's claims on the merits.   While Plaintiff does not agree with Defendant's arguments regarding class certification or

their defenses on the merits to Plaintiff's claims, Plaintiff recognizes that there is a risk that the Court and/or a jury will agree with Defendant, and thus, limit or eliminate Class Members' ability to recover on the claims at issue.  A summary of the defenses on the merits that Defendant had asserted to Plaintiff's various claims include without limitation, the following:

### Plaintiff's Overtime and "Off the Clock":

- Employees were permitted to, and indeed have, worked overtime for which they were paid consistent with California law. Additionally, Defendant's policy is that all employees are paid for every minute worked with "off-the-clock" work strictly .

### Plaintiff's Direct Meal and Rest Break Claim:

- Defendant's meal and rest break policies comply with California law and breaks were indeed made available to employees.  Defendant argued that the issue of whether the employee chose not to take his or her meal is an individualized issue which would preclude class certification of the meal and rest break issues.

- Employees are required to take compliant meal and rest breaks under Defendant's policies.

### Plaintiff's Wage Statement Claim

- There is no evidence of a knowing and intentional violation of 226(a). See Cal. Lab. Code § 226(e); *Hurst v. Buczek Enters.*, LLC, 870 F. Supp. 2d 810, 829 (N.D. Cal. May 2, 2012) (finding that failure to provide compliant wage statements was not knowing and intentional and granting summary judgment on wage statement claim); *Reber v. Aimco/Bethesda Holdings, Inc.*, 2008 U.S. Dist. LEXIS 81790, at *25 (C.D. Cal. August 25, 2008) (same)

### Plaintiff's Separation Pay Claim

- To the extent this claim is alleged as a derivative claim, it fails for the same reasons as the underlying claims.

- This claim fails because even if Plaintiff's or Class Members were not paid all amounts owed at separation (which Defendant vehemently denies), there was a good faith dispute as to whether additional wages

are owed and Plaintiff cannot show that any such alleged underpayment was "willful" so as to justify the payment of penalties under California *Labor Code* section 203. *See Cal. Lab. Code* § 203(a) (requiring a "willful" violation to assert liability);

Furthermore, while Defendant has agreed to request certification for settlement purposes only, if the Settlement is not approved, Defendant has indicated that it intends to vigorously contest certification, which creates further risk for Class Members.

### e.    Exposure Analysis.

Based upon the analysis of a sampling of Defendant's business records, Plaintiff's counsel, in conjunction with an expert, Berger Consulting Group, determined the following:

**Meal and Rest Breaks:** The data produced indicated a low meal period violation rate. Indeed, the number of shifts over 6 hours are estimated that 30% of the shifts that are eligible for a meal period. Assuming Plaintiff achieved certification, proved these theories on the merits, and defeated all of Defendant's defenses, Class Members would be entitled to two premiums under Labor Code § 226.7.

Accordingly, Class Counsel were able to establish that there were some 25,800 instances when they might prove liability for premium wages om account of missed meals on a class-wide basis. Accordingly, Defendant's *maximum* exposure under Plaintiff's meal period claims is $442,212.00 [25,800 shifts x $17.14 avg. hourly rate x 1 premium]. Bradley Dec. ¶ 17.

At all times relevant, Defendant had facially compliant meal and rest period policies.  Further, Defendant argued that the rest and meal period claims were inherently unsuited for class treatment as they require an inquiry into which periods putative class members failed to take as well as why the period was not taken, which would devolve into an unmanageable series of mini-trials, devoid of common evidence. Employers are not required to record rest periods and such periods are paid.

Thus, unlike meal periods, were there are often records showing whether an employee clocked out or not, there is no such evidence to prove a missed rest period or that the employer refused to authorize and permit one. Managing such claims at trial has become exceedingly difficult. Plaintiff will depend on sample witness testimony and surveys to prove the claims. While a victory with such evidence is certainly possible, relevant caselaw makes such claims risky from a trial management and due process perspective. See *Duran v. U.S. Bank National Assn.*, 59 Cal. 4th 1, 31 (2014) (explaining "[I]f sufficient common questions exist to support class certification, it may be possible to manage individual issues through the use of surveys and statistical sampling."); *Tyson Foods, Inc. v. Bouphakeo* (2015) 136 S.Ct. 382; *Comcast Corporation v. Behrend* (2013) 133 S.Ct. 1426.

**"Off-The-Clock" Work:** For the "off-the-clock" (OTC) claim, Plaintiff's expert was provided with assumptions regarding the frequency as OTC is not recorded. I asked the expert to assume that the class worked OTC on average 5 minutes per shift waiting for a cart to transport employees to their work site. This resulted in 27,729 hours of unpaid time with a maximum potential exposure of $482,761.89. Again, given the lack of "control" over the employees, this claim was discounted by 90% resulting in value of $48,276.18.

