**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California    91356
Telephone: (818) 609-0807
Facsimile:  (818) 609-0892
sahagii@aol.com

Attorneys for Plaintiff, FRANCISCO J. CISNEROS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO J. CISNEROS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>Defendants | **CASE NO. 2:19−cv−02798−VAP-SP** [Assigned to Hon. Virginia Phillips]<br><br>**DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:   March 29, 2021**<br>**Time:  2:00 p.m.**<br>**CR:    8A**<br><br>Complaint Filed: November 27, 2018<br>FAC Filed: March 26, 2019 |

## <u>DECLARATION OF MARCUS J. BRADLEY</u>

I, Marcus J. Bradley hereby declare as follows:

1.      I am an attorney at law duly licensed to practice law before all of the courts of the State of California, and most of the district courts within the Ninth Circuit.  I am a partner in the law firm of Bradley/Grombacher, LLP counsel for Plaintiff, Francisco J. Cisneros, and now filing this Motion for Preliminary Approval of Settlement.  In my capacity as counsel, I have been actively involved with all aspects of this litigation. Accordingly, I have personal knowledge of all the matters set forth herein, and if called, I could and would competently testify to the following:

2.      This Declaration is submitted in support of the Motion for Preliminary Approval of Class Action Settlement, and the orders sought therein. Specifically, this Declaration is offered in support of the order finding that Bradley/Grombacher, LLP is adequate counsel to represent the proposed class action plaintiff and the settlement class.

3.      I have been actively engaged in this litigation since its inception and I have supervised the activities of the attorneys, paralegals and support staff.

4.      Attached hereto as Exhibit "A" is a true and correct copy of the Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Joint Stipulation").

5.      Attached to the Joint Stipulation as Exhibit "1" is a true and correct copy of the Proposed Notice to the Class ("Class Notice").

6.      The allegations in the Complaint and First Amended Complaint are amply described in the motion filed contemporaneously herewith and will not be re-stated herein.

**Pre-Mediation Discovery**

7.      In order to obtain the necessary information to evaluate whether it would be possible to resolve this action on behalf of the putative class, without

further protracted litigation, the Parties engaged in informal discovery which included the production of: (1) Defendant's written policies regarding, e.g., meal and rest period policies, time-keeping, final pay, overtime and background checks; (2) wage statements; and (3) electronic time and payroll records. This information allowed an accurate assessment of Defendant's liability and damage exposure based on the claims alleged.

8.    I also conferred extensively with Defense Counsel concerning this information, the merits of the Parties' claims and/or defenses, and other issues relevant to reaching a settlement. Both Defense Counsel and I took our obligations in discovery extremely seriously and worked diligently to provide one another with sufficient information and documentation so as to be adequately informed prior to mediation.

9.    Overall, the breadth of discovery available to the Parties permitted a thorough and detailed analysis of the merits of Plaintiff's claims and Defendant's defenses as well as Defendant's exposure for damages.

**The Settlement Was Negotiated at Arms-Length and is Not Collusive**

10.    After the above comprehensive informal discovery had been completed, the Parties agreed upon and scheduled a mediation with experienced mediator, Lisa Klerman, a well-regarded mediator who has mediated many wage and hour class actions. In advance of the mediation, the Parties each prepared detailed mediation statements.

11.    On February 28, 2020, the Parties participated in a private mediation after they engaged in the discovery detailed above. As result, the Parties reached an agreement on all material terms to resolve this Action in its entirety.

12.    The Parties then immediately moved into the final negotiations of the formal Settlement Agreement now presented to this Court as the Joint Stipulation of Class Action and PAGA Settlement and Release of Claims, filed herewith. Following the mediation, the additional negotiations on specific terms of the

-2-

1    agreement were protracted due to some anomalies in data that were ultimately

2    resolved.  Recognizing the critical opportunity to resolve the matter for the benefit

3    of both the putative class and the Defendant, the settlement negotiations which

4    ensued were non-collusive, adversarial, and at arm's length, as required for

5    appropriate class action settlements.  Plaintiff, the class and their counsel, on the

6    one hand, and Defendant and its counsel, on the other hand, agree that the

7    settlement is reasonable, fair and equitable to both sides.

8    **Damage Estimate**

9         13.    Based upon the analysis of a sampling of Defendant's records, our

10   expert determined that a reasonable estimate of total damages, monetary penalties,

11   interest and other relief that the class would be awarded if successful at trial on all

12   of their claims would be a maximum of approximately $14,000,000.00 The

13   $700,000.00 settlement before the Court represents approximately 5% of the

14   potential exposure value. This is a reasonable percentage as set forth more fully

15   below. Less than $1,000,000.00 of the maximum amount are actual damages with

16   the remainder penalties.

17        14.    Ultimately, the damages estimate of $14,000,000.00 was extremely

18   liberal and assumed the best-case scenario for every Class Member. Reaching a

19   compromise at this stage will allow Class Members to obtain compensation for

20   their claims without having to file and litigate their own cases. Plaintiff's Counsel

21   realized that the potential amount was subject to significant discounts based on

22   experience with class and individual cases alleging similar claims.  Such experience

23   is detailed in the section below.  The Class Members are agents who are generally

24   responsible for transporting cargo and luggage. There are an estimated 2,271 Class

25   Members.

26        15.    Plaintiff has a few primary wage and hour claims at issue in this

27   litigation remaining after the *Pederson* litigation and settlement, as well as

28   background checks and a few claims that are derivative of the underlying wage and

-3-

hour claims.

*Meal Period Claim*

16.    Plaintiff's meal period claim applies to all Class Members and is based on Plaintiff's theory that Defendant maintained a common policy and practice of understaffing crews across all their operations throughout California. Plaintiff alleges that he and Class Members regularly were prevented from taking timely and/or off-duty meal periods depending on the unpredictability of flight schedules because there was not enough coverage due to Defendant's understaffing. Based on Plaintiff's investigation, Plaintiff alleges that this is a company-wide policy and practice, and not based on individual managers' conduct.

17.    However, the data produced indicated a low meal period violation rate. Indeed, only 28.3% of the shifts had the potential for a meal period violation. Accordingly, Defendant's maximum exposure under Plaintiff's meal period claims is $442,212.00 [25,800 shifts x $17.14 avg. hourly rate x 1 premium]. However, Defendant argued it maintained compliant meal period policies and practices and provided class members the opportunity to take legally compliant meal periods.

*Rest Period Claim*

18.    Plaintiff's theory of liability on the rest period claim is based on Defendants' written rest period policy that requires on-premises rest periods which Plaintiff argues is not compliant pursuant to *Augustus v. ABM Security Servs., Inc.*, 2 Cal. 5th 257 (2016). There were approximately 264,829 shifts worked by Class Members that were eligible for rest periods. Even though Plaintiff argues that this theory of rest period liability is certifiable, I ascribed an extremely low value to this theory because: (1) Defendant argues that interpreting *Augustus* as prohibiting on-premises rest breaks is questionable because an allegation that an employer does not permit employees to leave the employer's business premises during rest breaks is not sufficient in and of itself to state a rest period violation (*see Hubbs v. Big Lots Stores, Inc.*, 2018 WL 5264141 (C.D. Cal. Mar. 16, 2018); (2) the fact that

-4-

this employee population works at airports means that in order for them to leave the airport terminal during their rest period, they would need to exit a secure area and re-complete the security screening process during their rest period, meaning that as a practical matter, the Class Members would not have been able to take off-premises rest periods anyway; and (3) there would be some difficulty in proving this claim because there are no timekeeping records of rest periods.

19.    The rest break claim would have mainly relied on Class Member testimony, making it a riskier claim at class certification and liability stages. Defendant likely would have argued that only a small number of Class Members actually missed their rest breaks. Certification likely would have required depositions of Class Members who provided declarations, and Defendant surely would have obtained opposing declarations stating either rest breaks were taken or rest breaks were voluntarily waived.

20.    Based on these factors, I discounted this claim by 90% for each of the above defense arguments, for a likely exposure of $453,196.90.

*Wage Statement Claim*

21.    With respect to Plaintiff's wage statement claim, Defendant contends that even if Plaintiff could show a technical deficiency in Defendants' pay stubs, Plaintiff cannot establish any injury stemming from the purported deficiency sufficient to allow recovery under Cal. Lab. Code § 226(e). *See Milligan v. Am. Airlines, Inc.*, 577 Fed. Appx. 718, 719 (9th Cir. 2014) ("The injury requirement ... cannot be satisfied simply if one of the nine itemized requirements in [§ 226(a)] is missing from a wage statement."); *Holak v. K Mart Corp.*, 2014 U.S. Dist. LEXIS 139879, at *21 (E.D. Cal. Sept. 30, 2014) ("Because Plaintiff did not view her wage statements (even though the injury required to find a violation of California Labor Code § 226 is minimal) the minimal injury requirement is not met.") (internal citation omitted); *Ridgeway v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 126806, at *28-29 (N.D. Cal. Sept. 10, 2014) ("the statute requires that an

-5-

employee may not recover for violations of section 226, subdivision (a) unless he or she demonstrates an injury arising from the missing information") (italics in original).

22.    For wage statement penalties, the exposure is $8,105,450.00 based on the data provided by Defendant. There were 2,271 estimated putative class members who worked in the period April 6, 2018 to February 2, 2020 for which there are 82,190 paychecks issued. Again, this number was heavily discounted given recent case law holding that meal and rest break penalties cannot form the basis for wage statement penalties.

### *"Off-The-Clock" Work*

23.    For the "off-the-clock" (OTC) claim, Plaintiff's expert was provided with assumptions regarding the frequency as OTC is not recorded. I asked the expert to assume that the class worked OTC on average 5 minutes per shift waiting for a cart to transport employees to their work site. This resulted in 27,729 hours of unpaid time with a maximum potential exposure of $482,761.89. Again, given the lack of "control" over the employees, this claim was discounted by 90% resulting in value of $48,276.18.

### *Waiting Time Penalties*

24.    With respect to the waiting time penalties, Defendant contends that: (1) it had a policy and practice of paying wages due upon termination; (2) it did not act willfully to the extent any wages were not paid upon termination, and waiting time penalties are recoverable only when a *willful* violation has occurred (see Cal. Code Regs. Tit. 8, § 13520; and (3) that a waiting time penalties claim cannot be based on failure to pay meal and rest period premiums. *See Singletary v. Teavana Corp.*, 2014 WL 1760884, *4 (N.D. Cal. Apr. 2, 2014) (holding that section 203 penalties for willful failure "to pay any wages of an employee" were not meant to include the payments under section 226.7).

