**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Francisco J Cisneros,

             Plaintiff,

             v.

Airport Terminal Services, Inc. et al.

             Defendant.

2:19-cv-02798-VAP-SPx

**Order GRANTING Motion for Preliminary Approval of Class Action Settlement (Dkt. 25)**

Before the Court is Plaintiff's Unopposed Motion for Preliminary Class Action Settlement ("Motion").  (Dkt. 25).  Having considered the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without oral argument of counsel pursuant to Local Rule 7-15 and GRANTS the Motion.

## I.      BACKGROUND

### A.      Procedural History

The proposed class action settlement before the Court arises out of a labor and consumer credit class action lawsuit.  (Dkt. 1-5).  On November 27, 2018, Plaintiff filed this action in the Superior Court for the County of Los Angeles alleging Defendant Airport Terminal Services, Inc. ("Defendant") engaged in illegal employment practices under the California Labor Code and California's Unfair Competition Law.  (Dkt. 1-1).  Specifically, Plaintiff

United States District Court
Central District of California

alleged labor code violations for unpaid wages, unpaid meal and rest period

premiums, failure to timely pay final wages, non-compliant wage

statements, and unreimbursed business expenses.  (*Id.*)

On March 26, 2019, Plaintiff filed a First Amended Complaint to add

violations of California's Fair Credit Reporting Act, Investigative Consumer

Reporting Agencies Act, Consumer Credit Reporting Agencies Act, and for

violations under California's Private Attorneys General Act ("PAGA").  (Dkt.

1-5).  Based on these violations, Plaintiff brought (i) a representative action

under PAGA and (ii) a class action on behalf of other employees of

Defendant who allegedly experienced the same violations.

On February 28, 2020, the parties participated in a mediation before

an experienced wage and hour mediator, Lisa Klerman.  (Dkt. 25, at 3).

Prior to mediation, Defendant produced documents related to its wage and

hour policies, including meal and rest breaks, time keeping policies,

electronic time and wage records, and its business organization charts.  (*Id.*)

After negotiations, the parties reached a resolution to settle the instant

action.  (*Id.*)  Over the course of several weeks thereafter, the parties

drafted, negotiated, and revised the Settlement Agreement that is currently

before the Court.  (*Id.*)

**B.    Settlement Class**

The proposed Settlement Class is defined as:

> Any individual who is or was employed as a non-exempt employee by Defendant in the State of California at any time between November 27, 2014, through the date of a Preliminary Approval Order.

(Dkt. 25-1, Ex. A, ¶ 1.7).  The proposed class consists of approximately 2,271 members.  (Dkt. 25, at 3).

**C.    Settlement Terms**

The parties prepared a joint settlement agreement ("Settlement Agreement" or "SA").  (Dkt. 25-1, Ex. A).  The Settlement Agreement establishes a settlement fund of $700,000.00.  (*Id.*, ¶ 5.1).

The SA allocates $30,000 to PAGA penalties.  Class Members will receive 25% of the PAGA Penalty Fund ($7,500.00) which amounts to a net average of $189.70 for each class member.  (Dkt. 25, at 5).  These amounts are derived from "(i) … the total number of workweeks all Settlement Class Members worked during the period from November 27, 2014, through the date of a Preliminary Approval Order6, (ii) determining the number of Settlement Class Members hired on or after March 26, 2017, and multiplying that number by five, and (iii) adding the two sub-totals to determine the "Total Settlement Class Member Shares."  (*Id.*, at 6).

The remaining percentage of the PAGA Penalty Fund (75% or $22,500.00) is allocated to the Labor and Workforce Development Agency ("LWDA").  (*Id.* at 4).

United States District Court
Central District of California

Class Counsel may seek up to 33% of the settlement fund for attorneys' fees, or $233,333.33.  (*Id.*, at 4).  The Settlement Agreement also entitles Plaintiff to a class representative award of $5,000.00.  (*Id.*)

All notice and administration expenses (capped at $22,500.00), attorneys' fees and expenses, and the Class Representative award will be paid from the settlement fund.   (*Id.*, at 4-5).  After disbursements to the class, any money that remains in the settlement fund will be distributed to the California Secretary of State Unclaimed Property Fund.  (*Id.*, at 7).

