**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892
Email: sahagii@aol.com

Attorneys for Plaintiff, FRANCISCO J. CISNEROS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO J. CISNEROS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | **CASE NO. 2:19-cv-02798-VAP-SP**<br><br>[*Assigned for All Purposed to the Honorable Virginia A. Phillips*]<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(*Filed concurrently with Declarations of Marcus J. Bradley, Plaintiff Francisco Cisneros and Nathalie Hernandez and [Proposed] Order and Judgment*)<br><br>Date: **December 13, 2021**<br>Time: **2:00 p.m.**<br>Location: **CR 8A, 8th Floor**<br>       **350 W 1st St.**<br>       **Los Angeles, California**<br><br>Complaint Filed: November 27, 2018<br>Trial Date:   None |

1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Plaintiff Francisco Cisneros ("Plaintiff"), by and through his counsel of record, will move this Court on December 13, 2021 at 2:00 p.m. in Courtroom 8A, of the above-entitled court located on the 8th Floor, 350 W. 1st Street, Los Angeles, California, for an Order:

(1)  Granting final approval of the proposed Settlement;

(2)  Granting approval of the claims administration payment of $35,583.09 to ILYM Group Inc., from the Settlement Fund for the administration of the settlement;

(3)  Granting approval of the attorneys' fees in the amount of $279,115.75;

(4)  Granting approval of the attorneys' costs in the amount of $8,351.51;

(5)  Awarding Class Representative Service Payment of $5,000.00 to the Plaintiff for his service on behalf of the Settlement Class and for agreeing to a broader release than that required of Class Members;

(6)  Granting final approval of the payment of $30,000.00 as penalties under the California Labor Code Private Attorney General Act (Labor Code §§ 2699, *et seq*. ("PAGA"), from which $22,500.00 is to be paid to the California Labor and Workforce Development Agency ("LWDA");

(7)  Entering final judgment in this action in the form of the Order and Final Judgment submitted herewith; and

(8)  Retaining continuing jurisdiction over the implementation, interpretation, administration, and consummation of the settlement.

This motion will be based on this notice, upon the attached memorandum of points and authorities filed contemporaneously herewith, upon the attached Declaration of Marcus J. Bradley, the Declarations of Plaintiff, Francisco Cisneros, the Declaration of ILYM Operations Manager, Nathalie Hernandez, as well as upon the pleadings, documents, memoranda, and other records on file with the Court in this matter, and upon such other and further oral and/or documentary evidence as may be properly

2

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

presented at the hearing on this matter.

DATED: November 15, 2021   **BRADLEY/GROMBACHER, LLP**
**LAW OFFICES OF SAHAG MAJARIAN II**


By: /s/ Marcus J. Bradley
    Marcus J. Bradley, Esq.
    Kiley L. Grombacher, Esq.
    Sahag Majarian II, Esq.

    Attorneys for Plaintiff

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. SUMMARY OF SETTLEMENT .................................................................................. 2

III. SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO ............... 3

    A. Dissemination of Class Notices ................................................................... 3

        1. No Objections or Requests for Exclusion Have Been Received ............... 4

IV. DISCUSSION ................................................................................................................ 4

    A. The Settlement Meets the Standards Governing Final Approval ....................... 4

        1. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here ............................................. 5

        2. The Settlement Is Fair ................................................................................. 6

        3. Sufficient Discovery and Investigation Has Occurred ............................. 10

        4. Class Counsel Are Experienced ................................................................ 10

        5. The Class Members' Response to The Settlement Is Further Evidence That the Settlement Is Fair and Reasonable ............................ 10

    B. The Court Should Approve of The Settlement Administration Fee ................ 11

V. CONCLUSION............................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ................................................................................. 8

*Eisen v. Porsche Cars North America, Inc.*,
   2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ......................................................... 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................... 5, 7

*Heritage Bond Litigation*,
   2005 WL 1594403 ................................................................................................ 5