**Unreimbursed Business Expenses:** Plaintiff also investigated a claim for unreimbursed business expenses based on the personal cellphone use for business purposes. Plaintiff claimed he was forced to use his cellphone to communicate with co-workers and his employer to carry out job duties. For these unreimbursed business expenses Plaintiff's expert calculated $189,670.00 based on an assumption of $10 per month for 18,967 months in the class period. Defendant argued this was more a matter of the employee's convenience, rather than necessity and any such use was unreasonable. *See Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 568 (whether an expense is necessary depends on the reasonableness of the employee's choices). Accordingly, the claim was heavily discounted by 90% to $18,967.00.

**<u>Failure to Make Proper Background Check Disclosure Claim</u>:**

The background check claims allege violations of the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (FCRA) and its California counterparts—the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code §§ 1786 et seq. (ICRAA), and the Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785 et seq. (CCRAA). The potential damages for the FCRA claim are actual damages, and if the violations are "willful," then statutory damages of no less than $100 to no more than $1,000 per violation. 115 U.S.C. § 1681n(a)(1)(A). For violation of ICRAA, the damages are actual damages only for class actions. Cal. Civ. Code § 1786.50(a)(1) and for violation of CCRAA, the actual damages for negligent violations. Cal. Civ. Code § 1785.31 or for willful violations, statutory damages of no less than $100 to no more than $5,000 per violation.

Plaintiff discounted this claim as required disclosures were in electronic form and after reviewing Plaintiff believes Defendant complied with the applicable acts. To the extent there is an alleged violation FCRA based on the prior disclosures due to the ability to display both disclosures on the same screen (based on the electronic disclosure) that does not convert the disclosure to a non- standalone disclosure.

Since about February 2018, however, Defendant has used HireRight applications—and FCRA disclosures that fully comply with the FCRA's standalone requirement. In addition, Defendant has defenses to this claim based on federal preemption and the unique circumstances that require Defendant to provide the background checks (including, for example, independent TSA and LAWA background check authorizations permissible under other federal law). To the extent there was any technical violations for the prior disclosures, the violations were not willful and any background check recoveries thus would be limited to actual damages. As a result, individualized actual damages issues would not be amenable to class certification and would be non-existent or speculative, at best. Finally, the applicable statute of limitations is two years under each of the statutes, since all

applicants were informed that a background check was being obtained. As a result, potential liability for background check claims should be limited to reports procured on or after March 26, 2017 (or two years before background check claims were first alleged in the first amended complaint) and, therefore, Plaintiff does not have standing to pursue claims based on background check disclosures he never received. As a result, potential liability for background check claims, at best, would be limited to reports procured before ATS switched to the HireRight application in or shortly after February 2018 and the damage claims would be limited to actual damages that Plaintiff is not aware that would exist for any employee.

**Waiting Time Penalties:** For waiting time penalties, Plaintiff's expert calculated the waiting time penalty to be $4,623,985.00 for 1,272 terminated employees. Defendant strongly disagrees with these calculations and contend that Plaintiff's damage model relies upon incorrect assumptions and is derivative of unsupportable claims. The value of these penalties required a substantial discount for settlement at this juncture.

**Wage Statement Penalties:** For wage statement penalties, the exposure is $8,105,450.00 based on the data provided by Defendant. There were 2,271 estimated putative class members who worked in the period April 6, 2018 to February 2, 2020 for which there are 82,190 paychecks issued. Again, this number was heavily discounted given recent case law holding that meal and rest break penalties cannot form the basis for wage statement penalties.

**PAGA:** Plaintiff's PAGA claim is derivative of all of Plaintiff's above-described wage and hour claims based on the Labor Code. The amount of PAGA penalties that could conceivably be alleged if we argued for the stacking of potential civil penalties, even if proved, likely would be significantly reduced by a Court. With appropriate discounting, it is estimated that the reasonable potential PAGA exposure in this case to be less than $300,000.00

Here, for example, to establish liability for meal and rest period violations, individualized inquiries would likely be required. This is because, based on the testimony provided, Plaintiff could not simply rely on timecards, especially as to rest periods which are not included on timecards. It may be necessary to provide individualized testimony about the circumstances pertaining to each employee or department to establish liability. Given the size of the workforce, this could prove unmanageable. As is always the case with a trial, Plaintiff needed to accept that there was a possibility that he would not prevail at trial.

To determine whether a settlement should be preliminarily approved, the Court should also evaluate whether it "falls within the range of possible approval." *Volkswagen*, 2016 WL 4010049, at *16. In assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). There is "no single formula" to be applied, but the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Plaintiff was cautiously optimistic about the chances of prevailing at certification on his claims as well as at trial. Nevertheless, Plaintiff recognized that if the litigation had continued, he may have encountered significant legal and factual hurdles that could have prevented the Class from obtaining full recovery for their claims, or perhaps even any recovery (under the worst-case scenario). In particular, Plaintiff's decision to settle was influenced by the following considerations: (i) the strength of Defendant's defenses both to certification and on the merits; (ii) the risk of losing on any of a number of dispositive motions that could have been brought between now and trial (e.g., motions to decertify the class, motions for summary judgment, motion to strike the PAGA claims as unmanageable, and/or motions in

limine) which may have eliminated all or some of Plaintiff's claims, or barred evidence necessary to prove such claims; (iii) the risk of losing at trial; (iv) the chances of a favorable verdict being reversed on appeal; and (v) the difficulties attendant to collecting on a judgment.