25.    Moreover, although the waiting time claim accrues only for terminated employees, it is not inappropriate to distribute the full settlement value on a pro rata basis across the class because the realistic recovery from the waiting time claims is low given the defenses that Defendant would assert, Defendant's practices, and in particular the difficulty that would be inherent in establishing that any of the waiting time was caused by willful actions on the part of the Defendant.

26.    Plaintiffs' damage model values this claim at approximately $4,623,985.00. Defendant strongly disagrees with these calculations and contend that Plaintiff's damage model relies upon incorrect assumptions and is derivative of unsupportable claims. The value of these penalties required a substantial discount for settlement at this juncture.

*Unreimbursed Business Expenses*

27.    Plaintiff also investigated a claim for unreimbursed business expenses based on the personal cellphone use for business purposes. Plaintiff claimed he was forced to use his cellphone to communicate with co-workers and his employer to carry out job duties. For these unreimbursed business expenses Plaintiff's expert calculated $189,670.00 based on an assumption of $10 per month for 18,967 months in the class period. Defendant argued this was more a matter of the employee's convenience, rather than necessity and any such use was unreasonable. *See Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 568 (whether an expense is necessary depends on the reasonableness of the employee's choices). Accordingly, the claim was heavily discounted by 90% to $18,967.00.

*Derivative PAGA Claim*

29.    Plaintiff's PAGA claim is derivative of all of Plaintiff's above-described wage and hour claims based on the Labor Code. The amount of PAGA penalties that could conceivably be alleged if we argued for the stacking of potential civil penalties, even if proved, likely would be significantly reduced by a

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO. 2:19−cv−02798-VAP-SP

1   Court. With appropriate discounting, I estimate that the reasonable potential PAGA
2   exposure in this case to be less than $300,000.00

3       *Failure to Make Proper Background Check Disclosure Claim:*

4       30.    The background check claims allege violations of the federal Fair
5   Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (FCRA) and its California
6   counterparts—the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code
7   §§ 1786 et seq. (ICRAA), and the Consumer Credit Reporting Agencies Act, Cal.
8   Civ. Code §§ 1785 et seq. (CCRAA). The potential damages for the FCRA claim
9   are actual damages, and if the violations are "willful," then statutory damages of
10  no less than $100 to no more than $1,000 per violation. 115 U.S.C. §
11  1681n(a)(1)(A). For violation of ICRAA, the damages are actual damages only for
12  class actions. Cal. Civ. Code § 1786.50(a)(1) and for violation of CCRAA, the
13  actual damages for negligent violations. Cal. Civ. Code § 1785.31 or for willful
14  violations, statutory damages of no less than $100 to no more than $5,000 per
15  violation.

16      31.    Plaintiff discounted this claim as required disclosures were in
17  electronic form and after reviewing Plaintiff believes Defendant complied with the
18  applicable acts. To the extent there is an alleged violation FCRA based on the prior
19  disclosures due to the ability to display both disclosures on the same screen (based
20  on the electronic disclosure) that does not convert the disclosure to a non-
21  standalone disclosure.

22      32.    Since about February 2018, however, Defendant has used HireRight
23  applications—and FCRA disclosures that fully comply with the FCRA's
24  standalone requirement. In addition, Defendant has defenses to this claim based on
25  federal preemption and the unique circumstances that require Defendant to provide
26  the background checks (including, for example, independent TSA and LAWA
27  background check authorizations permissible under other federal law). To the
28  extent there was any technical violations for the prior disclosures, the violations

-8-

1    were not willful and any background check recoveries thus would be limited to

2    actual damages. As a result, individualized actual damages issues would not be

3    amenable to class certification and would be non-existent or speculative, at best.

4    Finally, the applicable statute of limitations is two years under each of the statutes,

5    since all applicants were informed that a background check was being obtained. As

6    a result, potential liability for background check claims should be limited to reports

7    procured on or after March 26, 2017 (or two years before background check claims

8    were first alleged in the first amended complaint) and, therefore, Plaintiff does not

9    have standing to pursue claims based on background check disclosures he never

10    received. As a result, potential liability for background check claims, at best, would

11    be limited to reports procured before ATS switched to the HireRight application in

12    or shortly after February 2018 and the damage claims would be limited to actual

13    damages that Plaintiff is not aware that would exist for any employee. Accordingly,

14    this claim was not given a settlement value.

15        33.    Although Plaintiff remains confident in the strength of his claims and

16    believe this case is suitable for certification on the claimed basis there are company-

17    wide policies that Plaintiff contend violate California and Federal law and

18    uniformly affect all non-exempt employees, Defendant's counter-arguments raise

19    uncertainties with respect to both class certification and success on the merits. As

20    the California Supreme Court ruled in *Sav-On v. Superior Court* (2004) 34 Cal.4th

21    319, class certification is always a matter of the trial court's sound discretion.

22    Decisions following *Sav-On* have reached different conclusions, with respect to

23    certification of wage and hour claims. Although remaining confident in the

24    strengths of his claims, these factors led Plaintiff to reasonably discount the

25    potential damage claims.

26    **Adequacy Issues**

27        34.    The proposed Class Representative and his counsel have and will

28    continue to "fairly and adequately protect the interests of the class." In this case,

-9-

1  there is no reason to doubt the adequacy of Plaintiff's counsel,
2  Bradley/Grombacher, LLP.

3      35.    The proposed settlement also does not place the attorneys' interests
4  ahead of class members' interests. Settlement provisions relating to attorneys' fees
5  and litigation expenses in the action were not negotiated until after an agreement
6  was reached in principle with respect to the direct class settlement benefits and the
7  gross settlement fund amount.

8      36.    Here, there is no evidence of antagonism between Plaintiff's interests
9  and those of the Settlement Class. Plaintiff has litigated this case in good faith and
10  the interests of Plaintiff is aligned with those of the Settlement Class as they share
11  a common interest in challenging the legality of Defendant's policies and
12  procedures. Moreover, there is no evidence of any collusion between the parties.

13      37.    For these same reasons—the Named Plaintiff will fairly and
14  adequately protect the class's interests, that he has no antagonistic interests to the
15  class, and that he has litigated this case in good faith—he should be appointed as
16  Class Representative; moreover, at the Final Approval Hearing, Class Counsel will
17  request a Class Representative Incentive Payment in the amount of $5,000 to
18  compensate Named Plaintiff for his efforts in prosecuting this matter, and for the
19  risks and stigma he faced, and will continue to face, for doing so.

20      38.    Here, the Plaintiff was not simply a bystander in the prosecution of
21  this action.  Plaintiff was always available to, and regularly did, consult with
22  counsel both in person and via telephone. In addition, Plaintiff reviewed documents
23  and provided invaluable information regarding the workings of the Defendant's
24  company. Plaintiff was also actively involved in discussions regarding the
25  resolution of this matter and approved the settlement terms on behalf of himself
26  and the class.

27  **Experience of Class Counsel**

28      39.    My firm, Bradley/Grombacher, and I have extensive experience

-10-

litigating wage and hour class and representative actions as well as complex consumer class actions.

40.    I have practiced law since 1994.  In 2000, I joined Mazursky, Schwartz & Angelo as an associate and became a partner in January 2005 at which time the firm was renamed Schwartz, Daniels & Bradley.  I remained as a partner handling primarily wage and hour class actions until the dissolution of the firm effective December 31, 2008.  In January 2009, I moved my existing practice transferring a number of wage and hour cases to become a partner with the law firm of Marlin & Saltzman, a long-established firm with whom I had been co-counsel on dozens of wage and hour class actions during my tenure at Schwartz, Daniels & Bradley. On September 1, 2016, I formed Bradley/Grombacher LLP along with a former associate at Marlin & Saltzman, Kiley Grombacher.

41.    I have been responsible for all facets of class action employment and other complex litigation, from pre-filing investigation through trial and appeal. Since approximately May 2000, I have spent most of my time representing workers in wage and hour matters. I, along with my current and former partners, have litigated these issues in class actions to favorable settlements that have recouped over $800,000,000.00 in unpaid wages, including the following more notable cases:

   a. *Gutierrez v. State Farm Mutual*, Los Angeles Superior Court (BC236552).  Class action mis-classification case seeking overtime compensation for approximately 2,600 insurance claims adjusters employed by State Farm.  The class was certified and summary adjudication was granted as to liability in favor of the class. The case settled for $135 million just prior to trial, with final approval granted with no objections filed.

   b. *Bednar v. Allstate Insurance Company*, Los Angeles Superior Court (BC240813).  Class action mis-classification case seeking overtime

-11-

compensation for approximately 1,200 insurance claims adjusters employed by Allstate. The class was certified and summary adjudication was granted as to liability in favor of the class. The case settled for $120 million just prior to trial, with final approval granted with no objections filed.

c.  *Roberts v. Coast National Insurance*, Orange County Superior Court (01CC08478).  Class action mis-classification case seeking overtime compensation for insurance claims adjusters employed by Coast National Insurance.  Certification granted, and then the matter was tried before a binding arbitrator.  The case settled during the arbitration for in excess of $18 million.

d.  *CNA Class Action Litigation*, Los Angeles Superior Court Class (JCCP 4230).  Class action mis-classification case seeking overtime compensation for insurance claims adjusters employed by Defendant.  Case settled for $33 million, with final approval granted with no objections filed.

e.  *Dotson v. Royal SunAlliance*, Orange County Superior Court (02CC01787). Class action mis-classification case seeking overtime compensation for insurance claims adjusters employed by Royal SunAlliance. Case settled for $12.3 million, with final approval granted with no objections filed.

f.  *Parris v. Lowe's Home Improvement*, Los Angeles County Superior Court (BC260702). Class action seeking payment of "off-the-clock" hours worked by all hourly employees of Lowe's Home Improvement stores in the State of California. The class was certified by the Court of Appeal and remanded to the trial court for further proceedings.  Shortly thereafter, a $29.5 million settlement was reached and approved without objection.