**D.    Notice Procedures**

The parties developed a Notice Plan with ILYM Group, Inc. ("ILYM" or the "Settlement [or Claims] Administrator").  (*Id.*, at 5).

"Within 15 business days of the Preliminary Approval Order, the Administrator shall execute a confidentiality agreement and Defendant shall provide to the Administrator each Class Member's most current, known mailing address, as well as data sufficient for the Administrator to determine each Class Member's settlement shares."  (Dkt. 25-1, Ex. A, ¶ 3.2).

"Within 15 business days of receipt of class data, the Administrator shall send the Settlement Notice to each Class Member via First Class U.S. Mail, using the most current, known mailing address for each Class Member, based on class data provided by Defendant. Any Settlement Notice returned to the Administrator as undeliverable shall be sent promptly via First Class U.S. Mail to the forwarding address affixed thereto. If no

forwarding address is provided, the Administrator shall promptly attempt to
determine the correct address using a single skip-trace search and shall
then promptly send a single re-mailing. The mailing of the Settlement Notice
shall be the sole means of notice to Class Members."  (*Id.*, Ex. A, ¶ 3.3).

Further, "[a]t least 5 calendar days prior to a hearing on a motion for a
Final Approval Order, the Administrator shall provide Class Counsel and
Defendant's Counsel—and Class Counsel shall provide the Court—a
declaration by the Administrator of due diligence and proof of mailing with
regard to mailing of Settlement Notice."  (*Id.*, Ex. A, ¶ 3.4).

## II.    LEGAL STANDARD

### A.    Preliminary Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims,
issues, or defenses of a certified class may be settled, voluntarily dismissed,
or compromised only with the court's approval."  "[S]trong judicial policy . . .
favors settlements, particularly where complex class action litigation is
concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.
1992).  "The purpose of Rule 23(e) is to protect the unnamed members of
the class from unjust or unfair settlements affecting their rights." *In re
Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008).  The Court's
review of the settlement is meant to be "extremely limited" and should
consider the settlement as a whole.  *Hanlon v. Chrysler Corp.*, 150 F.3d
1011, 1026 (9th Cir. 1998).

At the preliminary approval stage, the Court need only consider whether the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 3:08-cv-05198-EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. 5:15-cv-01551-JGB-DTBx, 2016 WL 7479380, at *8 (C.D. Cal. Sept. 12, 2016) ("At the Preliminary Approval phase, the Court need only decide whether the settlement is potentially fair."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

**B.    PAGA Settlement**

The California legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) ("If the California Labor and Workforce Development Agency ('LWDA') declines to investigate an alleged labor law violation or issue a citation, an aggrieved employee may commence a PAGA action against an employer 'personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.'").  An "aggrieved employee" is defined as "any person who was

United States District Court
Central District of California

1    employed by the alleged violator and against whom one or more of the

2    alleged violations was committed."  Cal. Lab. Code § 2699(c).

3

4        "An employee plaintiff suing [under PAGA] does so as the proxy or

5    agent of the state's labor law enforcement agencies."  *Arias*, 46 Cal. 4th at

6    986.  An action for civil penalties under PAGA "is fundamentally a law

7    enforcement action designed to protect the public and not to benefit private

8    parties." *Id.* (quoting *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17

9    (1977)).  "Because an aggrieved employee's action under [PAGA] functions

10   as a substitute for an action brought by the government itself, a judgment in

11   that action binds all those, including nonparty aggrieved employees, who

12   would be bound by a judgment in an action brought by the government."  *Id.*

13   "Of the civil penalties recovered, 75 percent goes to the California Labor

14   and Workforce Development Agency, leaving the remaining 25 percent for

15   the 'aggrieved employees.'" *Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C