*In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"),
   654 F.3d 935 (9th Cir. 2011) ................................................................................ 6

*In re Surebeam Corp. Secs. Litig.*,
   2004 WL 5159061 (S.D. Cal. 2004) ................................................................... 10

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) .................................................................................. 5

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .......................................................................... 7, 10

*Mandujano v. Basic Vegetable Products, Inc.*,
   541 F. 2d 832 (9th Cir. 1976) .............................................................................. 11

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ............................................................................... 7

*Neary v. Regents of Univ. of Cal.*,
   3 Cal. 4th 273 (1992) ............................................................................................ 8

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*,
   688 F. 2d 615 (9th Cir. 1982) ............................................................................... 7

*Ogiamien v. Nordstrom, Inc.*,
   2015 U.S. Dist. LEXIS 22128; 165 Lab. Cas. (CCH) P36, 317 (C.D. Cal. February 24, 2015) ................................................................................................................... 7

*Quinlan v. Macy's Corp. Servs., Inc.*,
   2013 U.S. Dist. LEXIS 164724 (C.D. Cal. 2013) ................................................ 7

*Stiller v. Costco Wholesale Corp.*,
   298 F.R.D. 611 (S.D. Cal. 2014) .......................................................................... 7

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &Prods. Liab. Litig.*,
  2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) .......................................... 9

*Trans World Airlines, Inc. v. Hughes*,
  312 F. Supp. 478 (S.D.N.Y. 1970), modified, 449 F.2d 51 (2d Cir. 1971) ................ 8

*Van Ba Ma v. Covidien Holding, Inc.*,
  2014 U.S. Dist. LEXIS 76359 (C.D. Cal. 2014) .......................................................... 6

*W. Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) .............................................................................. 8

**<u>Statutes</u>**

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 10

Federal Rule of Civil Procedure 23 ..................................................................................... 4


## MEMORANDUM OF POINTS AND AUTHORITIES

**TO THE HONORABLE COURT AND ALL COUNSEL OF RECORD:**

Plaintiff Francisco Cisneros (hereinafter referred to as "Plaintiff"), former employee of Defendant Airport Terminal Services, Inc., (hereinafter "Defendant" or "ATS") (collectively referred to as the "Parties"), submit this Motion for Final Approval of the Class Action Settlement.

### I.   INTRODUCTION

This motion seeks final approval of a non-reversionary $837,431.01 [1] proposed wage and hour class action settlement by Plaintiff on behalf of himself and the Class consisting of all current and former non-exempt employees who currently work or formerly worked for Defendant in California at any time from November 27, 2014 through March 26, 2021 (the "Settlement Period")[2].

On March 26, 2021, the Court preliminarily approved the settlement and ordered the dissemination of the notice of settlement to Class Members. The notice period ends on December 6, 2021. In response to the notice of settlement, to date, no Class Member objected to the settlement or requested exclusion from the settlement. Plaintiff will be filing a Supplemental Brief in Support of Motion for Final Approval no later than December 13, 2021. At that time, Plaintiff will provide the Court the final statistics regarding the number of Class Members who requested

---

[1] As the Court will note, the original Gross Settlement Amount presented at the hearing on the Motion for Preliminary Approval was $700,000.00. Subsequent the distribution of the class date to the settlement administrator, it was determined that a pro-rated increase in the settlement amount was warranted following further investigation and confirmatory discovery performed by Class Counsel.

[2] *Pederson v. Airport Terminal Services, Inc.,* Central District of California Case No. 5:15-cv-02400-VAP-SP, is a previously settled class action settlement had been granted preliminary approval on April 5, 2018. While the statutory period in the present case extends to November 27, 2014, the class period commences on April 6, 2018 given the claims, with the exception of the background check claims, were released up to April 5, 2018.

to be excluded from the settlement and whether any Class Members have objected to the settlement.