The potential risks attending further litigation also support preliminary approval. Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526. Proceeding to certification and subsequently through trial (and the inevitable appeals) could add years or more to the resolution of this case, which has already been pending for approximately three years.

To be sure, a number of cases have found wage and hours actions to be amenable to class resolution. However, some courts have gone the other way, finding that some of the very claims at issue here--meal period, rest period, and off-the-clock violations--were not suitable for class adjudication because they raised too many individualized issues.[9] Thus, given the uncertainty surrounding both certification and liability as to the claims alleged in the litigation, it was a virtual certainty that the litigation would proceed, at some point in the course of the litigation, through the appellate process.

Additionally, early resolutions save time and money that would otherwise go to litigation. Parties' resources, as well as the Court's, would be further taxed by

---

[9] *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

continued litigation.  And if this action had settled following additional litigation, the settlement amount would likely have considered the additional costs incurred, such that there may have been less available for Class Members. Cost savings is one reason why California policy strongly favors early settlement.  *See Neary v. Regents of University of California*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements and observing that "[s]ettlement is perhaps most efficient the earlier the settlement comes in the litigation continuum."). Moreover, given that the class members in this case are primarily low wage workers, averaging $17 per hour, for whom receiving speedy remuneration is particularly important, the potential for years of delayed recovery is a significant concern. Considered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery to plaintiff class members, the totality of relief provided under the proposed Settlement is more than adequate and well within the range of reasonableness. This concern also supports settlement.

In summary, although Plaintiff and his counsel maintained a strong belief in the underlying merits of the claims, they also acknowledge the significant challenges posed by continued litigation through trial.  Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

### g.    The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement

The proposed class settlement notice and settlement administration procedure satisfy due process.  Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*,

1   417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974).  Under Rule

2   23(c)(2), notice by mail provides such "individual notice to all members." *Id.*  Where

3   the names and addresses of Class Members are easily ascertainable, individual notice

4   through the mail constitutes the "best notice practicable." *Id.* at 175.

5          The Notice of Proposed Class Action Settlement ("Class Notice") was jointly

6   drafted and approved by the Parties and provides Settlement Class Members with all

7   required information so that each member may make an informed decision regarding

8   his or her participation in the Settlement.  The Class Notice provides information

9   regarding the nature of the lawsuit; a summary of the substance of the settlement

10  terms; the class definition; the deadlines by which Class Members must submit

11  Request for Exclusion or objection; the date for the final approval hearing; the

12  formula used to calculate settlement payments; a statement that the Court has

13  preliminarily approved the settlement; and a statement that Class Members will

14  release the settled claims unless they opt out.  Accordingly, the Notice satisfies the

15  requirements of Rule 23(c)(2).

16         The Class Notice summarizes the proceedings and the terms and conditions

17  of the Settlement in an informative and coherent manner, complying with the

18  statement in *Manual for Complex Litigation*, *supra*, that "the notice should be

19  accurate, objective, and understandable to Class Members . . . ."  *Manual for*

20  *Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  The

21  Notice Packet states that the Settlement does not constitute an admission of liability

22  by Defendant, and that Final Approval has yet to be made.  The Notice Packet thus

23  complies with the standards of fairness, completeness, and neutrality required of a

24  settlement class notice disseminated under authority of the Court.  Rule 23(c)(2)and

25  (e); *Manual* §§ 8.21, 8.39; *Manual* §§ 30.211, 30.212.

26         The Settlement Administrator will mail the Class Notice to all Settlement Class

27  Members via first class United States mail.  (Hartranft Decl. ¶5.)  Prior to mailing the

28  Notice Packets, the Settlement Administrator will search the National Change of

Address Database and update the Settlement Class List to reflect any identifiable address changes.  Any Notice Packets returned to the Settlement Administrator as undeliverable on or before the deadline for postmarking opt outs shall be sent promptly via First-Class U.S. Mail to the forwarding address affixed thereto, and the Settlement Administrator shall indicate the date of such re-mailing on the Notice Packet.  If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine the correct address using a single skip-trace or other search using the name, address and/or Social Security Number of the Settlement Class Member involved, and it shall then perform a single re-mailing.  This method was negotiated by the Parties to maximize the Class Member notification rate while ensuring cost effective administration of the Settlement.

## V.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims.  Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.

DATED:  February 19, 2021             **BRADLEY/GROMBACHER, LLP**
                                      **LAW OFFICES OF SAHAG MAJARIAN II**


                                      By: */s/ Marcus Bradley*
                                      _____
                                      Marcus J. Bradley, Esq.
                                      Kiley L. Grombacher, Esq.
                                      Lirit A. King, Esq.
                                      Sahag Majarian II, Esq.

                                      Attorneys for Plaintiff