-12-

g.  *Pardo v. Toyota Motor Sales, et al.*  Los Angeles County Superior Court (BC372781).  Class action mis-classification of workers with claims for overtime and missed meal and rest breaks.  The case settled for $7.75 million and was approved with no objections.

h.  *Smith/Ballard v. Wal-Mart Stores, Inc.*  United States District Court for the Northern District of California (Case No. 4:06-cv-05411-SBA). Wage and hour class action seeking unpaid vacation and personal time, unpaid wages, and related penalties on behalf of over 245,000 employees.  The action was certified and settled for $86 million while Defendants' appeal of the certification was pending in the Ninth Circuit Court of Appeals.

i.  *Hoyng v. AON*, Los Angeles County Superior Court (BC377184).  Wage and hour class action seeking overtime and related compensation for mis-classification on behalf of Relationship and Account Specialists. The case settled for $10.5 million which was approved with no objections filed.

j.  *In RE Bank of America Wage and Hour Employment Practices Litigation*, MDL 2138, United States District Court for the District of Kansas. California state and FLSA wage and hour litigation for various violations including unpaid overtime and "off-the-clock" work. Settled for $73 million.

k.  *Lemus v. H & R Block Litigation*, United States District Court for the Northern District of California (Case No. 3:09-cv-03179-SI) Class certified, and settlement reached prior to trial.  Total settlement of $35 million.

l.  *Harris v. Vector Marketing Corporation,* United States District Court for the Northern District of California (Case No. 3:08-cv-05198-EMC). Independent contractor mis-classification class action case on behalf of

-13-

1  approximately 70,000 employees.

2      *m.* *Bickley v. Schneider National Trucking,* United States District Court for

3  the Northern District of California (Case No. 4:08-cv-05806-JSW).

4  Wage and hour class action on behalf of approximately 6,000 truck

5  drivers. Settled for $29.5million.

6      *n.* *Roberts v TJX,* United States District Court for the Northern District of

7  California (Case No. 13-CV-04731-MEJ). Wage and hour violations on

8  behalf of approximately 82,000 employees. Settled for $8.5 million.

9      *o.* *Oprychal v. New Your Life Insurance,* United States District Court for

10  the Central District of California (Case No. 2:07-cv-00518-VBF). Class

11  action for the failure to pay commissions pursuant to a compensation

12  plan. Settled for $10 million.

13      *p.* *Neuvenheim v. Gamestop Corp.,* United States District Court for the

14  Central District of California (Case No. 2:09-cv-06799-ODW).  Class

15  action on behalf of nonexempt employees for wage and hour violations.

16      *q.* *Hightower v. JP Morgan Chase,* United States District Court for the

17  Central District of California (Case No. 2:11-cv-01802-PSG). Class

18  action on behalf of nonexempt employees for wage and hour violations.

19  Settled for $12 million.

20      42.    On many of the above cases I was either lead or co-lead counsel

21  including cases in multi-district litigation or coordinated proceedings where I

22  worked collaboratively and cooperatively with co-counsel to bring about an

23  efficient and beneficial resolution for all class members as the above results

24  demonstrate.

25      43.    I have argued cases in trial courts as well as before courts of appeal.

26  My writings on legal topics pertaining to litigating wage and hour class and

27  representative actions have appeared in professional publications and I have been

28  called upon to speak at conferences and seminars for professional organizations

-14-

DECLARATION OF MARCUS J. BRADLEY IN
SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

CASE NO. 2:19−cv−02798-VAP-SP

1   including a recent presentations titled "Planning for and Executing Trial in Class
2   and Collective Wage & Hour Cases" and the Bridgeport "2020 Wage & Hour
3   Litigation Update and PAGA Teleconference."

4        44.    I have also been honored as a Super Lawyer in the area of class actions
5   by Los Angeles Magazine for multiple years including 2021. I am also a member
6   of a number of professional organizations including the Consumer Attorneys of
7   Los Angeles, the Consumer Attorneys of California, the California Employment
8   Lawyers Association, and the America Association of Justice.

9        45.    Given my experience as a class action employment litigator, I believe
10  the settlement is a fair and adequate compromise of the monetary relief claims that
11  Plaintiff and the Class Members have raised in this case. Based on the discovery
12  conducted in the case, our analysis of the data produced by Defendant, and the
13  application of appropriate litigation and appeal risks and delay discounts, we
14  determined that the settlement was fair, reasonable and adequately reflects the
15  settlement value of the case. The settlement is advantageous to the Class who would
16  otherwise face the uncertainty of litigation, including whether they would obtain
17  class certification, and/or a loss at trial Indeed, if the matter were to proceed to trial,
18  Class Counsel knows from experience that the apparent strength of a case is no
19  guarantee against a defense verdict.

20       46.    Based on my participation in the settlement negotiations, which were
21  hard-fought and conducted in good faith and at arm's length between attorneys
22  with substantial experience litigating class actions and wage and hour cases, and
23  supervised by an experienced and well-regarded mediator, Michael E. Dickstein, I
24  attest that the Settlement Agreement was the product of a non-collusive
25  settlement process.

26       47.    Given the foregoing information, the settling parties evaluated and
27  considered all alternatives in reaching their settlement decisions and now urge this
28  Court to grant preliminary approval.

-15-

48.    Based on all of the foregoing, I believe that the firm of Bradley/Grombacher, and those attorneys in the firm who are actively handling this matter, are more than qualified to be appointed as class counsel, to represent the interests of the proposed class members. A detailed description of the Bradley/Grombacher firm, including attorney biographies and practice areas, is available at the firm's website at www.bradleygrombacher.com.

**<u>Settlement Administration</u>**

49.    The parties have agreed to retained ILYM a company with substantial class action administration experience, as the Settlement Administrator in the case. (*See* Declaration of Sean Hartranft filed concurrently herewith.)

50.    In my experience, this bid is competitive to administer other similar-sized wage and hour class action settlement.

**<u>Settlement Documents</u>**

51.    The proposed Class Notice apprises the Class Members of their rights under the settlement and provides adequate information as to the value of the overall settlement, terms of the settlement, the amount of attorneys' fees and costs that will be requested, the amount of the enhancement that will be requested for the Plaintiff, as well as the Class Members' right to object or opt-out of the settlement and/or dispute the allocation of their share of the settlement.

**<u>Other Actions with Similar Claims</u>**

52.    I am not aware of any other class, representative or collective actions in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of the class or group of individuals who would also be members of the class defined in this action.

**<u>LWDA Notified</u>**

53.    Pursuant to California *Labor Code* § 2699(l)(2), a copy of the Class Action Settlement and Release of Claims was uploaded to the Labor and Workforce Development Agency ("LWDA") on February 15, 2021. A copy of the

1    confirmation receipt is attached hereto as Exhibit "B".

2

3         I declare under penalty of perjury under the laws of the State of California

4    and the United States of America that the foregoing is true and correct to the best

5    of my personal knowledge.  This declaration is executed this 19th day of February,

6    2021, at Westlake Village, California.

7

8                              /s/ Marcus J. Bradley
                              Marcus J. Bradley, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

# EXHIBIT A

## SETTLEMENT AGREEMENT

1  **BRADLEY/GROMBACHER, LLP**
2  Marcus J. Bradley, Esq. (SBN 174156)
   Kiley L. Grombacher, Esq. (SBN 245960)
3  31365 Oak Crest Drive, Suite 240
   Westlake Village, California 91361
4  Telephone: (805) 270-7100
   Facsimile: (805) 270-7589
5  mbradley@bradleygrombacher.com
   kgrombacher@bradleygrombacher.com
6
7  **LAW OFFICES OF SAHAG MAJARIAN II**
   Sahag Majarian II, Esq. (SBN 146621)
8  18250 Ventura Boulevard
   Tarzana, California 91356
9  Telephone: (818) 609-0807
   Facsimile: (818) 609-0892
10 sahagii@aol.com

11 Attorneys for Plaintiff and Proposed Class

12 (Additional counsel listed on following page)

13                **UNITED STATES DISTRICT COURT**

14               **CENTRAL DISTRICT OF CALIFORNIA**

15 | FRANCISCO J. CISNEROS, an individual, on | Case No. 2:19-cv-02798-VAP-SP |
16 | his own behalf and on behalf of all others similarly situated, | **JOINT STIPULATION OF CLASS** |
17 | | **ACTION AND PAGA SETTLEMENT** |
   | Plaintiff, | **AND RELEASE OF CLAIMS** |
18 |                            |
19 |        v.                  |
20 | AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, |
21 | inclusive, | Complaint Filed: November 27, 2018 FAC |
22 |        Defendants. | Filed: March 26, 2019 |

23

24

25

26

27

28

**SEYFARTH SHAW LLP**
Aaron R. Lubeley (SBN 199837)
alubeley@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS
66085560v.1

AIRPORT TERMINAL SERVICES, INC. This Joint Stipulation of Class Action and PAGA Settlement and Release of Claims is entered into by and between Plaintiff, Francisco J. Cisneros, as an individual on behalf of all Settlement Members and as a representative of the State of California Labor and Workforce Development Agency ("LWDA"), and his counsel, on the one hand, and Defendant, Airport Terminal Services, Inc., on the other hand.

## 1.    DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

**1.1.    Action.** "Action" means the civil lawsuit originally entitled *Francisco J. Cisneros v. Airport Terminal Services, Inc.,* filed on November 27, 2018, in the Superior Court of the State of California, County of Los Angeles, and designated Case No. 18STCV06289, which was then removed to this Court and designated as Case No. 2:19-cv-02798-VAP-SP, and all claims alleged in the operative complaint as amended.

**1.2.    Administrator.** "Administrator" means the independent third-party mutually agreed on by the Parties for settlement administration, which includes, but is not limited to, disseminating and tracking Settlement Notices, distributing settlement payments, calculating, reporting, and processing required tax filings or payments, and providing any reports and declarations, as jointly requested by Class Counsel and Defendant's Counsel.

**1.3.    Administration Costs.** "Administration Costs" means any payment payable from the Gross Settlement Amount to the Administrator for administering the settlement.

**1.4.    Agreement.** "Agreement" means this Joint Stipulation of Class Action and PAGA Settlement and Release of Claims, including attached exhibits.

**1.5.    Attorneys' Fees and Costs Award.** "Attorneys' Fees and Costs Award" means an attorneys' fees and costs payment from the Gross Settlement Amount for all of Class Counsel's attorneys' fees and costs associated with the litigation and resolution of the Action (excluding only Administration Costs).