16   08-2073 MHP, 2010 WL 1340777, at *1 (N.D. Cal. Apr. 2, 2010) (quoting

17   Cal. Labor Code § 2699(i)).

18

19       Further, section 2699(l)(2) states, "[t]he superior court shall review

20   and approve any settlement of any civil action filed pursuant to this part. The

21   proposed settlement shall be submitted to the agency at the same time that

22   it is submitted to the court."  Cal. Lab. Code § 2699(l)(2).  "A court has

23   discretion to approve the settlement of PAGA claims if the settlement would

24   be 'fair.'" *Junhee Lee v. Esra Jung*, No. 15-cv-01529-HRL, 2016 U.S. Dist.

25   LEXIS 136162, at *2 (N.D. Cal. Sep. 29, 2016).  "The court may consider

26   factors such as the merits of the action, the maximum recovery the plaintiff

United States District Court
Central District of California

could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at *2 (E.D. Cal. Jan. 12, 2017).

The LWDA has suggested some guidelines for approving PAGA claims, which have been cited with approval by a number of courts:

> when a PAGA claim is settled, the relief provided for under the PAGA [should] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [should] evaluate whether the settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA.

*Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (internal quotations and citations omitted); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). In doing so, the Court may "consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis*, 2017 WL 131994 at *2.

As other courts in this district have found, however, "the Act is surprisingly short on specifics," and neither the California legislature, the LWDA, nor California courts have identified "the appropriate standard for approval of such a settlement." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). As a result, "[f]ederal district courts, sitting in diversity, have often been left to their own

devices in this area of great importance to the citizens of California." *Id*. at 1075-76.

### III.    DISCUSSION

**A.    <u>Class Certification</u>**

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a class action settlement upon determining that notice is justified because the Court concludes it will likely be able to approve the settlement and certify the class for purposes of judgment on the settlement.  When a plaintiff seeks conditional class certification for purposes of settlement, the court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co*., 327 F.3d 938, 952-53 (9th Cir. 2003).

Under Rule 23(a), the plaintiff must show the class is: sufficiently numerous, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of those of the class, and the representative parties will fairly and adequately protect the class' interests.  Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes.

Here, Plaintiff seeks certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) allows certification where: (1) questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.    Rule 23(a) Requirements

#### i.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. Jan. 5, 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when [the] class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. Nov. 16, 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473-74 (C.D. Cal. Dec. 20, 2012). Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations "plainly suffice" to meet the numerosity requirement.  *In re Cooper*, 254 F.R.D. at 634.

Here, Plaintiff's allegations meet the standard for numerosity.  The settlement class consists of approximately 2,271 class members which would make joinder impracticable.  (Dkt. 25, at 10).  Defendant, furthermore, does not dispute that the proposed class is numerous.  Accordingly, as requiring the joinder of hundreds of thousands of plaintiffs would be impracticable, the Court finds the Class meets the numerosity requirement.

ii.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of class wide resolution.  (*Id*.).  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  (*Id*.).

Here, the overriding issues in this litigation present at least one common question that can be determined on a class wide basis, which is whether Defendant's meal period and rest break, timekeeping and compensation policies are compliant with California law.

iii.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's claims are typical of the class members' claims because every member of the class, including Plaintiff, asserts damages

United States District Court
Central District of California

11

based on Defendant's labor code violations and unfair competition practices.

Plaintiff also notes that Plaintiff's and the class members' claims turn on five principal courses of conduct: (1) unpaid "off-the-clock work"; (2) non-compliant meal and rest breaks due to understaffing; (3) failure to provide proper wage statements; (4) failure to provide proper background check disclosures; and (5) failure to reimburse or pay Plaintiff and the class for business related expenses including cellular phones that were used to carry out job duties.  (Dkt. 25, at 12-13).  Accordingly, Plaintiff's claims are "reasonably coextensive" with those of the class.  *See Hanlon*, 150 F.3d at 1020; *see also Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563 AG-FMOx, 2019 WL 4854849, at *6 (C.D. Cal. Oct. 1, 2019) ("Because Plaintiff only seeks to represent a class of consumers whose credit reports contained this exact same 'inaccuracy,' the unnamed class members share an identical injury.  Further, Plaintiff's claim is based on the same course of conduct by Defendant as the claims of the unnamed class members" satisfying the typicality requirement).