The estimated average settlement payment to each Class Member is $116.40 and the highest estimated payment is $734.82. *See* Declaration of Nathalie Hernandez ("Hernandez Decl."), ¶ 13. The Class Members' response as of the filing of this motion supports the Court's finding that the settlement is fair, reasonable, and adequate. For the reasons that follow, it is respectfully requested the Court grant this motion and find the settlement to be fair, reasonable, and adequate.

## II.  SUMMARY OF SETTLEMENT

As described in the motion for Preliminary Approval and stated in the Settlement Agreement and Amendment thereto, Defendant shall pay $837,431.01 (referred to as the "Gross Settlement Amount" or "GSA") which includes: (1) settlement administration costs of $35,583.09 (*see* Hernandez Decl. ¶ 14); (2) Class Representative General Release Payments not to exceed $5,000 to the name Plaintiff; (3) attorneys' fees not to exceed $279,115.75 (33.3% of the GSA); and (4) attorneys' costs of $8,351.51. All of these payments are subject to the Court's approval. Additionally, a payment of $22,500.00 will be made to the California Labor and Workforce Development Agency ("LWDA");

After the above amounts are subtracted from the GSA, the remaining portion of the GSA – referred to as the Net Settlement Amount ("NSA") – shall be available for distribution to Participating Class Members. After subtracting the above amounts, the NSA available for individual settlement payments is approximately $479,380.65.

Each Participating Class Member will receive a proportionate share of the NSA that is equal to (i) the number of weeks he or she worked for Defendant in California, in an hourly, non-exempt position, based on the Class data provided by Defendant, divided by (ii) the total number of weeks worked by all Participating Class Members based on the same Class data, which is then multiplied by the Net

Settlement Amount. One day worked in a given week will be credited as a work week for purposes of this calculation. Therefore, the value of each Class Member's Individual Settlement Share ties directly to the amount of weeks that he or she worked.

As will be discussed, the settlement has been a success, with no objections to the settlement submitted by Class Members and no requests for exclusion submitted to date. The Class response and settlement shares to class members further demonstrate the settlement being fair, reasonable and adequate.

### III. SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO

#### A. Dissemination of Class Notices

Preliminary Approval was granted on March 26, 2021. At that time ILYM Group, Inc. was appointed by the Court as the Settlement Administrator. ILYM Group, Inc. has complied with the Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail.

On April 16, 2021, ILYM Group, Inc. received the class data file from Counsel for Defendants containing information for 4,183 individuals. After reviewing the data to finalize the Class List, ILYM noticed there was missing data that would prevent them from calculating the estimated settlement amounts. The additional information was requested and received from Defense Counsel. In addition, once calculating the estimated settlement amounts for each individual, the escalator clause was triggered and resulted in a conference call with both parties to address this matter. Hernandez Decl. ¶ 5.

Thereafter, the Class Notice was mailed to these 4,183 individuals on October 21, 2021. Hernandez Decl. ¶ 6.

As of the date of the Hernandez declaration, 137 Notice Packets have been returned as undeliverable. Of the 137 returned Notice Packets, 3 were returned with a forwarding address and promptly re-mailed to the forwarding address provided. ILYM Group performed a computerized skip trace on the 134 returned Notice

Packets that did not have a forwarding address, in an effort to obtain an updated address for purpose of re-mailing the Notice Packet. As a result of this skip trace, 84 updated addresses were obtained and the Notice Packet was promptly re-mailed to those Settlement Class Members, via U.S First Class Mail. Hernandez Decl. ¶ 6.

Moreover, a total of 84 Notice Packets have been re-mailed. Specifically, 3 were re-mailed as a result of a forwarding address provided by the USPS, 84 have been re-mailed as a result of ILYM Group's skip tracing efforts. Hernandez Decl. ¶ 7. A total of 50 Notice Packets have been deemed undeliverable. Specifically, 50 have been deemed undeliverable as no updated address was found notwithstanding the skip tracing. Hernandez Decl. ¶ 8.