**1.6.    Class Counsel.** "Class Counsel" means Marcus J. Bradley and Kiley L. Grombacher of Bradley Grombacher, LLP and Sahag Majarian II of Law Offices of Sahag Majarian II.

66085560v.1

**1.7. Class Member.** "Class Member" means any individual who is or was employed as a non-exempt employee by Defendant in the State of California at any time between November 27, 2014, through the date of a Preliminary Approval Order (the "Class Period").

**1.8. Class Representative Incentive Payment.** "Class Representative Incentive Payment" means a payment from the Gross Settlement Amount to Plaintiff in recognition of his efforts and work in prosecuting the Action on behalf of Class Members.

**1.9. Court.** "Court" means the United States District Court, Central District of California, the Honorable Virginia A. Phillips presiding.

**1.10. Defendant.** "Defendant" means Airport Terminal Services, Inc.

**1.11. Defendant's Counsel.** "Defendant's Counsel" means Seyfarth Shaw LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Aaron R. Lubeley, Seyfarth Shaw LLP, 601 South Figueroa Street, Suite 3300, Los Angeles, California 90017.

**1.12. Effective Date.** "Effective Date" means the later of 10 days after (a) the expiration of the time for any notice of intention of a post-judgment motion to be filed following a Final Approval Order or judgment, (b) if an objection has been made or a motion to intervene has been filed, the expiration of the time to appeal a Final Approval Order or judgment, or (c) if a post-judgment motion or appeal has been filed, the time a Final Approval Order or judgment is no longer appealable and constitutes a "final judgment" for purposes of res judicata or collateral estoppel.

**1.13. Final Approval Order.** "Final Approval Order" means an order granting final approval of a class action and PAGA settlement resulting in entry of final judgment.

**1.14. Gross Settlement Amount.** "Gross Settlement Amount" means the amount of the total payment—inclusive of any Administration Costs, Attorneys' Fees and Costs Award, Class Representative Incentive Payment, Individual Settlement Payments, PAGA Penalty Fund, or any other Court-required payments—that Defendant may be required to pay in connection with a Final Approval Order.

**1.15. Individual PAGA Payment.** "Individual PAGA Payment" means each PAGA Member's payment from 25% of the PAGA Penalty Fund.

**1.16.    Individual Settlement Payment.** "Individual Settlement Payment" means each Settlement Class Member's potential payment from the Net Settlement Amount.

**1.17.    LWDA Payment.** "LWDA Payment" means any payment to the LWDA of 75% of the PAGA Penalty Fund.

**1.18.    Net Settlement Amount.** "Net Settlement Amount" means the portion of the Gross Settlement Amount—after deductions for any Court-approved Administration Costs, Attorneys' Fees and Costs Award, Class Representative Incentive Payment, PAGA Penalty Fund, or any other Court-required payments—to be allocated to Individual Settlement Payments.

**1.19.    PAGA Member.** "PAGA Member" means any individual who is or was employed as a non-exempt employee by Defendant in the State of California at any time between November 27, 2017, through the date of a Preliminary Approval Order (the "PAGA Period").

**1.20.    PAGA Penalty Fund.** "PAGA Penalty Fund" means the portion of the Gross Settlement Amount allocated to PAGA penalties.

**1.21.    Parties.** "Parties" means Plaintiff and Defendant.

**1.22.    Plaintiff.** "Plaintiff" means Francisco J. Cisneros.

**1.23.    Preliminary Approval Order.** "Preliminary Approval Order" means an order granting preliminary approval of a class action and PAGA settlement.

**1.24.    Released Party.** "Released Party" means any of Defendant's present and former parents, subsidiaries, affiliates, and joint ventures, and any of their shareholders, officers, directors, employees, agents, servants, registered representatives, clients, attorneys, insurers, successors and assigns, and any other persons acting by through, under or in concert with any of them (including their pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' current or former trustees and administrators, agents, employees, and fiduciaries).

**1.25.    Settlement Class Member.** "Settlement Class Member" means all Class Members who do not opt out of the class action settlement by complying with the procedures set forth in the Settlement Notice.

**1.26.    Settlement Member.** "Settlement Member" means all Settlement Class Members and PAGA Members.

**1.27.**   **Settlement Notice.** "Settlement Notice" means the Notice of Class Action and PAGA Settlement, substantially in the form attached as Exhibit A.

**2.**     **RECITALS**

**2.1.**   **Initiation of Action.** On or about November 27, 2018, Plaintiff filed the original complaint initiating the Action on behalf of a putative class of "all employees who were or are employed by Defendants in the State of California [since November 27, 2014] as non-exempt employees." The original complaint alleged causes of action for: "(1) Failure to Pay for All Hours Worked (California Labor Code §§ 510, 1194); (2) Failure to Pay Wages at the Agreed Rate; (3) Failure to Pay Overtime Compensation (Welfare Commission Orders and California Labor Code §§ 510, 1194); (4) Meal and Rest Break Violations (California Labor Code §§ 200, 226.7, 512, and 12 C.C.R. § 11040); (5) Failure to Reimburse Expenses (California Labor Code §§ 2802); (6) Failure to Pay Wages at the Time of Termination (California Labor Code §§ 201-203); (7) Failure to Provide Proper Wage Statements (California Labor Code § 226(a)); and (8) Unfair Business Practices (Business and Professions Code §17200)."

**2.2.**   **Operative Complaint.** On or about March 26, 2019, Plaintiff filed a first amended complaint. In addition to the eight causes of action alleged in the original complaint, the first amended complaint alleges five additional causes of action for: "(9) [Failure to Make Proper Disclosure in] Violation of 15 U.S.C. §§ 1681b(b)(2)(A) (Fair Credit Reporting Act ["FCRA"]); (10) [Failure to Give Proper Summary of Rights in] Violation of 15 U.S.C. §§ 1681b(b)(2)(A) [FCRA]); (11) [Failure to Make Proper Disclosure in] Violation of California Civil Code § 1786 et seq. (Investigative Consumer Reporting Agencies Act ["ICRAA"]); (12) [Failure to Make Proper Disclosure in] Violation of California Civil Code § 1785 et seq. (Consumer Credit Reporting Agencies Act ["CCRAA"]); and (13) Violation of California Labor Code §§ 2698 et seq. ["PAGA"]"

**2.3.**   **Initial Litigation.** On April 11, 2019, Defendant removed the Action to this Court, and on May 17, 2019, Defendant answered the operative first amended complaint. As part of Plaintiff's initial investigation of the alleged claims, Defendant provided Plaintiff informal discovery, including information about and from a prior class action, *Pederson v. Airport Terminal Services, Inc.,* Central District of California Case No. 5:15-cv-02400-VAP-SP, in which a class action settlement had been

1  granted final approval on August 3, 2018. Plaintiff and Defendant likewise exchanged information about

2  the claims Plaintiff additionally alleged in the first amended complaint.

3      **2.4.    Agreement to Mediate and Stay.** The Parties continued to meet and confer about

4  Plaintiff's claims described above and Defendant's defenses. On July 8, 2019, the Parties agreed to

5  schedule an early mediation, sought availability from mutually agreeable mediators, and were provided

6  available mediation dates in February 2020. On July 15, 2019, the Court stayed the Action to permit the

7  Parties to attempt to mediate the matter. The Parties subsequently met and conferred on numerous

8  occasions and continued to discuss Plaintiff's claims and Defendant's defenses.

9      **2.5.    Continuing Investigation.** In addition to the discussions and informal exchange of

10  information and records subject to mediation privileges and Rule 408 of the Federal Rules of Evidence,

11  Class Counsel continued investigating the claims alleged and allegedly discovered against Defendant in

12  the Action. Class Counsel also analyzed any and all applicable defenses and case law and authorities

13  raised by Defendant.

14      **2.6.    Defendant's Denials.** Defendant denied and continues to deny (i) all of the allegations

15  alleged by Plaintiff in the Action or during the course of investigation and discovery, (ii) that it violated

16  any applicable laws, (iii) that it would be liable or owes damages, penalties, or any other type of

17  remedies to anyone with respect to the alleged facts or claims asserted in the Action or alleged during

18  the course of investigation and discovery, and (iv) that class certification or representative treatment of

19  the Action or any alleged claims would be proper.

20      **2.7.    Mediation and Continued Settlement Efforts.** On February 28, 2020, the Parties

21  attended a mediation with Lisa Klerman, an experienced mediator knowledgeable of both the wage and

22  hour laws and class and representative claims alleged in and allegedly discovered in investigating the

23  Action. The Parties were not able to resolve the matter at the mediation. The Parties, however, continued

24  to work with the mediator. Following extensive arm's-length negotiations, with the assistance of a

25  mediator's proposal, and in light of all known facts and circumstances—including the difficulty of

26  proving Plaintiff's claims, potential defenses asserted by Defendant, the uncertainty associated with

27  litigation, the risks of significant delay, and numerous potential appellate issues—on or about March 19,

28  2020, the Parties were able to agree to the principal terms of a mediated resolution.

**2.8.    No Admission of Liability.** Although Defendant denied and continues to deny all of the allegations made by Plaintiff in the Action, Defendant—without admitting or conceding any liability or wrongdoing whatsoever and without admitting or conceding that class certification or representative treatment would be appropriate for any purpose other than settlement purposes alone—has agreed to settle the Action on the terms and conditions set forth in this Agreement for the sole purpose of avoiding the burden, expense, and uncertainty of continuing the Action.

**2.9.    Class Counsel's Evaluation.** Based on Class Counsel's investigation and evaluation over the course of more than one year, Class Counsel is of the opinion that the terms set forth in this Agreement are fair, reasonable, adequate, and in the best interests of Settlement Members.

**2.10.    Certification of Settlement Class Only.** This Agreement is contingent upon the approval and certification by the Court of a class for settlement purposes only. Defendant does not waive, and instead expressly reserves, any and all rights to challenge the propriety of class certification or representative treatment for any other purpose. Absent a Final Approval Order, the Parties do not stipulate to class certification or representative treatment, no party will be estopped as a result of this Agreement or efforts to obtain a Final Approval Order, and the Parties will revert to their positions they had before this Agreement.