### iv.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires: (1) a lack of conflicts of interest between the proposed class and the proposed class representative, and (2) representation by qualified and competent counsel that will prosecute the action vigorously.  *Staton*, 327 F.3d at 957. The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and the class

United States District Court
Central District of California

representatives to pursue their own interests at the expense of the interests of the class.  (*Id*. at 958 n.12).

There is no evidence of a conflict of interest between Plaintiff and the class. Plaintiff's claims are identical to those of the class, and he has every incentive to pursue those claims vigorously.  Nor is there any evidence that Plaintiff's counsel will not adequately represent or protect the interests of the class.  Plaintiff's lead counsel, Marcus J. Bradley, has extensive experience litigating wage and hour class actions and relied on his experience litigating the instant action.  (*See* Bradley Decl., Dkt. 25-1, ¶¶ 39-48).  Counsel vigorously prosecuted this action since 2019 and meet all the criteria to be appointed as interim class counsel pursuant to Rule 23(g)(3).  *See, e.g., Reyes*, 2019 WL 4854849, at *7 ("As for Plaintiff's and counsel's willingness to vigorously prosecute this action on behalf of the class, the Court has no doubt. The Court knows only too well how actively this case has been litigated on both sides from its inception in 2016.").  There is also no evidence of conflicts of interest between Plaintiff and Defendant or Plaintiff's counsel and Defendant.

As Plaintiff has met all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

### 2.    Rule 23(b)(3) Requirements

Plaintiff seeks preliminary class certification under Rule 23(b)(3).  Rule 23(b)(3) applies where the court finds: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other

United States District Court
Central District of California

available methods for fairly and efficiently adjudicating the controversy."
*See In re Wells Fargo Home Mortg. Overtime Pay Litig*., 571 F.3d 953, 957
(9th Cir. 2009).

> i. <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether classes are
sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150
F.3d at 1022.  "This analysis presumes that the existence of common issues
of fact or law have been established pursuant to Rule 23(a)(2); thus, the
presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)."  (*Id*.).
"When common questions present a significant aspect of the case and they
can be resolved for all members of the class in a single adjudication, there
is clear justification for handling the dispute on a representative rather than
on an individual basis."  (*Id*.).

As discussed above, Plaintiff has demonstrated commonality amongst
proposed class members as the central issue in this case is whether
Defendant's meal period and rest break, timekeeping and compensation
policies are compliant with California law.  The only individual
determinations, then, are the quantification of damages for each Settlement
Class member—and such individual determinations do not defeat class
certification.  Plaintiff, therefore, has demonstrated that common issues
predominate over individualized concerns.

> ii. <u>Superiority</u>

United States District Court
Central District of California

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.  (*Id*.).

A class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently.  The potential monetary relief for each Settlement Class Member ($189.70 for 2,271 class members) is dwarfed by the cost of litigating on an individual basis.  Without class certification, it is unlikely that these claims would be litigated at all.  Hence, Plaintiff has satisfied Rule 23(b)(3).

**B.**  **Fairness, Adequacy, and Reasonableness of the Settlement**

Plaintiff seeks preliminary approval of the Settlement Agreement.  Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate."  *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026).  To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."  (*Id*. (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003))).

15

United States District Court
Central District of California

At the preliminary approval stage, a full "fairness hearing" is not required. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  (*Id.*).