In addition, throughout the notice process ILYM Group, Inc. has operated a toll-free telephone number for Class Members to call with inquiries concerning the settlement.

### 1. No Objections or Requests for Exclusion Have Been Received

The deadline to file an objection to the Settlement is December 6, 2021 for the individuals who were mailed a Notice Packet on October 21, 2021. Hernandez Decl. ¶ 10. To date, no objections have been filed with the Court or submitted to ILYM Group, Inc. and no requests for exclusion from the settlement were received by ILYM Group, Inc. Hernandez Decl. ¶¶ 10-11. All Class Members who do not submit a request for exclusion will receive a settlement payment. Therefore, 4,183 or 100% of the Participating Class Members are set to receive a Settlement Payment. Hernandez Decl. ¶ 12.

### IV. DISCUSSION

#### A. The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the

proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendant's pay structures and wage and hour policies. These efforts culminated in the Parties reaching an agreement to settle. The settlement amount takes into consideration the risks with regard to the certifying Plaintiff's claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### 1. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935,

946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This settlement passes the *Bluetooth* test. This settlement was not driven by attorneys' fees, and Class Counsel is not receiving a disproportionate distribution of the settlement. The NSA is greater than 1.7 times larger than the fees requested by Class Counsel. Class Counsel is requesting $279,115.75 (33.3% of the GSA); the NSA is approximately $479,380.65. Additionally, although the settlement agreement states that Defendant will not object to attorney fees up to 33.3% of the GSA, any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and be available for distribution to Participating Class Members. Further, 100% of the NSA will be paid out to Participating Class Members as there is no reversion to Defendant. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### 2. The Settlement Is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014)

(*citing Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

The liability questions in this case touched on California's wage and hour laws, which touched on the ever-changing legal landscape.

Furthermore, while Defendant has agreed to request certification for settlement purposes only, if the Settlement is not approved, Defendant has indicated that it intends to vigorously contest certification, which creates further risk for Class Members. *See, e.g., Ogiamien v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 22128, at *15; 165 Lab. Cas. (CCH) P36, 317 (C.D. Cal. February 24, 2015) (denying certification of bag check case); *Quinlan v. Macy's Corp. Servs., Inc.*, 2013 U.S. Dist. LEXIS 164724 (C.D. Cal. 2013) (same); *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014) (granting motion for decertification of closing time claim); *Holak*, 2014 U.S. Dist. LEXIS 139879, at *21-22 (denying certification of direct wage statement claim);

7
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Ridgeway*, 2014 U.S. Dist. LEXIS 126806, at *28-29 (granting summary judgment and denying certification of direct wage statement claim).

Although Plaintiff believes he had valid counter-arguments to the defenses, and was cautiously optimistic about his chances of prevailing at trial, this optimism was tempered by the recognition that the odds of a favorable verdict being reversed on appeal are not too remote to ignore. *W. Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), modified, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of appeals).

Additionally, early resolutions save time and money that would otherwise go to litigation. Parties' resources, as well as the Court's, would be further taxed by continued litigation. And if this action had settled following additional litigation, the settlement amount would likely have taken into account the additional costs incurred, such that there may have been less available for Class Members. Cost savings is one reason why California policy strongly favors early settlement. *See Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements and observing that "[s]ettlement is perhaps most efficient the earlier the settlement comes in the litigation continuum."). This concern also supports settlement.

Moreover, Plaintiff's PAGA claims are based on the same alleged unlawful conduct as their class claims. Therefore, PAGA penalties could only be awarded if the factfinder agreed with Plaintiff's theories of liability. Should the Court agree with any of Defendant's defenses to certification or on the merits, the potential exposure for PAGA would be reduced and any associated PAGA penalties would

be extinguished, as penalties can only be awarded if the Court agrees with Plaintiff's underlying allegations. Further, these penalties would be duplicative of the recovery from the underlying violations. Therefore, Plaintiff recognizes and reasonably believes the Court would significantly reduce any PAGA penalties if Defendant was determined to be the employer and found liable for the underlying Labor Code violations.