**2.11.    Intention of Parties and Agreement to Cooperate. It** is the desire of the Parties to fully, finally, and forever settle, compromise, or discharge any and all claims, rights, demands, charges, complaints, causes of action, obligations or liability of any and every kind that were or could have been asserted in the Action as amended or that arise out of the alleged facts, circumstances, and occurrences underlying the allegations in the Action as amended. The Parties agree to cooperate and take all steps necessary and appropriate to effectuate all aspects of this Agreement, to obtain a Preliminary Approval Order and Final Approval Order.

**3.    NOTICE TO CLASS MEMBERS**

**3.1.    Administrator.** Plaintiff and Class Counsel shall request that the Court appoint ILYM as Administrator for purposes of sending the Settlement Notice to Class Members. The Parties agree that Administration Costs should not exceed $22,500.00. All disputes relating to the Administrator's performance of its duties, after good-faith efforts by the Parties to first resolve such disputes, will be

referred to the Court, if necessary, which will have continuing jurisdiction over this Agreement until all payments and obligations contemplated by this Agreement have been fully completed to Class Counsel and Defendant's Counsel's satisfaction. Except as otherwise provided herein, if the Court does not enter a Final Approval Order, Class Counsel and Defendant shall each pay one-half of any Administration Costs incurred.

       **3.2.**    **Class Data.** Within 15 business days of the Preliminary Approval Order, the Administrator shall execute a confidentiality agreement and Defendant shall provide to the Administrator each Class Member's most current, known mailing address, as well as data sufficient for the Administrator to determine each Class Member's settlement shares. The Administrator shall keep data provided by Defendant strictly confidential, shall not share it with Class Counsel, and shall use it only for the purposes described herein.

       **3.3.**    **Settlement Notice.** Within 15 business days of receipt of class data, the Administrator shall send the Settlement Notice to each Class Member via First Class U.S. Mail, using the most current, known mailing address for each Class Member, based on class data provided by Defendant. Any Settlement Notice returned to the Administrator as undeliverable shall be sent promptly via First Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, the Administrator shall promptly attempt to determine the correct address using a single skip-trace search and shall then promptly send a single re-mailing. The mailing of the Settlement Notice shall be the sole means of notice to Class Members.

       **3.4.**    **Proof of Mailing.** At least 5 calendar days prior to a hearing on a motion for a Final Approval Order, the Administrator shall provide Class Counsel and Defendant's Counsel—and Class Counsel shall provide the Court—a declaration by the Administrator of due diligence and proof of mailing with regard to mailing of Settlement Notice.

**4.**    **CLASS MEMBERS' RESPONSE OPTIONS**

       **4.1.**    **Consideration Period.** Except as specifically provided herein, Class Members shall be provided 45 calendar days after the postmark date of the initial mailing of the Settlement Notice to opt out of or to object to the settlement, and no Class Member responses of any kind that are postmarked

more than 45 calendar days after the initial mailing of the Settlement Notice shall be considered. The Parties shall do nothing to encourage or solicit Class Members to opt out or object to the settlement.

**4.2.    Opt-Out and Objection Rights and Procedures.** Class Members must comply with the procedures set forth in the Settlement Notice to opt out of or object to the settlement of class action claims. Class Members may opt out by mailing to the Administrator the Request for Exclusion form (attached to the Settlement Notice), which expresses their desire to be excluded from and not be a Settlement Class Member. Settlement Class Members shall be given the opportunity to object to the terms of the class action settlement. Class Members who fail to make objections in the manner specified in the Settlement Notice shall be deemed to have waived any objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement. Any Request for Exclusion or objection must include a Class Member's name (and former names, if any), current address, current telephone number, and last four digits of his or her social security number. Any Request for Exclusion or objection that does not include all required information or that is not submitted on a timely basis shall be deemed null, void, and ineffective. If a Class Member submits both a Request for Exclusion and an objection, the Class Member's objection shall be valid and shall be deemed to invalidate the Request for Exclusion. Class Members shall not have any right to object to or opt out of the settlement of the PAGA cause of action.

**4.3.    Opt-Out Effect.** Class Members who opt out of the settlement pursuant to the terms of this Agreement shall not be permitted to object to the settlement or appeal and shall not receive any Individual Settlement Payment from the Net Settlement Amount. Except with respect to the PAGA cause of action, Class Members who opt out also shall not be bound by the release provisions in this Agreement or the Final Approval Order. Each Class Member who does not opt out of the settlement shall remain qualified to receive an Individual Settlement Payment and to being bound by the applicable release provisions in this Agreement or the Final Approval Order.

**4.4.    Objection Effect.** Class Members who submit an objection shall remain subject to being bound by the release provisions in this Agreement or the Final Approval Order. Class Members who submit an objection pursuant to the procedures set forth in the Settlement Notice may appear at the hearing on a motion for a Final Approval Order, either in person or through counsel, but must state their

intention to do so at the time they submit their written objection. Class Members may withdraw their objections at any time.

**4.5.    Proof of Class Members' Responses.** By not later than 50 calendar days after the initial mailing of the Settlement Notice, the Administrator will prepare and submit a declaration attesting to (by number of relevant individuals), its mailing of the Settlement Notice, its inability to deliver the Settlement Notice due to invalid addresses, and its receipt of valid Requests for Exclusion or objections. Prior to the hearing on the motion for a Final Approval Order, the Administrator shall prepare any supplemental declarations regarding the administration of the settlement, as jointly requested by the Parties. Class Counsel shall file any valid objections with the Court. Upon completion of administration of the settlement, the Administrator shall provide written certification of such completion to Class Counsel and Defendant's Counsel.

**4.6.    Defendant's Right to Withdraw.** Defendant shall have the right, at its sole option, to withdraw from this Agreement within 15 business days after expiration of the response period, if more than 5% of the Class Members opt out. If Defendant exercises the right to withdraw from this Agreement, then Defendant shall pay the Administrator's expenses up to the date this Agreement is nullified.

**5.    SETTLEMENT PROCEEDS**

**5.1.    Gross Settlement Amount.** Defendant agrees to pay a maximum, non-reversionary settlement amount of $700,000. The Gross Settlement Amount is inclusive of any Attorneys' Fees and Costs Award, Class Representative Incentive Payment, LWDA Payment, Administration Costs, Individual PAGA Payments, Individual Settlement Payments, or any other Court-required payments that Defendant may be required to pay in connection with the Final Approval Order. The parties weighted the Agreement to resolve the Class Member claims occurring in the estimated 82,190 workweeks worked by Class Members following the preliminary approval of the settlement in the *Pederson* matter. To the extent that the number of workweeks worked by Class Members through the date of a Preliminary Approval Order exceeds 82,190 plus 10 % (or 90,409) workweeks, Defendant shall have the option to abridge the Settlement Class Members' Released Claims to include only through the pay period in which 90,409 workweeks after the *Pederson* preliminary approval order have been worked by

11

Settlement Class Members or to increase the Gross Settlement Amount in proportion to the increase in workweeks in excess of 90,409.

  **5.2. Timing of Funding and Payments.** Within 15 business days following the Effective Date, Defendant shall deposit with the Administrator the Gross Settlement Amount, which shall be deposited into an interest-bearing escrow account. Within 15 business days of funding, the Administrator shall calculate and distribute the amounts to be paid pursuant to the Final Approval Order. Notwithstanding the foregoing, Plaintiff shall confer with Defendant prior to the filing of a motion seeking a Final Approval Order regarding any potential need to request a different proposed funding deadline for a Final Approval Order.

  **5.3. Maximum Settlement Payment and Requested Allocations Not Material.** The Court's approval of an Attorneys' Fees and Costs Award and Class Representative Incentive Payment are not material terms of this Agreement. If the Court requires other allocations or different amounts than requested for an Attorneys' Fees and Costs Award, Class Representative Incentive Payment, Administration Costs, or PAGA Penalty Fund, the other terms of the Agreement shall apply. The Parties agree that the Court's approvals of the requested Attorneys' Fees and Costs Award, Class Representative Incentive Payment, Administration Costs, or PAGA Penalty Fund are not material terms of the Agreement and that an award of less or more than the amounts requested would not give rise to a basis to abrogate the Agreement. Any different amounts required or approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount.

   **5.3.1. Attorneys' Fees and Costs.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve an Attorneys' Fees and Costs Award in the amount of up to $33^{1}/_{3}\%$ of the Gross Settlement Amount (or $233,333.33), plus reasonable costs not to exceed $20,000. Class Counsel agrees that Class Counsel is responsible for allocating this payment among themselves or any other counsel for Class Members settling claims through the Final Approval Order. Within 15 business days after the Effective Date, Class Counsel shall transmit instructions to the Administrator as to how the Attorneys' Fees and Costs Award shall be paid. Except as provided in this Agreement, Defendant shall have no liability for any attorneys' fees or costs in connection with the

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS

Action. Plaintiff, Class Counsel, and Settlement Members waive any additional claim for attorneys' fees and costs incurred in connection with the Action.

      **5.3.2. Class Representative Incentive Payment.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve a Class Representative Incentive Payment of up to $5,000 to Plaintiff. Any Class Representative Incentive Payment is supplemental to Plaintiff's Individual Settlement Payment and Individual PAGA Payment.

      **5.3.3. PAGA Penalty Fund.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve allocation of $30,000 to a PAGA Penalty Fund. Any Court-approved PAGA Penalty Fund is to be distributed pursuant to statute with 75% of the PAGA Penalty Fund payable as an LWDA Payment. The remaining 25% of the PAGA Penalty Fund is to be distributed to PAGA Members as Individual PAGA Payments, based on the pro rata number of workweeks individual PAGA Members worked during the PAGA Period.

      **5.3.4. Administration Costs.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve Administration Costs of up to $22,500.00. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize Administration Costs.

      **5.4.     Individual Settlement Payments.** The Parties agree that Individual Settlement Payments will be characterized as 80% as Internal Revenue Service ("IRS") Form 1099 income and 20% as W-2 income. The Net Settlement Amount shall be distributed in separate checks to Settlement Class Members, without the need to submit a specific claim form, subject to withholdings required by applicable tax laws for the portion allocated to W-2 income to be remitted to the appropriate taxing authorities by the Administrator.

      **5.4.1. Total Settlement Class Member Shares.** The Net Settlement Amount shall be allocated among Settlement Class Members by (i) calculating the total number of workweeks all Settlement Class Members worked during the period from November 27, 2014, through the date of a Preliminary Approval Order, (ii) determining the number of Settlement Class Members hired on or after March 26, 2017, and multiplying that number by five, and (iii) adding the two sub-totals to determine the "Total Settlement Class Member Shares."