### 1.   Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027.

This case was filed on November 27, 2018, and since then the Parties engaged in informal pre-mediation discovery which included the production of: (1) Defendant's written policies regarding, e.g., meal and rest period policies, time-keeping, final pay, overtime and background checks; (2) wage statements; and (3) electronic time and payroll records.  (Dkt. 25-1, ¶ 7). The parties thereafter reached a settlement on February 28, 2020 after a full-day mediation before experienced mediator, Lisa Klerman, and negotiated the completion of the Settlement Agreement currently before the Court.  (*Id.*, ¶¶ 11-12).

There is no evidence to suggest the current Settlement was the product of uninformed or collusive negotiations.  Thus, this factor weighs in favor of preliminary approval.

16

### 2.   Obvious Deficiencies

The Court finds that the Settlement on its face does not have obvious deficiencies, and thus finds that this factor weighs in favor of preliminary approval.  As noted below, the Court has concerns over the requested attorneys' fees, incentive award, and PAGA award, but those concerns are insufficient to make this factor weigh against preliminary approval and can be addressed in more detail at the final fairness hearing.

### 3.   Preferential Treatment to Class Representatives or Segments of Class

The proposed settlement does not improperly grant preferential treatment to class representatives.  Although the Court has some minor concerns regarding Plaintiff's service award — see below — those concerns are insufficient to make this factor weigh against preliminary approval and can be addressed in more detail at the final fairness hearing.

### 4.   Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. Nov. 17, 2009).

Moreover, to evaluate whether a settlement is fundamentally

fair, adequate, and reasonable, the Court considers the factors that ulti-mately inform final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the pro-posed settlement. *Harris*, 2011 WL 1627973, at *7 (citing *Hanlon*, 150 F.3d at 1026).

i.   Strength of Plaintiff's Case and Future Risk

Plaintiff's claims do not appear overwhelmingly strong.  Plaintiff claims to believe in his case but recognizes that Defendants have demonstrated their ability to litigate this action through trial and appeal if necessary.  (Dkt. 25, at 25-26).

Class Counsel maintains that the Settlement Agreement is more than reasonable in light of the litigation risks that Plaintiff and Class Members would face if the case were not settled.  These risks include, *inter alia*, dis-missal of class allegations, an adverse decision on the merits, loss of mo-tions, the likely lengthy duration of further litigation, and the possibility that a trial would return a less favorable verdict.

Given the relative strength of Plaintiff's claims, and the risks and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable.  Hence, these factors favor preliminary approval.

ii.   Extent of Discovery Completed and Stage of the
Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted above, the parties litigated diligently for two years, including participating in comprehensive pre-mediation informal discovery and engaging in one full-day mediation.  Accordingly, the Court finds this factor weighs in favor of preliminary approval.  *See Linney*, 151 F.3d at 1239.

iii.   Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating class actions similar to this case and hence has demonstrated the ability to prosecute vigorously on behalf of the class members.  Accordingly, the Court finds this factor weighs in favor of preliminary approval.

iv.   Presence of a Governmental Participant and Reaction of
the Class Members to the Proposed Settlement

As there is no governmental participant in this action and the parties have not yet provided notice to the class members, these factors are irrelevant for the purposes of preliminary approval.

v.    The Amount Offered in the Settlement

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963.

a.    Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1295–96 (9th Cir.1994)).

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P*., 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

United States District Court
Central District of California

€Here, Class Counsel indicates they intend to seek an award of attorneys' fees of no more than 33% of the settlement fund, which is above the Ninth Circuit's 25% "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Class Counsel does not set forth adequate reasons justifying such a fee; the Court therefore cannot undertake a preliminary evaluation of the request under the factors set forth in *Vizcaino* at this time. In light of the claims, stage of the action at the time of resolution, results achieved, and other information presented in Plaintiff's Motion, the Court is unable to determine at this time that an upward departure from the 25% benchmark is warranted and reasonable at the final settlement approval.

The Court will revisit the attorneys' fees request at the time the parties seek final approval.