Although Plaintiff remains confident in the strength of his claims and believes this case is suitable for certification on the claimed basis there are company-wide policies that Plaintiff contends violate California law and uniformly affect all non-exempt employees, Defendant's counter-arguments raise uncertainties with respect to both class certification and success on the merits. This settlement represents a well-crafted compromise of the divergent positions of the Parties that provides substantial benefits for the Class. Each side evaluated the strengths and weaknesses of their case and independently concluded that this settlement represents a responsible means of addressing Plaintiff's claims and Defendant's defenses.

Finally, employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. The alternative to a class settlement – i.e., individual litigation – would tax private and judicial resources over a period of years. As such, the settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits" and thus, provides another reason to approve the settlement. *Eisen v. Porsche Cars North America, Inc.*, 2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg § 11.41 at 87-89.

In summary, although Plaintiff and his counsel maintained a strong belief in the underlying merits of the claims, they also acknowledge the significant

challenges posed by continued litigation through trial. Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

### 3. Sufficient Discovery and Investigation Has Occurred

Class Counsel conducted discovery that yielded information and documentation concerning the claims set forth in the litigation, such as Defendant's policies and procedures regarding the payment of wages, the provision of meal and rest breaks, timekeeping policies, including recording hours, issuance of wage statements, termination wages, as well as information regarding the number of putative class members and the mix of current versus former employees, the average number of hours worked, the wage rates in effect, and length of employment for the average putative class member.

Class Counsel retained an expert to analyze and review a sampling of class member data provided by Defendant. From this analysis, Class Counsel were able to analyze Defendant's liability in this action and prepare a realistic damage model.

### 4. Class Counsel Are Experienced

Class Counsel has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement requires "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004). In this case, Plaintiff's Counsel, Bradley/Grombacher LLP, meet this standard and have been appointed class counsel in numerous class actions. *See* Bradley Decl. ¶ 26-32;

### 5. The Class Members' Response to The Settlement Is Further Evidence That the Settlement Is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's

fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). To date, not a single Class Member has objected to the settlement or requested to be excluded from the settlement. Hernandez Decl. ¶¶ 10, 11. The lack of objections and low number of requests for exclusion evidences the Class Members' endorsement of this non-reversionary settlement. Additionally, Plaintiff will file a Supplemental Brief in Support of Motion for Final Approval no later than December 13, 2021 providing the Court with the final number of objections and opt-outs, should any occur, prior to the response deadlines of December 6, 2021.

**B.   The Court Should Approve of The Settlement Administration Fee**

The Parties agreed to hire ILYM Group, Inc. to be the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. ILYM Group, Inc. was responsible for mailing the Class Notice to Class Members, obtaining better addresses for undeliverable Class Notices, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities to ensure the Class Members were given notice of the Settlement. Hernandez Decl. ¶ 16. Following the grant of final approval, ILYM Group, Inc. will continue to calculate the payments to Participating Class Members, calculate the withholding taxes, and transmit to the appropriate government agencies, send the individual Settlement Shares to Participating Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the settlement agreement. Hernandez Decl. ¶ 3. ILYM Group, Inc.'s fee of $35,583.09 for services rendered and to be rendered is fair and reasonable and should be granted. Hernandez Decl. ¶ 14.

/ / /

/ / /

/ / /

## V. CONCLUSION

In light of the foregoing, Plaintiff requests the Court find the settlement fair, reasonable, and adequate and grant this Final Approval Motion. Plaintiff further requests that the Court enter final judgment.

DATED: November 15, 2021     **BRADLEY/GROMBACHER, LLP**
                                                        **LAW OFFICES OF SAHAG MAJARIAN II**

By: /s/ Marcus J. Bradley
      Marcus J. Bradley, Esq.
      Kiley L. Grombacher, Esq.
      Sahag Majarian II, Esq.

      Attorneys for Plaintiff