**5.4.2.  Individual Settlement Class Member Shares and Payments.** Individual Settlement Payments shall be allocated by (i) determining the number of weeks a Settlement Class Member worked during the period from November 27, 2014, through the date of a Preliminary Approval Order and, if the Settlement Class Member was hired on or after March 26, 2017, adding five, (ii) dividing the result by the Total Settlement Class Member Shares, and (iii) multiplying the result by the Net Settlement Amount available for allocation to Individual Settlement Payments. Such shares shall be allocated to Settlement Class Members for Individual Settlement Payments.

**5.5.  Undeliverable or Uncashed Checks.** All uncashed or undeliverable settlement checks will expire after 180 days after the postmarked date of mailing. At that time, the sum value of all expired checks will be tallied by the Administrator, who will direct the principal for any undeliverable or otherwise uncashed settlement checks to the California Secretary of State Unclaimed Property Fund or as otherwise approved by the Court in the Final Approval Order.

**5.6.  No Tax Advice or Liability.** Except as otherwise stated herein, all payments will be subject to IRS Form 1099 reporting. The Administrator shall issue any necessary IRS Form 1099 or W-2 reporting and administration. The Parties have had an opportunity to consult with independent tax counsel. The Parties are not giving any tax advice in connection with the settlement or any payments to be made pursuant to the Agreement. The Parties do not intend anything contained in this Agreement to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall anything in this Agreement be relied upon as such. The Settlement Notice shall advise that Class Members shall be solely and legally responsible for paying any applicable taxes on their respective Individual Settlement Payments and Individual PAGA Payments and shall indemnify and hold harmless the Parties from any claim or liability for taxes, penalties, or interest arising as a result of the payments.

**5.7.  No ERISA Impact.** None of the payments made pursuant to this Agreement shall be considered for purposes of determining eligibility for, vesting or participation in, or contributions to any benefit plan, including, without limitation, all plans subject to the Employee Retirement and Income Security Act of 1974 ("ERISA"). Payments shall not be considered as a payment of wages or compensation under the terms of any applicable benefit plan and shall not affect participation in, eligibility for, vesting in, the amount of any past or future contribution to, or level of benefits under any

14

applicable benefit plan. Any amounts paid will not impact or modify any previously credited hours of service or compensation taken into account under any benefit plan sponsored or contributed to by Defendant or any jointly-trusteed benefit plan. For purposes of this Agreement, "benefit plan" means each and every "employee benefit plan" as defined in 29 U.S.C. § 1002(3), and, even if not thereby included, any bonus, pension, stock option, stock purchase, stock appreciation, welfare, profit sharing, retirement, disability, vacation, severance, hospitalization, insurance, incentive, deferred compensation, or any other similar benefit plan, practice, program, or policy.

**6.    RELEASES**

    **6.1.    Class Member Acknowledgment.** Class Members acknowledge that they may hereafter discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a released claim. Class Members nonetheless acknowledge that this Agreement and its releases shall be and shall remain effective in all respects notwithstanding such different or additional facts or law regarding such released claims. This Agreement is conditioned upon covenants by Class Members that they will not participate in any proceeding involving the released claims set forth below and that Defendant shall not owe any further monies beyond the Gross Settlement Amount to Settlement Members or to the State of California based upon the released claims set forth below.

    **6.2.    Release by Class Members.** By operation of the Final Approval Order and entry of final judgment, and except as to such rights or claims as may be created by this Agreement, all Settlement Class Members hereby fully release Defendant, and each Released Party from any and all claims or causes of action that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, including, but not limited to, any claims under federal law and state law for unpaid wages or overtime, meal or rest break violations, inaccurate wage statements, untimely payment of wages, or violation of the applicable Wage Order or Labor Code sections 200-204, 210, 216, 218.5, 218.6, 225.5, 223, 226, 226.3, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197, 1198, and 2802, violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (FCRA), Investigative Consumer Reporting Agencies Act, Civ. Code §§ 1786 *et seq.* (ICRAA), and Consumer Credit Reporting Agencies Act, Civ. Code §§ 1785 *et seq.* (CCRAA), based on allegedly non-compliant disclosures, and any claims under Business and Professions Code section 17200 *et seq.* or Labor Code section 2698 *et seq.* based on

alleged violations of these provisions. PAGA Members hereby fully release Defendant, and each Released Party from any and all claims or causes of action under Labor Code section 2698 *et seq.* that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, for alleged violations of the above Labor Code provisions. These releases do not include any claims that cannot be waived as a matter of law, though Settlement Members acknowledge and agree that they will not accept any monetary recovery from any proceedings relating to any such claims. Plaintiff as a representative of the State of California acknowledges and agrees that collateral estoppel shall bar PAGA Members from any proceedings relating to released claims.

**6.3.    Additional Release by Plaintiff.** In addition to the above release applicable to Plaintiff as a Settlement Member, Plaintiff as an individual also generally releases all claims, known or unknown, in favor of each Released Party, including a waiver of Civil Code section 1542. Plaintiff expressly waives all rights provided by Civil Code section 1542 or other similar statutes that Plaintiff may have against each Released Party. Civil Code section 1542 states:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Plaintiff acknowledges that he has read the entirety of the Agreement, including the above language from the Civil Code, and that he fully understands both the Agreement and the Civil Code section. By executing this Agreement, Plaintiff expressly waives any benefits and rights granted pursuant to Civil Code section 1542 or any statute, rule, or principle of common law or equity, in any jurisdiction, that is similar, comparable, or equivalent, in whole or in part, to Civil Code section 1542. Plaintiff acknowledges and agrees that this knowing and voluntary waiver is an essential and material term of this Agreement, and this Agreement would not have been entered into without such a waiver.

**6.4.    Interim Stay of Proceedings.** Plaintiff and Class Counsel agree to refrain from further litigation of any claim to be released under the Agreement, except such proceedings necessary to implement and obtain a Final Approval Order. The Parties agree to request that the Preliminary Approval Order enjoin Class Members from initiating or prosecuting any proceeding on any claim to be released under the Agreement, unless and until the Class Member has opted out of the class in the

manner described above. This settlement is conditioned upon the releases by Class Members as described herein, and upon covenants by Class Members that they will not participate in any actions, lawsuits, proceedings, complaints, or charges brought individually or by any other agency, persons, or entity in any court or before any administrative body related to the released claims, nor will Class Members contest or interfere with efforts by Defendant or a Released Party to oppose any attempt to bring such released claims against Defendant or a Released Party.

**6.5.    Inadmissibility of Settlement Documents.** Neither this Agreement nor any other settlement document shall be offered in any case or proceeding as evidence of any admission by Defendant of any liability on any claim or allegation. The Parties understand and agree that this Agreement and all exhibits thereto are settlement documents and shall be inadmissible for any purpose in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement or implementing order. The Parties agree that, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement implementing order.

**7.    COURT APPROVAL**

**7.1.    Preliminary Approval.** Plaintiff shall submit to the Court a motion for a Preliminary Approval Order, which will, among other things: (i) preliminarily approve the proposed settlement according to the terms in this Agreement, (ii) provide for the Settlement Notice to be sent to Class Members, and (iii) schedule a hearing on a motion for a Final Approval Order. The motion shall be unopposed by Defendant, unless it seeks relief not specified by this Agreement. In such event, Defendant reserves its rights to address any assertions not specified in this Agreement.

**7.2.    Final Approval.** Not later than 28 days before the date set for a hearing on a motion for a Final Approval Order, or such other time as the Court may require, Class Counsel shall notice, file, and move for a Final Approval Order, which shall propose findings and orders: (i) approving the settlement, (ii) adjudging the terms to be fair, reasonable, and adequate, (iii) reciting the release terms, (iv) directing that the settlement's terms and provisions be carried out; (v) entering judgment in accordance with this Agreement without further fees or costs to any party except as set forth in this Agreement, and (vi)

1    retaining jurisdiction to oversee administration and enforcement of the terms of this Agreement and the

2    Court's orders.

3         **7.3.    Effect of Failure to Obtain Final Approval Order.** In the event the Court effects a

4    material change or fails to enter final judgment in accordance with this Agreement, or such final

5    judgment is reversed or otherwise does not become a "final judgment" for purposes of res judicata, then

6    this entire Agreement will be voidable and unenforceable, subject to the Parties' agreement to the

7    contrary, and the costs of administration shall be split equally between the Parties. If the settlement is

8    not finally approved, the Parties agree that they will revert to their positions in the Action prior to the

9    time the settlement was reached. The Action shall proceed as if no settlement has been attempted, unless

10   the Parties jointly agree to seek reconsideration or appellate review of the ruling or seek Court approval

11   of a renegotiated settlement.

12        **7.4.    Waiver of Appeal Rights.** By entering into this Agreement, Plaintiff and Class Counsel

13   hereby waive any and all rights they may have to appeal any judgment, ruling, or order made by the

14   Court in this Action, including, without limitation, any Final Approval Order.

15   **8.    MISCELLANEOUS**

16        **8.1.    Parties' Authority.** The signatories hereto represent that they are fully authorized to

17   enter into this Agreement and are fully authorized to bind the Parties to all terms stated herein. It is

18   agreed that Class Members are so numerous that it is impossible or impractical to have each Class

19   Member execute this Agreement. The Final Approval Order shall deem that this Agreement has been

20   executed on behalf of Settlement Members by Plaintiff and Class Counsel, and shall have the same force

21   and effect as if executed by each Settlement Member.

22        **8.2.    Entire Agreement.** This Agreement, which includes the Definitions, Recitals, and all

23   Exhibits attached hereto, constitute the entire agreement between the Parties with regard to the subject

24   matter contained herein, and all prior and contemporaneous negotiations and understandings between

25   the Parties shall be deemed merged into this Agreement.

26        **8.2.1.    Materiality of Terms.** The Parties have arrived at this Agreement as a result of

27   arm's-length negotiations. Except as otherwise stated herein, all terms and conditions of this Agreement

28   are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS

**8.2.2. Execution and Counterparts.** This Agreement may be executed by signing on the designated signature block and transmitting that signature page via facsimile or as an attachment to an e-mail to counsel for the other party. Any signature made and transmitted by facsimile or as an attachment to an e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page. This Agreement may be executed in counterparts, and when all signatories have executed at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one signed Agreement, which shall be binding upon and effective as to all Parties.