### b.    Costs

Class Counsel will apply to the Court for reimbursement out of the settlement fund costs in an amount not to exceed $20,000.00 (although currently, Plaintiff's counsel claims its costs are $8,351.16).  (Dkt. 25, at 4 n.5).  Class Counsel has not attached any accounting of past costs or expenses.  Thus, the Court will revisit the costs request at the time the parties seek final approval of the settlement.

### c.    Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for

financial or reputational risk undertaken in bringing the action, and,
sometimes, to recognize their willingness to act as a private attorney
general." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958–59 (9th Cir.
2009).

"The district court must evaluate [incentive] awards individually, using
'relevant factors includ[ing] the actions the plaintiff has taken to protect the
interests of the class, the degree to which the class has benefitted from
those actions, . . . the amount of time and effort the plaintiff expended in
pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"
*Staton*, 327 F.3d at 977.

Courts may also consider such factors as the risk to the class
representative in commencing suit, both financial and otherwise; the
notoriety and personal difficulties encountered by the class representative;
the amount of time and effort spent by the class representative; the duration
of the litigation; and the personal benefit (or lack thereof) enjoyed by the
class representative as a result of the litigation. *Van Vranken v. Atl.
Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). "Courts
have generally found that $5,000 incentive payments are reasonable."
*Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008)
(citations omitted).

Under the proposed settlement agreement, the named Plaintiff will
receive an award of $5,000.00.  Class counsel failed to provide any
information regarding the "actions the plaintiff has taken to protect the

1    interests of the class, the degree to which the class has benefitted from

2    those actions . . . the amount of time and effort the plaintiff expended in

3    pursuing the litigation . . . and reasonabl[e] fear[s of ] workplace retaliation."

4    *Staton*, 327 F.3d at 977.  Thus, although an incentive award of $5,000.00 is

5    generally reasonable, the Court cannot preliminarily approve such an award

6    without additional evidence.

7

8        Accordingly, the Court declines to approve the incentive award at this

9    stage and will revisit the incentive award request at the time the parties seek

10   final approval of the settlement.

11

12                   d.    Settlement Administrator Costs

13       The Agreement allots an amount not to exceed $22,500.00 to

14   administer the Settlement.  (Dkt. 25, at 5).  "If ILYM's actual costs or the

15   amount awarded is less than the amount allotted in the Agreement, the

16   difference shall become part of the NSA and distributable to Participating

17   Class Members."  (*Id.*)

18

19       ILYM will be charged with administering the settlement fund by,

20   among other things, mailing notice to settlement class members; receiving

21   and tracking claim opt outs and objections from nonparticipating class

22   members; and distributing payments to all participating class members.

23   (Dkt. 25-1, at 8-11).  Accordingly, the Court finds the settlement

24   administrator's costs reasonable for the purposes of this Motion.

25

26                   e.    PAGA Settlement

United States District Court
Central District of California

As discussed above, the Court adopts the "fair and reasonable" standard other courts have applied to review PAGA settlements. "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.'"  *See Junhee Lee v. Esra Jung*, 2016 U.S. Dist. LEXIS 136162 at *2 (citing *Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 581 (2010)).  The court may consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and "how and why [the] parties arrived at the settlement amount.'"  *Hollis*, 2017 WL 131994 at *2 (citing *Junhee Lee v. Esra Jung*, 2016 U.S. Dist. LEXIS 136162 at *4-5).

In the traditional PAGA settlement context, courts must review "the merits of the action [and] the maximum recovery the plaintiff could obtain" to ensure the LWDA and other potentially aggrieved employees, who are bound by the settlement, are not being short-changed.  Class Counsel failed to provide the settlement's percentage of maximum damages.  *See, e.g., Rodriguez v. West Publ'g Corp*., 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving settlement awarding 30% of maximum damages). Thus, the Court cannot approve the PAGA settlement as it is currently framed.

Accordingly, the Court declines to approve the PAGA settlement at this stage and will revisit this request at the time the parties seek final approval of the settlement.

          f.     Conclusion Based on Review of *Hanlon* Factors

1    As almost all of the *Hanlon* factors weigh in favor of preliminary

2 approval, the Court finds that the proposed settlement is "within the range of

3 possible approval" and that notice should be sent to class members.