**8.2.3. Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiff and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**8.2.4. Waivers, Modifications, Etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement. The time periods and dates provided in this Agreement with respect to giving of notices and hearings are subject to Court approval and modification by the Court or by written stipulation of Class Counsel and Defendant's Counsel.

**8.3. Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

   **8.3.1. Exhibits Incorporated by Reference.** The terms of this Agreement include the terms set forth in any attached Exhibit, which are incorporated by this reference as though fully set forth herein. Any Exhibit to this Agreement is an integral part of the settlement.

   **8.3.2. Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

   **8.3.3. Invalidity of Any Provision.** Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to render all provisions of this Agreement valid and enforceable.

  **8.4. Further Acts and Cooperation Between the Parties.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of another, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. All papers to be filed with the Court by Plaintiff or Defendant in connection with this Agreement shall be submitted to the other Party at least two days prior to filing.

  **8.5. No Prior Assignments or Undisclosed Liens.** Plaintiff and Class Counsel represent and warrant that they have not assigned, transferred, conveyed, or otherwise disposed of, or purported to assign, transfer, convey, or otherwise dispose of any Released Claims or the Attorneys' Fees and Costs Award to be paid pursuant to this Agreement. Plaintiff and Class Counsel further represent and warrant that there are not any liens or claims against any of the amounts to be paid by Defendant pursuant to this Agreement. Plaintiff and Class Counsel agree to defend, indemnify, and hold Defendant harmless from any liability, losses, claims, damages, costs, or expenses, including reasonable attorneys' fees, resulting from a breach of these representations or from any lien or assignment.

  **8.6. No Undue Publicity.** Neither Plaintiff nor Class Counsel shall cause to be publicized, directly or indirectly, any discussion resulting in or the existence of this Agreement or its terms in any type of mass media, including, but not limited to, speeches, press conferences, press releases, interviews, television or radio broadcasts, newspapers, website postings, messages on the Internet, Facebook,

Twitter or any other social media. Breach of this provision shall entitle Defendant, in the exercise of its sole discretion, to nullify this Agreement at any time before the Effective Date. Without limitation by the foregoing, Defendant also may enforce this provision through an action for injunctive relief. Plaintiff waives any obligation by Defendant to file a bond in connection with any such action. This provision does not apply to any publications ordered by the Court or approved by Defendant. Notwithstanding the foregoing, Class Counsel shall be permitted to reference this case in declarations submitted to courts in support of their competency as class counsel.

8.7.    **Continuing Jurisdiction.** The Court shall retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the material terms of this Agreement absent the Parties' mutual agreement.

8.8.    **Disputes.** If the Parties have a dispute with regard to the language of this Agreement, they agree to engage mediator Lisa Klerman  to mediate any such dispute. The Parties will split the costs of the mediator, and all parties will bear their own fees and costs.

8.9.    **Governing Law.** All terms of this Agreement shall be governed by and interpreted according to the laws of the State of California.

**PLAINTIFF**

Dated: January 26, 2021

_____
Francisco J. Cisneros

**COUNSEL FOR PLAINTIFF AND CLASS**

Dated: January __, 2021

_____
Marcus J. Bradley
Kiley L. Grombacher
BRADLEY/GROMBACHER, LLP

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS
66085560v.1

Twitter or any other social media. Breach of this provision shall entitle Defendant, in the exercise of its sole discretion, to nullify this Agreement at any time before the Effective Date. Without limitation by the foregoing, Defendant also may enforce this provision through an action for injunctive relief. Plaintiff waives any obligation by Defendant to file a bond in connection with any such action. This provision does not apply to any publications ordered by the Court or approved by Defendant. Notwithstanding the foregoing, Class Counsel shall be permitted to reference this case in declarations submitted to courts in support of their competency as class counsel.

**8.7.    Continuing Jurisdiction.** The Court shall retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the material terms of this Agreement absent the Parties' mutual agreement.

**8.8.    Disputes.** If the Parties have a dispute with regard to the language of this Agreement, they agree to engage mediator Lisa Klerman to mediate any such dispute. The Parties will split the costs of the mediator, and all parties will bear their own fees and costs.

**8.9.    Governing Law.** All terms of this Agreement shall be governed by and interpreted according to the laws of the State of California.

**PLAINTIFF**

Dated: January __, 2021

_____
Francisco J. Cisneros

**COUNSEL FOR PLAINTIFF AND CLASS**

Dated: January **26**, 2021

_____
Marcus J. Bradley
Kiley L. Grombacher
BRADLEY/GROMBACHER, LLP

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS
66085560v.1

**DEFENDANT**

*Brandy Wallace*

Dated: January ___, 2021

Brandy Wallace
Airport Terminal Services, Inc.

**COUNSEL FOR DEFENDANT**

Dated: February 9, 2021

Aaron R. Lubeley
SEYFARTH SHAW LLP

22

# EXHIBIT 1

## NOTICE TO THE CLASS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
*Francisco J. Cisneros v. Airport Terminal Services, Inc.*
Case No. 2:19-cv-02798-VAP-SP

<div style="background:black;color:white">NOTICE OF PROPOSED CLASS AND REPRESENTATIVE ACTION SETTLEMENT</div>

NAME
ADDRESS
CITY, STATE ZIP

> To:    All current and former non-exempt individuals who were employed by Defendant Airport Terminal Services, Inc. in California from November 27, 2014, through [PRELIMINARY APPROVAL DATE] ("Class Members").

PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED.
YOU MAY BE ENTITLED TO RECEIVE MONEY FROM THIS PROPOSED SETTLEMENT.

**TO BE ELIGIBLE TO RECEIVE YOUR SHARE, YOU DO NOT NEED TO DO ANYTHING.**

This Notice is Court approved. This is not a solicitation from an attorney.

**1.     WHY DID I GET THIS NOTICE?**

You received this Notice because a proposed settlement (the "Settlement") has been reached of a class and representative action lawsuit entitled *Francisco J. Cisneros v. Airport Terminal Services, Inc.* currently pending in the United States District Court, Central District of California, Case No. 2:19-cv-02798-VAP-SP (the "Lawsuit").  Records show that you are a member of the proposed Settlement class ("Class Member").  Because the proposed Settlement would affect your legal rights as a Class Member, the Court ordered that this Notice be sent to you.

The Notice provides you with a brief description of the Lawsuit, the general terms of the proposed Settlement, and your legal rights and obligations.  To obtain more information about the Settlement, including information about how you can see a copy of the Settlement Agreement, see Section 16, below.

**2.     WHAT IS THIS LAWSUIT ABOUT?**

Plaintiff Francisco J. Cisneros ("Class Representative") filed the Lawsuit against Airport Terminal Services, Inc. ("Defendant") on November 27, 2018, alleging that Defendant did not pay for all hours worked, failed to pay wages at the agreed rate, failed to pay overtime compensation, did not provide proper meal and rest breaks, failed to reimburse expenses, did not pay wages at time of termination, did not provide proper wage statements, did not provide proper disclosures for background checks and engaged in unfair competition .

On or about March 26, 2019, Plaintiff filed a first amended complaint adding the following allegations, failure to make proper disclosures. The Lawsuit also includes a Private Attorneys General Act ("PAGA") claim.  For these alleged violations, the Class Representative sought monetary relief and statutory and civil penalties under the Labor Code.

Defendant denies the allegations in the Lawsuit and is prepared to defend the action vigorously.  By entering into this proposed Settlement, Defendant is not admitting any violation or liability in any way to the Class Representative or to Class Members.  The Court has not made any rulings on the merits of the Lawsuit.

**3.     WHAT IS A CLASS ACTION?**

In a class action lawsuit, one or more persons sue on behalf of other people who may have similar claims.  The person suing and those he/she seeks to represent, together are called the class or class members.  A certified class action allows the Court to resolve the claims of all the class members who choose not to exclude themselves from the class.  A class member is bound by the determination or judgment entered in the case, whether the class wins or loses, and may not file his or her own lawsuit on the same claims that were decided in the class action.  A class member is also covered by any settlement reached in the case.  A class action allows one court to resolve all of the issues in a lawsuit for all the class members who choose not to exclude themselves from the class.

In this Lawsuit, Francisco J. Cisneros, a former employee of Defendant, is the Class Representative, and asserts claims on behalf of himself and the putative class.  Airport Terminal Services Inc is the Defendant.  The Class Representative has reached a proposed class-wide Settlement with Defendant, including a settlement of the PAGA claim.  The Court has not made any rulings on whether the Lawsuit may proceed as a class action aside from the proposed class action Settlement.

**4.    WHO IS INCLUDED IN THE SETTLEMENT CLASS?**

All current and former non-exempt individuals who were employed by Defendant Airport Terminal Services, Inc. between November 27, 2014, through [PRELIMINARY APPROVAL DATE] and who do not opt out of the Lawsuit, are included in the proposed Settlement.

**5.    WHAT ARE THE TERMS OF THE SETTLEMENT?**

The proposed Settlement will resolve all claims for unpaid wages or overtime, meal and rest breaks violations, inaccurate wage statements, untimely payment of wages, expense reimbursement and violations of the Fair Credit Reporting Act, Investigative Consumer Reporting Agencies Act and Credit Reporting Agencies Act, based on non-compliant disclosures, and any claims relating to unfair competition.

The proposed Settlement represents a compromise of highly disputed claims.  Nothing in the proposed Settlement is intended to or will be construed as an admission by Defendant that the claims in the Lawsuit have merit or that Defendant has any liability to the Class Representative or to the Class Members on those claims.  The Court has made no ruling on the merits of the Lawsuit.

The Parties have agreed to settle the case for a maximum of $700,000 ("Gross Settlement Amount").  Under the terms of the proposed Settlement, the following payments have been agreed to: (1) attorneys' fees not to exceed $233,333.33; (2) all documented litigation costs to Class Counsel, in amounts set by the Court, not to exceed $20,000; (3) a service payment to the Class Representative for services in the Lawsuit, in an amount not to exceed $5,000; (4) settlement administration costs not to exceed $22,500; and (5) $30,000 will be paid to the California Labor and Workforce Development Agency representing the portion of the Gross Settlement Amount that is allocated as payment for civil penalties to the State of California  in connection with Class Representative's PAGA claim alleged in this matter.  The amount of money remaining after these payments, which is approximately $430,815.16 is the amount that will be distributed to Class Members who do not opt-out of the proposed Settlement ("Net Settlement Amount").  If the proposed Settlement is approved, the Net Settlement Amount will be distributed based on a pro rate number of workweeks individual Class Members worked at any time between November 27, 2017, through [PRELIMINARY APPROVAL DATE].