4 *Vasquez*, 670 F. Supp. 2d at 1125.

5

6    Nevertheless, the Court stresses that it has concerns with the

7 proposed attorneys' fees award and incentive award.

8

9 **C.    Notice Procedure**

10    Under Rule 23(e), the Court must "direct notice in a reasonable

11 manner to all class members who would be bound" by the proposed

12 settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is

13 "timely, accurate, and informative."  *See Hoffmann-La Roche Inc. v.*

14 *Sperling*, 493 U.S. 165, 172 (1989).

15

16    **1.    Notice Form**

17    The Court accepts the proposed notice form.  The notice form

18 explains: "(1) information regarding the nature of the lawsuit; (2) a summary

19 of the substance of the settlement terms; (3) the class definition; (4) the

20 deadlines by which Class Members must submit Request for Exclusion or

21 objection; (5) the date for the final approval hearing; (6) the formula used to

22 calculate settlement payments; (7) a statement that the Court has

23 preliminarily approved the settlement; and (8) a statement that Class

24 Members will release the settled claims unless they opt out." (Motion, at 28).

25

26    **2.    Claims Administration**

The Settlement Agreement states the Settlement Administrator will send the notice, claim, and request for exclusion forms and issue appropriate claim payments.  (Dkt. 25-1, at 8-11).  "Within 15 business days of the Preliminary Approval Order, the Administrator shall execute a confidentiality agreement and Defendant shall provide to the Administrator each Class Member's most current, known mailing address, as well as data sufficient for the Administrator to determine each Class Member's settlement shares."  (*Id.*, ¶ 3.2).

"Within 15 business days of receipt of class data, the Administrator shall send the Settlement Notice to each Class Member via First Class U.S. Mail, using the most current, known mailing address for each Class Member, based on class data provided by Defendant. Any Settlement Notice returned to the Administrator as undeliverable shall be sent promptly via First Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, the Administrator shall promptly attempt to determine the correct address using a single skip-trace search and shall then promptly send a single re-mailing. The mailing of the Settlement Notice shall be the sole means of notice to Class Members."  (*Id.*, Ex. A, ¶ 3.3).

Further, "[a]t least 5 calendar days prior to a hearing on a motion for a Final Approval Order, the Administrator shall provide Class Counsel and Defendant's Counsel—and Class Counsel shall provide the Court—a declaration by the Administrator of due diligence and proof of mailing with regard to mailing of Settlement Notice."  (*Id.*, Ex. A, ¶ 3.4).

The Court finds the notice form and proposed claims administration process is adequate.

**D.      Class Representative and Class Counsel**

As explained above, the Court finds that Plaintiff will fairly and adequately protect the interests of the class and that proposed class counsel are well equipped to represent the class.

Accordingly, the Court designates Plaintiff Francisco J. Cisneros as Class Representative for the Settlement Class and appoints Bradley Grombacher LLP as class counsel.

## IV.      CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement.  Although the Court declines to approve the proposed attorneys' fees, incentive award, and PAGA award, the proposed settlement is within the range of possible final approval. The Court, therefore, GRANTS Plaintiff's Motion for preliminary approval of class action settlement and conditionally certifies the class for settlement.

Defendant shall provide a list of all settlement class members to the Settlement Administrator within fifteen (15) business days of the date of this Order.

The Settlement Administrator shall mail the notice form to all settlement class member within thirty (30) business days of the date of this Order.

United States District Court
Central District of California

Class members shall have forty-five (45) calendar days after the post-mark date of the initial mailing of the Settlement Notice to opt out of or to ob-ject to the settlement.

The final approval hearing will be conducted within ninety (90) calen-dar days from the date of this Order, or at such other time as the Court may order.

**IT IS SO ORDERED.**

Dated:    3/26/21

Virginia A. Phillips
United States District Judge