The Net Settlement Amount will be allocated by (i) calculating the total number of workweeks all Settlement Class Members worked during the period of November 27, 2014, through [PRELIMINARY APPROVAL DATE], (ii) determining the number of Settlement Class Members hired on or after March 26, 2017, and multiplying that number by five, and (iii) adding the two sub-totals to determine the "Total Settlement Class Members Shares."

Individual Settlement Payments shall by allocated by (i) determining the number of weeks a Settlement Class Member worked during the period of November 27, 2014, through [PRELIMINARY APPROVAL DATE], (ii) dividing the result by the Total Settlement Class Member Shares, and (iii) multiplying the result by the Net Settlement Amount available for allocation to Individual Settlement Payments. Such shares will be allocated to Settlement Class Members for Individual Settlement Payments.

**6.    HOW DOES THE SETTLEMENT AFFECT MY RIGHTS?**

If the proposed Settlement is finally approved, the Court will enter a Final Order and Judgment.

**Upon such Final Order and Judgment, you will release the following claims, and will be barred from prosecuting any and all such claims against Airport Terminal Services, Inc.**

By operation of the Final Approval Order and entry of final judgment, and except as to such rights or claims as may be created by this Agreement, all Settlement Class Members hereby fully release Defendant, and each Released Party from any and all claims or causes of action that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, including, but not limited to, any claims under federal law and state law for unpaid wages or overtime, meal or rest break violations, inaccurate wage statements, untimely payment of wages, or violation of the applicable Wage Order or Labor Code sections 200-204, 210, 216, 218.5, 218.6, 225.5, 223, 226, 226.3, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197, 1198, and 2802, violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (FCRA), Investigative Consumer Reporting Agencies Act, Civ. Code §§ 1786 *et seq.* (ICRAA), and Consumer Credit Reporting Agencies Act, Civ. Code §§ 1785 *et seq.* (CCRAA), based on allegedly non-compliant disclosures, and any claims under Business and Professions Code section 17200 *et seq.* or Labor Code section 2698 *et seq.* based on alleged violations of these provisions. PAGA Members hereby fully release Defendant, and each Released Party from any and all claims or causes of action under Labor Code section 2698 *et seq.* that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, for alleged violations of the above Labor Code provisions. These releases do not include any claims that cannot be waived as a matter of law, though Settlement Members acknowledge and agree that they will not accept any monetary recovery from any proceedings relating to any such claims. Plaintiff as a representative of the State of California acknowledges and agrees that collateral estoppel shall bar PAGA Members from any proceedings relating to released claims.

The Judgment will resolve the claims to the extent provided in the Settlement Agreement and will permanently bar all Class Members who do not opt out from prosecuting any and all such claims against Defendants.  You will remain bound by the Settlement, and you cannot sue, continue to sue or be a part of any other lawsuit about the Released Claims.  It also means that all of the Court's orders will apply to you and legally bind you.

The precise definitions of the capitalized terms in this Notice can be found in the Joint Stipulation of Class and Representative Action Settlement, which can be viewed at the Courthouse (United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, California 90012) during normal business hours.

**7.      WHAT DO I NEED TO DO TO RECEIVE A SETTLEMENT PAYMENT?**

You do not need to do anything to participate in the proposed Settlement.  If the proposed Settlement is finally approved, the Settlement Administrator will mail out settlement payments pursuant to the schedule provided in the Settlement Agreement.  Class Counsel has been appointed and approved by the Court to represent you for settlement purposes only.

NOTE:  It is your responsibility to keep a current address on file with the Settlement Administrator to ensure that your settlement payment will be sent to the correct address.  If you fail to keep your address current, you may not receive your settlement payment.

**8.      WHAT IF I DON'T WANT TO PARTICIPATE IN THIS SETTLEMENT?**

You have the right to request exclusion or opt out from the proposed Settlement.  To do so, you must submit a written Request for Exclusion to the Settlement Administrator at the following address: *Francisco J. Cisneros v. Airport Terminal Services, Inc.* c/o ILYM, **********.  Requests for Exclusion must: (1) contain your name, signature, address, telephone number, and the last four digits of your social security number; (2) clearly state that you do not wish to be included in the proposed Settlement; (3) be sent to the Settlement Administrator at the specified address; and (4) be postmarked on or before ******, 2021.

If you timely request to be excluded from the proposed Settlement, you will not receive any payment under the Settlement and will not be bound by the terms of the Settlement.  Unless you timely request to be excluded from the proposed Settlement, you will be sent a settlement payment and you will be bound by the Judgment upon final approval of the Settlement, including the Release described in this Notice.  Class Counsel will not represent your interests if you request to be excluded.

**9.      WHAT IF I WANT TO OBJECT TO THIS SETTLEMENT?**

If you do not request to be excluded, you can object to any of the terms of the proposed Settlement before the Final Approval Hearing in writing.  To object, you must submit a written objection to the Settlement Administrator at the following address *Francisco J. Cisneros v. Airport Terminal Services, Inc.* c/o ILYM, ********** which must: (1) include your name, signature, address, telephone number, and the last four digits of your social security number; (2) state that you wish to object to the proposed Settlement; (3) state whether you intend to appear at the Final Approval Hearing; (4) be sent to the Settlement Administrator at the specified address; and (5) be postmarked on or before ******, 2021.  If the Court rejects your objection and approves the proposed Settlement, you will still be bound by the terms of the Settlement, and you will also be sent a settlement payment.

**10.     WHAT IF I DO NOT EXCLUDE MYSELF FROM THIS SETTLEMENT?**

The proposed Settlement, if finally approved by the Court, will bind all Class Members who do not request to be excluded from the Settlement whether or not they cash their settlement payment checks.  Final approval of the proposed Settlement will bar any Class Member who does not request to be excluded from the Settlement from hereafter initiating a lawsuit or proceeding regarding the Released Claims against the Releasees through [PRELIMINARY APPROVAL DATE].

**11.     WILL THE CLASS REPRESENTATIVE BE COMPENSATED FOR BRINGING THIS LAWSUIT?**

Francisco J. Cisneros will request a service payment of up to $5,000 for his service as Class Representative and for his efforts in bringing the Lawsuit.  The Court will make the final decision as to the amount to be paid to the Class Representative.

**12.     DO I HAVE A LAWYER IN THIS CASE?**

The Court has ordered that the interests of the Class Representative and the Class Members for settlement purposes are represented by:

BRADLEY/GROMBACHER, LLP
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

Class Members will not be separately charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**13.     HOW WILL THE LAWYERS BE PAID?**

Class Counsel will be requesting from the Court an amount not to exceed $233,333.33 for their attorneys' fees and litigation costs not exceeding $20,000.00.  The actual amount awarded to Class Counsel will be determined by the Court.

**14.     WHAT IS THE FINAL APPROVAL HEARING?**

The Court has preliminarily approved the proposed Settlement and will hold a hearing to decide whether to give final approval to the proposed Settlement.  The purpose of the Final Approval Hearing will be for the Court to determine whether the proposed Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Class Members; to consider the award of attorneys' fees and expenses to Class Counsel; and to consider the request for a service payment to the Class Representative.

**15.    WHEN AND WHERE IS THE FINAL APPROVAL HEARING?**

The Court will hold the Final Approval Hearing on ******, 2021 at *** a.m., in Courtroom 8A of the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, California 90012 ("Final Approval Hearing").  The Final Approval Hearing may be continued without further notice to the Class Members.  If the Settlement is not approved by the Court or does not become final for some reason, the Lawsuit may continue, and no settlement payments will be made.

You may attend the Final Approval Hearing, but it is not necessary for you to appear in order to receive your share of the Settlement.  You have the right to attend the Final Approval Hearing without counsel or to be represented by your own counsel at your own expense.  At the hearing, the Court will be available to hear any objections and arguments concerning the proposed Settlement.  However, if you have requested exclusion from the proposed Settlement, you may not object or speak at the Final Approval Hearing.  If you plan to attend the Final Approval Hearing, you may contact Class Counsel to confirm the date and time.

**16.    WILL I BE TAXED ON THE SETTLEMENT PAYMENT?**

For tax purposes, no withholdings shall be made from the Total Settlement Payments to Class Members because the settlement payments are non-wage amounts paid for Class Members' releases, statutory and civil penalties, and interest.  Neither of the Parties nor their respective counsel make any representations as to the taxability to any Class Members of any portions of the settlement payments or other consideration.  Class Members who receive any settlement payment should consult their tax advisors concerning the tax consequences of the settlement payments they receive pursuant to the proposed Settlement.

**17.    HOW DO I GET MORE INFORMATION?**

To obtain a copy of the Joint Stipulation of Class and Representative Action Settlement (which defines the capitalized terms used in this Notice and provides a brief summary of what has happened in the Lawsuit), the operative Complaint filed in the Lawsuit, and other filed documents related to the Lawsuit and this proposed Settlement, you may contact the Clerk's Office at the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, California 90012 during normal business hours.

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Settlement Administrator at the address and telephone number listed below, toll free.  Please refer to the *Francisco J. Cisneros v. Airport Terminal Services, Inc*. matter.

ILYM.
***********
(***) *******

You can visit the settlement website at www.xxxxxxx.com to review the pertinent documents.

**18.    WHAT IF MY INFORMATION CHANGES?**

If this Notice was sent to the wrong address or if, after you receive this Notice, you change your postal address or telephone number, it is your responsibility to inform the Settlement Administrator of your updated information.

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT OR THE JUDGE**

# EXHIBIT B

## CONFIRMATION OF SUBMISSION
## OF SETTLEMENT TO THE LWDA

**Suzette Boucher**

| | |
|---|---|
| **From:** | FormAssembly <no-reply@formassembly.com> on behalf of DIR PAGA Unit <lwdadonotreply@dir.ca.gov> |
| **Sent:** | Monday, February 15, 2021 3:12 PM |
| **To:** | Suzette Boucher |
| **Subject:** | Thank you for your Proposed Settlement Submission |

02/15/2021 03:12:22 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Proposed Settlement
If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

1