**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone:  (805) 270-7100
Facsimile:   (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California    91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892
Email: sahagii@aol.com

Attorneys for Plaintiff, FRANCISCO J. CISNEROS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO J. CISNEROS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:19-cv-02798-VAP-SP<br><br>*[Assigned for All Purposed to the Honorable Virginia A. Phillips]*<br><br>**DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF:**<br><br>1) **PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**<br><br>2) **MOTION FOR SERVICE AWARD, ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES**<br><br>***(Filed concurrently with Notices of Motions and Motions, Declarations of Plaintiff Francisco Cisneros and Nathalie Hernandez and [Proposed] Order and Judgment)***<br><br>Complaint Filed: November 27, 2018<br>Trial Date:       None |

1

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## DECLARATION OF MARCUS J. BRADLEY

I, Marcus J. Bradley, hereby declare as follows:

1.      I am an attorney at law duly licensed to practice law before all of the courts of the State of California, and most of the district courts within the Ninth Circuit.  I am a partner in the law firm of Bradley/Grombacher LLP counsel for Plaintiff Francisco Cisneros, now filing this Motion for Final Approval of Class Action Settlement.  In my capacity as counsel, I have been actively involved with all aspects of this litigation. Accordingly, I have personal knowledge of all the matters set forth herein, and if called, I could and would competently testify to the following:

2.      I make this Declaration in support of both Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Service Award, Attorneys' Fees and Reimbursement of Costs.

3.      I have been actively engaged in this litigation since approximately October 2018 and during that time, I have supervised the activities of the attorneys, paralegals and support staff; all directed to the preparation of this case for certification, and ultimately liability presentations.  Before filing this lawsuit, I investigated the facts by interviewing Plaintiff, reviewing Plaintiff's documents, and preparing pre-filing notices to the LWDA and Defendant

**Relevant Litigation History Since Preliminary Approval Granted**

4.      On March 26, 2021, the Court granted Preliminary Approval of the Settlement, conditionally certified the Class, appointed ILYM Group ("ILYM") to act as settlement administrator, approved the Notice to be sent to the Class, and directed that the Notice be mailed to the Class via U.S. First Class Mail.

5.      On April 16, 2021, ILYM received the class data file from Counsel for Defendant, which contained the name, social security number, last known mailing address, and the total number of applicable workweeks worked for each Settlement Class Member. Declaration of Nathalie Hernandez ("Hernandez Decl."), ¶ 5.

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

6.    On May 6, 2021, the Court approved the Parties' Stipulation to Extend the Final Fairness and Approval Hearing date from June 21, 2021 to July 26, 2021 in order to have time following the response deadline in advance of the Final Fairness and Approval Hearing (Dkt. Nos. 28-29).

7.    Soon thereafter, the Parties requested the Settlement Administrator recalculate average class payments for two separate groups: (1) those who were hired prior to the prior settlement period in *Pederson v. Airport Terminal Services, Inc.,* Central District of California Case No. 5:15-cv-02499-VAP-SP[1] (Dkt. No. 25-1 at Ex. A, Settlement Agreement ["S.A."], pp. 6-7) ("the *Pederson* settlement") and (2) the average payments for those class members who were hired after the preliminary approval of the *Pederson* settlement (March 26, 2017).  In doing so, it was discovered that there was a problem in how the distribution amounts were calculated based on the formula included in the Parties' Settlement Agreement.

8.    The Settlement Agreement provided that the "Net Settlement Amount shall be allocated among Settlement Class Members by . . .  (ii) determining the number of Settlement Class Members hired on or after March 26, 2017, and multiplying that number by five" (Dkt. 25-1, **Exhibit A**, S.A., ¶ 5.4.1) and the "Individual Settlement Payments shall be allocated by (i) determining the number of weeks a Settlement Class Member worked during the period from November 27, 2014, through the date of a Preliminary Approval Order and, if the Settlement Class Member was hired on or after March 26, 2017, adding five" (*Id*. at p 5.4.2).

9.    The Parties requested that the Settlement Administrator calculate the individual Settlement Class Member distribution amounts to be included in the notice sent to the Settlement Class Members, but it was having difficulty with the

---

[1] This Court approved the class action settlement in *Pederson*, which released liability through April 5, 2018. *Pederson v. Airport Terminal Services, Inc.,* Central District of California Case No. 5:15-cv-02400-VAP-SP, Dkt. No. 41.

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

calculation because it found the language referenced in the Settlement Agreement unclear.

10.    After the Parties provided further clarification of the settlement calculation method, the Settlement Administrator required additional information regarding Settlement Class Member workweeks from November 27, 2014-March 25, 2017 as set forth in S.A. ¶ 5.1  Although the Settlement Agreement intended to weight the distribution of settlement proceeds to employees working for defendant from April 6, 2018 through preliminary approval, the calculation performed by the Settlement Administrator resulted in what appeared to be an unintended weighting of the settlement proceeds to the period prior to April 6, 2018. *Id.*

11.    Thereafter, the Parties continued to work together with the Settlement Administrator to further understand the cause of the allocation disparity, provide additional information to allow the Settlement Administrator to revise its calculations.  After a number of months and many revisions the Parties determined that the calculations could not be revised in a manner that accomplished the Parties' intent to weigh the distribution on settlement proceeds to Settlement Class Member workweeks worked after April 6, 2018. (Hernandez Decl., �ℙ 5)

12.    The Parties intended the Settlement Agreement to give greater value to claims in the post-*Pederson* release period and provided in Paragraph 5.1 of the Settlement Agreement: "The parties weighted the Agreement to resolve the Class Member claims occurring in the estimated 82,190 workweeks worked by Class Members following the preliminary approval of the settlement in the *Pederson* matter.  To the extent that the number of workweeks worked by Class Members through the date of a Preliminary Approval Order exceeds 82,190 plus 10 % (or 90,409) workweeks, Defendant shall have the option to abridge the Settlement Class Members' Released Claims to include only through the pay period in which 90,409 workweeks after the *Pederson* preliminary approval order have been worked by Settlement Class or to increase the Gross Settlement Amount in proportion to the

1    increase in workweeks in excess of 90,409."

2    13.    When the Settlement Administrator calculated the payment amounts

3    to individual class members, it was discovered that the calculation method provided

4    in the Settlement Agreement resulted in an unfair allocation of settlement proceeds

5    to employees working prior to April 6, 2018 who were subject to the release in the

6    *Pederson* matter.

7    14.    The calculation method was revised to provide in relevant part that:

8    "The Net Settlement Amount shall be allocated among Settlement Class Members

9    by . . . (ii) determining the number of Settlement Class Members hired on or after

10    March 26, 2017 or worked after April 6, 2018, <u>multiplying their workweeks worked</u>

11    <u>after April 6, 2018 by five</u>" and that "Individual Settlement Payments shall be

12    allocated by (i) determining the number of weeks a Settlement Class Member

13    worked during the period from November 27, 2014, though the date of a

14    Preliminary Approval Order and, if the Settlement Class Member was hired or

15    worked on or after March 26, 2017 or worked after April 6, 2018, <u>multiplying their</u>

16    <u>workweeks worked after April 6, 2018 by five</u>, and (iii) adding the two sub-totals

17    to determine the "Total Settlement Class Member Shares."

18    15.    On October 8, 2021, The Court granted the Joint Stipulation for

19    Approval of Amendment to Joint Stipulation of Class Action and PAGA Settlement

20    and Release of Claims which revise the method of calculation set forth above. (Dkt.

21    Nos. 33-34).

22    16.    Thereafter, on October 21, 2021, the Notice Packet was mailed, via

23    U.S First Class Mail, to all 4,183 individuals contained in the Class List[2].

24    (Hernandez Decl., ¶ 6).

25

26

27

28

---

[2] The Notice Period ends on December 6, 2021. A supplemental declaration from
ILYM will be filed the Court no later than December 10, 2021 updating the Court
on the final class member participation numbers.

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

17.    As a result, the revised total estimated settlement amount (including the additional amount agreed to be paid by Defendant) is calculated to be $837,431.01, for an increase of $137,431.01 to the original settlement amount of $700,000.00, and the amount available to the Settlement Class Members will be $479,380.65 after the reduction for administration fees, class member enhancement payment, allocated litigation costs and expenses, class counsel's fees and the payment to the Labor Work Development Agency. (Hernandez Decl., ₱ 13)

18.    Applying the proper and intended calculation method will result in payments to Settlement Class Members working after April 5, 2018 of approximately 88% of the amount available for distribution and employees working prior to April 5, 2018 will receive approximately 12% of the amount available for distribution.

**Claims Administration**

19.    As of the date of the Hernandez Declaration, there are no objections to the Settlement. (Hernandez Decl., ¶11.)

20.    As of the date of Hernandez Declaration, there are no requests for exclusion. (Hernandez Decl., ¶10.)

21.    As of the date of Hernandez Declaration, there are 4,183 Participating Class Members, representing 100% of the Settlement Class. (Hernandez Decl., ¶12.)

22.    Participating Class Members will receive a proportional share of the Gross Settlement Fund through individual settlement payments, based on the number of weeks she/he worked during the Class Period. Pursuant to the Settlement Agreement, the entire Net Settlement Value was used to calculate the Individual Settlement Payment amount for each Participating Settlement Class Member. The Net Settlement Value is calculated as set forth below:

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

| Gross Settlement Fund | $ 700,000.00 |
|---|---|
| Pro-Rata Increase in Settlement Funds | $ 137,431.01 |
| New Gross Settlement Fund | $ 837,431.01 |
| Class Counsel Fees | $ 279,115.75 |
| Class Counsel Litigation Costs | $ 8,351.51 |
| Enhancement Award | $ 5,000.00 |
| Administration Fees | $ 35,583.09 |
| LWDA Payment | $ 22,500.00 |
| PAGA Members 25% PAGA Payment | $ 7,500.00 |
| **Net Settlement Amount (estimated)** | **$479,380.65** |

23.    As such, the average gross settlement payment is $116.40 with a highest gross payment of $734.82. (Hernandez Decl., ¶13.)

24.    At this time the settlement payment for Class Representative Francisco Cisneros is estimated to be $119.53.  It is estimated that 1,254 Class Members will be receiving payments greater than that of Class Representative Cisneros. (Hernandez Decl., ¶13.)

25.    Settlement Administrator will charge a total of $35,583.09 in costs associated with the administration of the settlement.  This includes all costs incurred to date, as well as estimated costs involved in completing the settlement.

**Experience of Class Counsel**

26.    My firm, Bradley/Grombacher, and I have extensive experience litigating wage and hour class and representative actions as well as complex consumer class actions.

27.    I have practiced law since 1994.  In 2000, I joined Mazursky, Schwartz & Angelo as an associate and became a partner in January 2005 at which time the firm was renamed Schwartz, Daniels & Bradley.  I remained as a partner handling

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

primarily wage and hour class actions until the dissolution of the firm effective December 31, 2008.  In January 2009, I moved my existing practice transferring a number of wage and hour cases to become a partner with the law firm of Marlin & Saltzman, a long-established firm with whom I had been co-counsel on dozens of wage and hour class actions during my tenure at Schwartz, Daniels & Bradley. On September 1, 2016, I formed Bradley/Grombacher LLP along with a former associate at Marlin & Saltzman, Kiley Grombacher.

28.     I have been responsible for all facets of class action employment and other complex litigation, from pre-filing investigation through trial and appeal. Since approximately May 2000, I have spent most of my time representing workers in wage and hour matters. I, along with my current and former partners, have litigated these issues in class actions to favorable settlements that have recouped over $800,000,000.00 in unpaid wages, including the following more notable cases:

a. *Gutierrez v. State Farm Mutual*, Los Angeles Superior Court (BC236552).  Class action mis-classification case seeking overtime compensation for approximately 2,600 insurance claims adjusters employed by State Farm.  The class was certified and summary adjudication was granted as to liability in favor of the class. The case settled for $135 million just prior to trial, with final approval granted with no objections filed.

b. *Bednar v. Allstate Insurance Company*, Los Angeles Superior Court (BC240813).  Class action mis-classification case seeking overtime compensation for approximately 1,200 insurance claims adjusters employed by Allstate.  The class was certified and summary adjudication was granted as to liability in favor of the class. The case settled for $120 million just prior to trial, with final approval granted with no objections filed.

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

c. *Roberts v. Coast National Insurance*, Orange County Superior Court (01CC08478). Class action mis-classification case seeking overtime compensation for insurance claims adjusters employed by Coast National Insurance. Certification granted, and then the matter was tried before a binding arbitrator. The case settled during the arbitration for in excess of $18 million.

d. *CNA Class Action Litigation*, Los Angeles Superior Court Class (JCCP 4230). Class action mis-classification case seeking overtime compensation for insurance claims adjusters employed by Defendant. Case settled for $33 million, with final approval granted with no objections filed.

e. *Dotson v. Royal SunAlliance*, Orange County Superior Court (02CC01787). Class action mis-classification case seeking overtime compensation for insurance claims adjusters employed by Royal SunAlliance. Case settled for $12.3 million, with final approval granted with no objections filed.

f. *Parris v. Lowe's Home Improvement*, Los Angeles County Superior Court (BC260702). Class action seeking payment of "off-the-clock" hours worked by all hourly employees of Lowe's Home Improvement stores in the State of California. The class was certified by the Court of Appeal and remanded to the trial court for further proceedings. Shortly thereafter, a $29.5 million settlement was reached and approved without objection.

g. *Pardo v. Toyota Motor Sales, et al.* Los Angeles County Superior Court (BC372781). Class action mis-classification of workers with claims for overtime and missed meal and rest breaks. The case settled for $7.75 million and was approved with no objections.

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

h. *Smith/Ballard v. Wal-Mart Stores, Inc.*  United States District Court for the Northern District of California (Case No. 4:06-cv-05411-SBA). Wage and hour class action seeking unpaid vacation and personal time, unpaid wages, and related penalties on behalf of over 245,000 employees.  The action was certified and settled for $86 million while Defendants' appeal of the certification was pending in the Ninth Circuit Court of Appeals.

i. *Hoyng v. AON*, Los Angeles County Superior Court (BC377184).  Wage and hour class action seeking overtime and related compensation for mis-classification on behalf of Relationship and Account Specialists.  The case settled for $10.5 million which was approved with no objections filed.

j. *In RE Bank of America Wage and Hour Employment Practices Litigation*, MDL 2138, United States District Court for the District of Kansas. California state and FLSA wage and hour litigation for various violations including unpaid overtime and "off-the-clock" work. Settled for $73 million.

k. *Lemus v. H & R Block Litigation*, United States District Court for the Northern District of California (Case No. 3:09-cv-03179-SI) Class certified, and settlement reached prior to trial.  Total settlement of $35 million.

l. *Harris v. Vector Marketing Corporation,* United States District Court for the Northern District of California (Case No. 3:08-cv-05198-EMC). Independent contractor mis-classification class action case on behalf of approximately 70,000 employees.

m. *Bickley v. Schneider National Trucking,* United States District Court for the Northern District of California (Case No. 4:08-cv-05806-JSW). Wage and hour class action on behalf of approximately 6,000 truck

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

drivers. Settled for $29.5million.

n. *Roberts v TJX,* United States District Court for the Northern District of California (Case No. 13-CV-04731-MEJ). Wage and hour violations on behalf of approximately 82,000 employees. Settled for $8.5 million.

o. *Oprychal v. New Your Life Insurance,* United States District Court for the Central District of California (Case No. 2:07-cv-00518-VBF). Class action for the failure to pay commissions pursuant to a compensation plan. Settled for $10 million.

p. *Neuvenheim v. Gamestop Corp.,* United States District Court for the Central District of California (Case No. 2:09-cv-06799-ODW). Class action on behalf of nonexempt employees for wage and hour violations.

q. *Hightower v. JP Morgan Chase,* United States District Court for the Central District of California (Case No. 2:11-cv-01802-PSG). Class action on behalf of nonexempt employees for wage and hour violations. Settled for $12 million.

29.    On many of the above cases I was either lead or co-lead counsel including cases in multi-district litigation or coordinated proceedings where I worked collaboratively and cooperatively with co-counsel to bring about an efficient and beneficial resolution for all class members as the above results demonstrate.

30.    I have argued cases in trial courts as well as before courts of appeal. My writings on legal topics pertaining to litigating wage and hour class and representative actions have appeared in professional publications and I have been called upon to speak at conferences and seminars for professional organizations including a recent presentation titled: "Planning for and Executing Trial in Class and Collective Wage & Hour Cases" as well as the Bridgeport "2020 Wage & Hour Litigation Update and PAGA Teleconference" and Bridgeport "2021 PAGA Workshop."

31.    I have also been honored as a Super Lawyer in the area of class actions by Los Angeles Magazine for multiple years including 2021. I am also a member of a number of professional organizations including the Consumer Attorneys of Los Angeles, the Consumer Attorneys of California, the California Employment Lawyers Association, and the America Association of Justice.

32.    Given my experience as a class action employment litigator, I believe the settlement is a fair and adequate compromise of the monetary relief claims that Plaintiff and the Class Members have raised in this case. Based on the discovery conducted in the case, our analysis of the data produced by Defendant, and the application of appropriate litigation and appeal risks and delay discounts, we determined that the settlement was fair, reasonable and adequately reflects the settlement value of the case. The settlement is advantageous to the Class who would otherwise face the uncertainty of litigation, including whether they would obtain class certification, and/or a loss at trial Indeed, if the matter were to proceed to trial, Class Counsel knows from experience that the apparent strength of a case is no guarantee against a defense verdict.

33.    Based on my participation in the settlement negotiations, which were hard-fought and conducted in good faith and at arm's length between attorneys with substantial experience litigating class actions and wage and hour cases, and supervised by an experienced and well-regarded mediator, Lisa Klerman, I attest that the Settlement Agreement was the product of a non-collusive settlement process.

34.    My firm's loadstar to date is $219,439.50 and my firm has worked over 278 hours on behalf of the settlement class members.  This amount does not include the hours my firm will spend traveling and attending the second hearing on approval of the settlement.

35.    Counsel anticipates engaging in substantial additional work on behalf of the Class if the Settlement gets approved, including work overseeing the payment

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

process, reviewing and approving the payment calculations prepared by the Settlement Administrator, and answering questions employees might have about the Settlement.

36.    All tasks and work performed were reasonable and necessary to the prosecution of this case. Moreover, the work performed was justified in light of the result achieved.

37.    Our office has prepared the following summary of the qualifications of each timekeeper, and the hours spent by the respective time keeper (after exercising partner discretion to reduce some of the billed hours) as part of this litigation:

| Time Keeper | Years | Hours | Billable Rate | Lodestar |
|---|---|---|---|---|
| Marcus Bradley/ Shareholder | 27 | 131.0 | 950 | $124,450.00 |
| Kiley Grombacher/ Shareholder | 15 | 49.0 | 850 | $41,650.00 |
| Lirit King/Associate | 16 | 22.3 | 775 | $17,282.50 |
| Taylor Emerson/Associate | 16 | 34.6 | 775 | $26,815.00 |
| Senior Paralegals | 8+ | 23.7 | 260 | $6,162.00 |
| Law Clerks | -- | 17.6 | 175 | $3,080.00 |
| **TOTAL** | | 278.2 | | **$219,439.50** |

38.    Class Counsels' skill and experience support their hourly rates. Further, these rates are commensurate with those prevailing for attorneys with comparable skill and experience litigating complex wage-and-hour class and collective actions

39.    In making a fee request in actions such as this, I always analyze the factors that the court must consider in awarding fees. I believe that such circumstances exist here to justify the requested attorney's fees award of 33-1/3% including: (a) the skilled work involved in achieving such a good settlement for the Class and bringing the action to an efficient and speedy conclusion; and (b) the

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

associated risks in taking this matter on a contingency basis. In light of these considerations, I believe Counsel's requested fee of $279,115.75 is reasonable.

40.     Accordingly, Counsel for Plaintiff seek a relatively modest 1.27 multiplier for a fee of $279,115.75 which is reasonable given the result obtained including the fact that the settlement is non-reversionary and, as such, the entire settlement amount of $837,431.01 will be paid by the Defendant.

41.     Although case law supports as high as a 50% fee award on common settlement funds of less than $10 million, Counsel's request for an attorney fee award of $279,115.75, representing 33.33% of the Total Settlement Amount is both "reasonable and fair" in light of the amount of work performed and the amount of resources and labor employed in the prosecution of this action. Based on my experience and knowledge of the relevant legal market for wage and hour class actions, these amounts accurately reflect the marketplace for similar representation of plaintiffs in PAGA enforcement actions.

42.     Counsel is also seeking for an award of the actually incurred costs in the amount of $8,351.51.

43.     All costs incurred were necessary to the prosecution of this action, would normally have been billed to a client paying for my firm's services on a non-contingency basis, and are reasonable for a case such as this, in which substantial discovery and investigation took place over the year and a half since the filing of the Complaint.

44.     A true and correct copy of the cost report is attached to this declaration as **Exhibit B**.

45.     Counsel's request for reimbursement of actual litigation expenses is reasonable and were necessarily incurred in pursuit of the Class and PAGA Settlement.

**Plaintiff's Involvement in the Litigation**

46.     At the Final Approval Hearing, Class Counsel will request Service

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Enhancement Payment to compensate Named Plaintiff for his efforts in prosecuting this matter, and for the risks and stigma he faced, and will continue to face, for doing so.

47.    As set forth more fully in his declaration, the Plaintiff was not simply a bystander in the prosecution of this action.  Plaintiff was always available to, and regularly did, consult with counsel both in person and via telephone. Plaintiff provided class counsel with information and documents regarding the litigation which was essential to framing the claims in his Complaints and prosecuting the case, thereby substantially reducing the need for formal pretrial discovery. In addition, Plaintiff reviewed documents and provided invaluable information regarding the workings of the Defendant company.

48.    Both current and former employees also place their future employment prospects in peril by becoming class representatives, as "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person." *Guippone*, 2011 U.S. Dist. LEXIS 126026, at *4. Employers commonly screen employee candidates to determine whether they have ever filed suit, and that employee candidates who might be branded "litigious" are likely to be screened out of the process. In fact, an entire industry has developed for providing employers with background information on employee candidates. By bringing this action against an employer, Plaintiff has assumed considerable reputational risk that may impact his ability to find employment in the future. Long after this action is forgotten by Class Members, the Named Plaintiff will run the risk of being branded "litigious" by prospective employers, and may be denied future employment on that basis alone.

49.    The requested Enhancement Award should also be awarded to Plaintiff because he "remained fully involved and expended considerable time and energy during the course of the litigation." *Schaffer v. Litton Loan Servicing, LP*, No. 05-07673-MMM, 2012 U.S. Dist. LEXIS 189830, *61 (C.D. Cal. Nov. 13, 2012)

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(citation omitted). As detailed in his declaration, Plaintiff expended considerable time and effort assisting her attorneys with the prosecution of the class' claims, and his unique contributions to the litigation should be rewarded.

50.     The Enhancement Award is also appropriate because Plaintiff would otherwise "not gain any benefit beyond that would receive as a class member." *In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken* (holding that a substantial award is appropriate where a class representative's claim made up "only a fraction of the common fund.").

51.     Moreover, Plaintiff has also agreed to generally release all claims he may have against Defendant and to release Defendant from all liability arising out of its refusal to hire Class Representatives at any time in the future. These general releases are considerably broader than the separate, narrower releases required of Class Members.

52.     Plaintiff assisted in every way possible throughout his tenure as a representative Plaintiff, including participating in gathering evidence to advance the claims set forth in the consolidated amended pleadings; assisting in seeking and responding to discovery; providing key insights into the policies and practices of Defendant; and assisting with settlement considerations.   This Plaintiff also placed his employment prospects at risk by putting his name on a complaint. Plaintiff faced near financial ruin if he was not successful.  Further still, Plaintiff agreed to execute a general release of claims, which release is broader than the release signed by unnamed Class members.

53.     Plaintiff was at all times responsive to Class Counsel's needs in prosecuting this litigation and he thoughtfully fulfilled her duties as Class Representative.  We could not have achieved the success that we did here without her help.  During the course of the litigation, I personally interacted repeatedly and regularly with the Plaintiff, and based on that interaction, I can attest that he was involved no less than 25-30 hours on the low end.  He always responded to our

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

inquiries, phone calls and emails promptly, thus facilitating our handling of issues as they arose.

I declare under penalty of perjury under the laws of the United States of America and the laws of the State of California that the foregoing is true and correct and based on my personal knowledge.

Executed on this 15th day of November, 2021 at Westlake Village, California.

/s/ Marcus J. Bradley

Marcus J. Bradley

DECLARATION OF MARCUS J. BRADLEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT A

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892
sahagii@aol.com

Attorneys for Plaintiff and Proposed Class

(Additional counsel listed on following page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO J. CISNEROS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>         v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | Case No. 2:19-cv-02798-VAP-SP<br><br>**JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS**<br><br><br><br>Complaint Filed: November 27, 2018 FAC Filed: March 26, 2019 |

**SEYFARTH SHAW LLP**
Aaron R. Lubeley (SBN 199837)
alubeley@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS
66085560v.1

AIRPORT TERMINAL SERVICES, INC. This Joint Stipulation of Class Action and PAGA Settlement and Release of Claims is entered into by and between Plaintiff, Francisco J. Cisneros, as an individual on behalf of all Settlement Members and as a representative of the State of California Labor and Workforce Development Agency ("LWDA"), and his counsel, on the one hand, and Defendant, Airport Terminal Services, Inc., on the other hand.

1.    **DEFINITIONS**

As used in this Agreement, the following terms shall have the following meanings:

**1.1.    Action.** "Action" means the civil lawsuit originally entitled *Francisco J. Cisneros v. Airport Terminal Services, Inc.,* filed on November 27, 2018, in the Superior Court of the State of California, County of Los Angeles, and designated Case No. 18STCV06289, which was then removed to this Court and designated as Case No. 2:19-cv-02798-VAP-SP, and all claims alleged in the operative complaint as amended.

**1.2.    Administrator.** "Administrator" means the independent third-party mutually agreed on by the Parties for settlement administration, which includes, but is not limited to, disseminating and tracking Settlement Notices, distributing settlement payments, calculating, reporting, and processing required tax filings or payments, and providing any reports and declarations, as jointly requested by Class Counsel and Defendant's Counsel.

**1.3.    Administration Costs.** "Administration Costs" means any payment payable from the Gross Settlement Amount to the Administrator for administering the settlement.

**1.4.    Agreement.** "Agreement" means this Joint Stipulation of Class Action and PAGA Settlement and Release of Claims, including attached exhibits.

**1.5.    Attorneys' Fees and Costs Award.** "Attorneys' Fees and Costs Award" means an attorneys' fees and costs payment from the Gross Settlement Amount for all of Class Counsel's attorneys' fees and costs associated with the litigation and resolution of the Action (excluding only Administration Costs).

**1.6.    Class Counsel.** "Class Counsel" means Marcus J. Bradley and Kiley L. Grombacher of Bradley Grombacher, LLP and Sahag Majarian II of Law Offices of Sahag Majarian II.

**1.7.    Class Member.** "Class Member" means any individual who is or was employed as a non-exempt employee by Defendant in the State of California at any time between November 27, 2014, through the date of a Preliminary Approval Order (the "Class Period").

**1.8.    Class Representative Incentive Payment.** "Class Representative Incentive Payment" means a payment from the Gross Settlement Amount to Plaintiff in recognition of his efforts and work in prosecuting the Action on behalf of Class Members.

**1.9.    Court.** "Court" means the United States District Court, Central District of California, the Honorable Virginia A. Phillips presiding.

**1.10.    Defendant.** "Defendant" means Airport Terminal Services, Inc.

**1.11.    Defendant's Counsel.** "Defendant's Counsel" means Seyfarth Shaw LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Aaron R. Lubeley, Seyfarth Shaw LLP, 601 South Figueroa Street, Suite 3300, Los Angeles, California 90017.

**1.12.    Effective Date.** "Effective Date" means the later of 10 days after (a) the expiration of the time for any notice of intention of a post-judgment motion to be filed following a Final Approval Order or judgment, (b) if an objection has been made or a motion to intervene has been filed, the expiration of the time to appeal a Final Approval Order or judgment, or (c) if a post-judgment motion or appeal has been filed, the time a Final Approval Order or judgment is no longer appealable and constitutes a "final judgment" for purposes of res judicata or collateral estoppel.

**1.13.    Final Approval Order.** "Final Approval Order" means an order granting final approval of a class action and PAGA settlement resulting in entry of final judgment.

**1.14.    Gross Settlement Amount.** "Gross Settlement Amount" means the amount of the total payment—inclusive of any Administration Costs, Attorneys' Fees and Costs Award, Class Representative Incentive Payment, Individual Settlement Payments, PAGA Penalty Fund, or any other Court-required payments—that Defendant may be required to pay in connection with a Final Approval Order.

**1.15.    Individual PAGA Payment.** "Individual PAGA Payment" means each PAGA Member's payment from 25% of the PAGA Penalty Fund.

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS

1    **1.16.    Individual Settlement Payment.** "Individual Settlement Payment" means each

2    Settlement Class Member's potential payment from the Net Settlement Amount.

3    **1.17.    LWDA Payment.** "LWDA Payment" means any payment to the LWDA of 75% of the

4    PAGA Penalty Fund.

5    **1.18.    Net Settlement Amount.** "Net Settlement Amount" means the portion of the Gross

6    Settlement Amount—after deductions for any Court-approved Administration Costs, Attorneys' Fees

7    and Costs Award, Class Representative Incentive Payment, PAGA Penalty Fund, or any other Court-

8    required payments—to be allocated to Individual Settlement Payments.

9    **1.19.    PAGA Member.** "PAGA Member" means any individual who is or was employed as a

10   non-exempt employee by Defendant in the State of California at any time between November 27, 2017,

11   through the date of a Preliminary Approval Order (the "PAGA Period").

12   **1.20.    PAGA Penalty Fund.** "PAGA Penalty Fund" means the portion of the Gross Settlement

13   Amount allocated to PAGA penalties.

14   **1.21.    Parties.** "Parties" means Plaintiff and Defendant.

15   **1.22.    Plaintiff.** "Plaintiff" means Francisco J. Cisneros.

16   **1.23.    Preliminary Approval Order.** "Preliminary Approval Order" means an order granting

17   preliminary approval of a class action and PAGA settlement.

18   **1.24.    Released Party.** "Released Party" means any of Defendant's present and former parents,

19   subsidiaries, affiliates, and joint ventures, and any of their shareholders, officers, directors, employees,

20   agents, servants, registered representatives, clients, attorneys, insurers, successors and assigns, and any

21   other persons acting by through, under or in concert with any of them (including their pension, profit

22   sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans,

23   and those plans' current or former trustees and administrators, agents, employees, and fiduciaries).

24   **1.25.    Settlement Class Member.** "Settlement Class Member" means all Class Members who

25   do not opt out of the class action settlement by complying with the procedures set forth in the Settlement

26   Notice.

27   **1.26.    Settlement Member.** "Settlement Member" means all Settlement Class Members and

28   PAGA Members.

**1.27.    Settlement Notice.** "Settlement Notice" means the Notice of Class Action and PAGA Settlement, substantially in the form attached as Exhibit A.

**2.    RECITALS**

**2.1.    Initiation of Action.** On or about November 27, 2018, Plaintiff filed the original complaint initiating the Action on behalf of a putative class of "all employees who were or are employed by Defendants in the State of California [since November 27, 2014] as non-exempt employees." The original complaint alleged causes of action for: "(1) Failure to Pay for All Hours Worked (California Labor Code §§ 510, 1194); (2) Failure to Pay Wages at the Agreed Rate; (3) Failure to Pay Overtime Compensation (Welfare Commission Orders and California Labor Code §§ 510, 1194); (4) Meal and Rest Break Violations (California Labor Code §§ 200, 226.7, 512, and 12 C.C.R. § 11040); (5) Failure to Reimburse Expenses (California Labor Code §§ 2802); (6) Failure to Pay Wages at the Time of Termination (California Labor Code §§ 201-203); (7) Failure to Provide Proper Wage Statements (California Labor Code § 226(a)); and (8) Unfair Business Practices (Business and Professions Code §17200)."

**2.2.    Operative Complaint.** On or about March 26, 2019, Plaintiff filed a first amended complaint. In addition to the eight causes of action alleged in the original complaint, the first amended complaint alleges five additional causes of action for: "(9) [Failure to Make Proper Disclosure in] Violation of 15 U.S.C. §§ 1681b(b)(2)(A) (Fair Credit Reporting Act ["FCRA"]); (10) [Failure to Give Proper Summary of Rights in] Violation of 15 U.S.C. §§ 1681b(b)(2)(A) [FCRA]); (11) [Failure to Make Proper Disclosure in] Violation of California Civil Code § 1786 et seq. (Investigative Consumer Reporting Agencies Act ["ICRAA"]); (12) [Failure to Make Proper Disclosure in] Violation of California Civil Code § 1785 et seq. (Consumer Credit Reporting Agencies Act ["CCRAA"]); and (13) Violation of California Labor Code §§ 2698 et seq. ["PAGA"]"

**2.3.    Initial Litigation.** On April 11, 2019, Defendant removed the Action to this Court, and on May 17, 2019, Defendant answered the operative first amended complaint. As part of Plaintiff's initial investigation of the alleged claims, Defendant provided Plaintiff informal discovery, including information about and from a prior class action, *Pederson v. Airport Terminal Services, Inc.,* Central District of California Case No. 5:15-cv-02400-VAP-SP, in which a class action settlement had been

granted final approval on August 3, 2018. Plaintiff and Defendant likewise exchanged information about the claims Plaintiff additionally alleged in the first amended complaint.

**2.4. Agreement to Mediate and Stay.** The Parties continued to meet and confer about Plaintiff's claims described above and Defendant's defenses. On July 8, 2019, the Parties agreed to schedule an early mediation, sought availability from mutually agreeable mediators, and were provided available mediation dates in February 2020. On July 15, 2019, the Court stayed the Action to permit the Parties to attempt to mediate the matter. The Parties subsequently met and conferred on numerous occasions and continued to discuss Plaintiff's claims and Defendant's defenses.

**2.5. Continuing Investigation.** In addition to the discussions and informal exchange of information and records subject to mediation privileges and Rule 408 of the Federal Rules of Evidence, Class Counsel continued investigating the claims alleged and allegedly discovered against Defendant in the Action. Class Counsel also analyzed any and all applicable defenses and case law and authorities raised by Defendant.

**2.6. Defendant's Denials.** Defendant denied and continues to deny (i) all of the allegations alleged by Plaintiff in the Action or during the course of investigation and discovery, (ii) that it violated any applicable laws, (iii) that it would be liable or owes damages, penalties, or any other type of remedies to anyone with respect to the alleged facts or claims asserted in the Action or alleged during the course of investigation and discovery, and (iv) that class certification or representative treatment of the Action or any alleged claims would be proper.

**2.7. Mediation and Continued Settlement Efforts.** On February 28, 2020, the Parties attended a mediation with Lisa Klerman, an experienced mediator knowledgeable of both the wage and hour laws and class and representative claims alleged in and allegedly discovered in investigating the Action. The Parties were not able to resolve the matter at the mediation. The Parties, however, continued to work with the mediator. Following extensive arm's-length negotiations, with the assistance of a mediator's proposal, and in light of all known facts and circumstances—including the difficulty of proving Plaintiff's claims, potential defenses asserted by Defendant, the uncertainty associated with litigation, the risks of significant delay, and numerous potential appellate issues—on or about March 19, 2020, the Parties were able to agree to the principal terms of a mediated resolution.

**2.8.    No Admission of Liability.** Although Defendant denied and continues to deny all of the allegations made by Plaintiff in the Action, Defendant—without admitting or conceding any liability or wrongdoing whatsoever and without admitting or conceding that class certification or representative treatment would be appropriate for any purpose other than settlement purposes alone—has agreed to settle the Action on the terms and conditions set forth in this Agreement for the sole purpose of avoiding the burden, expense, and uncertainty of continuing the Action.

**2.9.    Class Counsel's Evaluation.** Based on Class Counsel's investigation and evaluation over the course of more than one year, Class Counsel is of the opinion that the terms set forth in this Agreement are fair, reasonable, adequate, and in the best interests of Settlement Members.

**2.10.    Certification of Settlement Class Only.** This Agreement is contingent upon the approval and certification by the Court of a class for settlement purposes only. Defendant does not waive, and instead expressly reserves, any and all rights to challenge the propriety of class certification or representative treatment for any other purpose. Absent a Final Approval Order, the Parties do not stipulate to class certification or representative treatment, no party will be estopped as a result of this Agreement or efforts to obtain a Final Approval Order, and the Parties will revert to their positions they had before this Agreement.

**2.11.    Intention of Parties and Agreement to Cooperate. It** is the desire of the Parties to fully, finally, and forever settle, compromise, or discharge any and all claims, rights, demands, charges, complaints, causes of action, obligations or liability of any and every kind that were or could have been asserted in the Action as amended or that arise out of the alleged facts, circumstances, and occurrences underlying the allegations in the Action as amended. The Parties agree to cooperate and take all steps necessary and appropriate to effectuate all aspects of this Agreement, to obtain a Preliminary Approval Order and Final Approval Order.

**3.    NOTICE TO CLASS MEMBERS**

**3.1.    Administrator.** Plaintiff and Class Counsel shall request that the Court appoint ILYM as Administrator for purposes of sending the Settlement Notice to Class Members. The Parties agree that Administration Costs should not exceed $22,500.00. All disputes relating to the Administrator's performance of its duties, after good-faith efforts by the Parties to first resolve such disputes, will be

referred to the Court, if necessary, which will have continuing jurisdiction over this Agreement until all payments and obligations contemplated by this Agreement have been fully completed to Class Counsel and Defendant's Counsel's satisfaction. Except as otherwise provided herein, if the Court does not enter a Final Approval Order, Class Counsel and Defendant shall each pay one-half of any Administration Costs incurred.

3.2.    **Class Data.** Within 15 business days of the Preliminary Approval Order, the Administrator shall execute a confidentiality agreement and Defendant shall provide to the Administrator each Class Member's most current, known mailing address, as well as data sufficient for the Administrator to determine each Class Member's settlement shares. The Administrator shall keep data provided by Defendant strictly confidential, shall not share it with Class Counsel, and shall use it only for the purposes described herein.

3.3.    **Settlement Notice.** Within 15 business days of receipt of class data, the Administrator shall send the Settlement Notice to each Class Member via First Class U.S. Mail, using the most current, known mailing address for each Class Member, based on class data provided by Defendant. Any Settlement Notice returned to the Administrator as undeliverable shall be sent promptly via First Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, the Administrator shall promptly attempt to determine the correct address using a single skip-trace search and shall then promptly send a single re-mailing. The mailing of the Settlement Notice shall be the sole means of notice to Class Members.

3.4.    **Proof of Mailing.** At least 5 calendar days prior to a hearing on a motion for a Final Approval Order, the Administrator shall provide Class Counsel and Defendant's Counsel—and Class Counsel shall provide the Court—a declaration by the Administrator of due diligence and proof of mailing with regard to mailing of Settlement Notice.

## 4.    CLASS MEMBERS' RESPONSE OPTIONS

4.1.    **Consideration Period.** Except as specifically provided herein, Class Members shall be provided 45 calendar days after the postmark date of the initial mailing of the Settlement Notice to opt out of or to object to the settlement, and no Class Member responses of any kind that are postmarked

more than 45 calendar days after the initial mailing of the Settlement Notice shall be considered. The Parties shall do nothing to encourage or solicit Class Members to opt out or object to the settlement.

**4.2.    Opt-Out and Objection Rights and Procedures.** Class Members must comply with the procedures set forth in the Settlement Notice to opt out of or object to the settlement of class action claims. Class Members may opt out by mailing to the Administrator the Request for Exclusion form (attached to the Settlement Notice), which expresses their desire to be excluded from and not be a Settlement Class Member. Settlement Class Members shall be given the opportunity to object to the terms of the class action settlement. Class Members who fail to make objections in the manner specified in the Settlement Notice shall be deemed to have waived any objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement. Any Request for Exclusion or objection must include a Class Member's name (and former names, if any), current address, current telephone number, and last four digits of his or her social security number. Any Request for Exclusion or objection that does not include all required information or that is not submitted on a timely basis shall be deemed null, void, and ineffective. If a Class Member submits both a Request for Exclusion and an objection, the Class Member's objection shall be valid and shall be deemed to invalidate the Request for Exclusion. Class Members shall not have any right to object to or opt out of the settlement of the PAGA cause of action.

**4.3.    Opt-Out Effect.** Class Members who opt out of the settlement pursuant to the terms of this Agreement shall not be permitted to object to the settlement or appeal and shall not receive any Individual Settlement Payment from the Net Settlement Amount. Except with respect to the PAGA cause of action, Class Members who opt out also shall not be bound by the release provisions in this Agreement or the Final Approval Order. Each Class Member who does not opt out of the settlement shall remain qualified to receive an Individual Settlement Payment and to being bound by the applicable release provisions in this Agreement or the Final Approval Order.

**4.4.    Objection Effect.** Class Members who submit an objection shall remain subject to being bound by the release provisions in this Agreement or the Final Approval Order. Class Members who submit an objection pursuant to the procedures set forth in the Settlement Notice may appear at the hearing on a motion for a Final Approval Order, either in person or through counsel, but must state their

1    intention to do so at the time they submit their written objection. Class Members may withdraw their

2    objections at any time.

3        **4.5.    Proof of Class Members' Responses.** By not later than 50 calendar days after the initial

4    mailing of the Settlement Notice, the Administrator will prepare and submit a declaration attesting to (by

5    number of relevant individuals), its mailing of the Settlement Notice, its inability to deliver the

6    Settlement Notice due to invalid addresses, and its receipt of valid Requests for Exclusion or objections.

7    Prior to the hearing on the motion for a Final Approval Order, the Administrator shall prepare any

8    supplemental declarations regarding the administration of the settlement, as jointly requested by the

9    Parties. Class Counsel shall file any valid objections with the Court. Upon completion of administration

10   of the settlement, the Administrator shall provide written certification of such completion to Class

11   Counsel and Defendant's Counsel.

12       **4.6.    Defendant's Right to Withdraw.** Defendant shall have the right, at its sole option, to

13   withdraw from this Agreement within 15 business days after expiration of the response period, if more

14   than 5% of the Class Members opt out. If Defendant exercises the right to withdraw from this

15   Agreement, then Defendant shall pay the Administrator's expenses up to the date this Agreement is

16   nullified.

17   **5.    SETTLEMENT PROCEEDS**

18       **5.1.    Gross Settlement Amount.** Defendant agrees to pay a maximum, non-reversionary

19   settlement amount of $700,000. The Gross Settlement Amount is inclusive of any Attorneys' Fees and

20   Costs Award, Class Representative Incentive Payment, LWDA Payment, Administration Costs,

21   Individual PAGA Payments, Individual Settlement Payments, or any other Court-required payments that

22   Defendant may be required to pay in connection with the Final Approval Order. The parties weighted

23   the Agreement to resolve the Class Member claims occurring in the estimated 82,190 workweeks

24   worked by Class Members following the preliminary approval of the settlement in the *Pederson* matter.

25   To the extent that the number of workweeks worked by Class Members through the date of a

26   Preliminary Approval Order exceeds 82,190 plus 10 % (or 90,409) workweeks, Defendant shall have the

27   option to abridge the Settlement Class Members' Released Claims to include only through the pay

28   period in which 90,409 workweeks after the *Pederson* preliminary approval order have been worked by

Settlement Class Members or to increase the Gross Settlement Amount in proportion to the increase in workweeks in excess of 90,409.

**5.2.    Timing of Funding and Payments.** Within 15 business days following the Effective Date, Defendant shall deposit with the Administrator the Gross Settlement Amount, which shall be deposited into an interest-bearing escrow account. Within 15 business days of funding, the Administrator shall calculate and distribute the amounts to be paid pursuant to the Final Approval Order. Notwithstanding the foregoing, Plaintiff shall confer with Defendant prior to the filing of a motion seeking a Final Approval Order regarding any potential need to request a different proposed funding deadline for a Final Approval Order.

**5.3.    Maximum Settlement Payment and Requested Allocations Not Material.** The Court's approval of an Attorneys' Fees and Costs Award and Class Representative Incentive Payment are not material terms of this Agreement. If the Court requires other allocations or different amounts than requested for an Attorneys' Fees and Costs Award, Class Representative Incentive Payment, Administration Costs, or PAGA Penalty Fund, the other terms of the Agreement shall apply. The Parties agree that the Court's approvals of the requested Attorneys' Fees and Costs Award, Class Representative Incentive Payment, Administration Costs, or PAGA Penalty Fund are not material terms of the Agreement and that an award of less or more than the amounts requested would not give rise to a basis to abrogate the Agreement. Any different amounts required or approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount.

**5.3.1.    Attorneys' Fees and Costs.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve an Attorneys' Fees and Costs Award in the amount of up to $33^{1}/_{3}\%$ of the Gross Settlement Amount (or $233,333.33), plus reasonable costs not to exceed $20,000. Class Counsel agrees that Class Counsel is responsible for allocating this payment among themselves or any other counsel for Class Members settling claims through the Final Approval Order. Within 15 business days after the Effective Date, Class Counsel shall transmit instructions to the Administrator as to how the Attorneys' Fees and Costs Award shall be paid. Except as provided in this Agreement, Defendant shall have no liability for any attorneys' fees or costs in connection with the

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS

1    Action. Plaintiff, Class Counsel, and Settlement Members waive any additional claim for attorneys' fees

2    and costs incurred in connection with the Action.

3         **5.3.2.  Class Representative Incentive Payment.** Class Counsel intends to request—and

4    Defendant agrees not to oppose—that the Court approve a Class Representative Incentive Payment of up

5    to $5,000 to Plaintiff. Any Class Representative Incentive Payment is supplemental to Plaintiff's

6    Individual Settlement Payment and Individual PAGA Payment.

7         **5.3.3.  PAGA Penalty Fund.** Class Counsel intends to request—and Defendant agrees

8    not to oppose—that the Court approve allocation of $30,000 to a PAGA Penalty Fund. Any Court-

9    approved PAGA Penalty Fund is to be distributed pursuant to statute with 75% of the PAGA Penalty

10   Fund payable as an LWDA Payment. The remaining 25% of the PAGA Penalty Fund is to be distributed

11   to PAGA Members as Individual PAGA Payments, based on the pro rata number of workweeks

12   individual PAGA Members worked during the PAGA Period.

13        **5.3.4.  Administration Costs.** Class Counsel intends to request—and Defendant agrees

14   not to oppose—that the Court approve Administration Costs of up to $22,500.00. The Parties agree to

15   cooperate in the settlement administration process and to make all reasonable efforts to control and

16   minimize Administration Costs.

17        **5.4.    Individual Settlement Payments.** The Parties agree that Individual Settlement Payments

18   will be characterized as 80% as Internal Revenue Service ("IRS") Form 1099 income and 20% as W-2

19   income. The Net Settlement Amount shall be distributed in separate checks to Settlement Class

20   Members, without the need to submit a specific claim form, subject to withholdings required by

21   applicable tax laws for the portion allocated to W-2 income to be remitted to the appropriate taxing

22   authorities by the Administrator.

23        **5.4.1.  Total Settlement Class Member Shares.** The Net Settlement Amount shall be

24   allocated among Settlement Class Members by (i) calculating the total number of workweeks all

25   Settlement Class Members worked during the period from November 27, 2014, through the date of a

26   Preliminary Approval Order, (ii) determining the number of Settlement Class Members hired on or after

27   March 26, 2017, and multiplying that number by five, and (iii) adding the two sub-totals to determine

28   the "Total Settlement Class Member Shares."

1    **5.4.2. Individual Settlement Class Member Shares and Payments.** Individual

2  Settlement Payments shall be allocated by (i) determining the number of weeks a Settlement Class

3  Member worked during the period from November 27, 2014, through the date of a Preliminary Approval

4  Order and, if the Settlement Class Member was hired on or after March 26, 2017, adding five, (ii)

5  dividing the result by the Total Settlement Class Member Shares, and (iii) multiplying the result by the

6  Net Settlement Amount available for allocation to Individual Settlement Payments. Such shares shall be

7  allocated to Settlement Class Members for Individual Settlement Payments.

8    **5.5.    Undeliverable or Uncashed Checks.** All uncashed or undeliverable settlement checks

9  will expire after 180 days after the postmarked date of mailing. At that time, the sum value of all expired

10  checks will be tallied by the Administrator, who will direct the principal for any undeliverable or

11  otherwise uncashed settlement checks to the California Secretary of State Unclaimed Property Fund or

12  as otherwise approved by the Court in the Final Approval Order.

13    **5.6.    No Tax Advice or Liability.** Except as otherwise stated herein, all payments will be

14  subject to IRS Form 1099 reporting. The Administrator shall issue any necessary IRS Form 1099 or W-2

15  reporting and administration. The Parties have had an opportunity to consult with independent tax

16  counsel. The Parties are not giving any tax advice in connection with the settlement or any payments to

17  be made pursuant to the Agreement. The Parties do not intend anything contained in this Agreement to

18  constitute legal advice regarding the taxability of any amount paid hereunder, nor shall anything in this

19  Agreement be relied upon as such. The Settlement Notice shall advise that Class Members shall be

20  solely and legally responsible for paying any applicable taxes on their respective Individual Settlement

21  Payments and Individual PAGA Payments and shall indemnify and hold harmless the Parties from any

22  claim or liability for taxes, penalties, or interest arising as a result of the payments.

23    **5.7.    No ERISA Impact.** None of the payments made pursuant to this Agreement shall be

24  considered for purposes of determining eligibility for, vesting or participation in, or contributions to any

25  benefit plan, including, without limitation, all plans subject to the Employee Retirement and Income

26  Security Act of 1974 ("ERISA"). Payments shall not be considered as a payment of wages or

27  compensation under the terms of any applicable benefit plan and shall not affect participation in,

28  eligibility for, vesting in, the amount of any past or future contribution to, or level of benefits under any

applicable benefit plan. Any amounts paid will not impact or modify any previously credited hours of service or compensation taken into account under any benefit plan sponsored or contributed to by Defendant or any jointly-trusteed benefit plan. For purposes of this Agreement, "benefit plan" means each and every "employee benefit plan" as defined in 29 U.S.C. § 1002(3), and, even if not thereby included, any bonus, pension, stock option, stock purchase, stock appreciation, welfare, profit sharing, retirement, disability, vacation, severance, hospitalization, insurance, incentive, deferred compensation, or any other similar benefit plan, practice, program, or policy.

**6.    RELEASES**

     **6.1.    Class Member Acknowledgment.** Class Members acknowledge that they may hereafter discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a released claim. Class Members nonetheless acknowledge that this Agreement and its releases shall be and shall remain effective in all respects notwithstanding such different or additional facts or law regarding such released claims. This Agreement is conditioned upon covenants by Class Members that they will not participate in any proceeding involving the released claims set forth below and that Defendant shall not owe any further monies beyond the Gross Settlement Amount to Settlement Members or to the State of California based upon the released claims set forth below.

     **6.2.    Release by Class Members.** By operation of the Final Approval Order and entry of final judgment, and except as to such rights or claims as may be created by this Agreement, all Settlement Class Members hereby fully release Defendant, and each Released Party from any and all claims or causes of action that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, including, but not limited to, any claims under federal law and state law for unpaid wages or overtime, meal or rest break violations, inaccurate wage statements, untimely payment of wages, or violation of the applicable Wage Order or Labor Code sections 200-204, 210, 216, 218.5, 218.6, 225.5, 223, 226, 226.3, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197, 1198, and 2802, violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (FCRA), Investigative Consumer Reporting Agencies Act, Civ. Code §§ 1786 *et seq.* (ICRAA), and Consumer Credit Reporting Agencies Act, Civ. Code §§ 1785 *et seq.* (CCRAA), based on allegedly non-compliant disclosures, and any claims under Business and Professions Code section 17200 *et seq.* or Labor Code section 2698 *et seq.* based on

alleged violations of these provisions. PAGA Members hereby fully release Defendant, and each Released Party from any and all claims or causes of action under Labor Code section 2698 *et seq.* that were alleged in the Action, or that reasonably could have been alleged based on the facts alleged in the Action, for alleged violations of the above Labor Code provisions. These releases do not include any claims that cannot be waived as a matter of law, though Settlement Members acknowledge and agree that they will not accept any monetary recovery from any proceedings relating to any such claims. Plaintiff as a representative of the State of California acknowledges and agrees that collateral estoppel shall bar PAGA Members from any proceedings relating to released claims.

      **6.3.**    **Additional Release by Plaintiff.** In addition to the above release applicable to Plaintiff as a Settlement Member, Plaintiff as an individual also generally releases all claims, known or unknown, in favor of each Released Party, including a waiver of Civil Code section 1542. Plaintiff expressly waives all rights provided by Civil Code section 1542 or other similar statutes that Plaintiff may have against each Released Party. Civil Code section 1542 states:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Plaintiff acknowledges that he has read the entirety of the Agreement, including the above language from the Civil Code, and that he fully understands both the Agreement and the Civil Code section. By executing this Agreement, Plaintiff expressly waives any benefits and rights granted pursuant to Civil Code section 1542 or any statute, rule, or principle of common law or equity, in any jurisdiction, that is similar, comparable, or equivalent, in whole or in part, to Civil Code section 1542. Plaintiff acknowledges and agrees that this knowing and voluntary waiver is an essential and material term of this Agreement, and this Agreement would not have been entered into without such a waiver.

      **6.4.**    **Interim Stay of Proceedings.** Plaintiff and Class Counsel agree to refrain from further litigation of any claim to be released under the Agreement, except such proceedings necessary to implement and obtain a Final Approval Order. The Parties agree to request that the Preliminary Approval Order enjoin Class Members from initiating or prosecuting any proceeding on any claim to be released under the Agreement, unless and until the Class Member has opted out of the class in the

manner described above. This settlement is conditioned upon the releases by Class Members as described herein, and upon covenants by Class Members that they will not participate in any actions, lawsuits, proceedings, complaints, or charges brought individually or by any other agency, persons, or entity in any court or before any administrative body related to the released claims, nor will Class Members contest or interfere with efforts by Defendant or a Released Party to oppose any attempt to bring such released claims against Defendant or a Released Party.

**6.5.     Inadmissibility of Settlement Documents.** Neither this Agreement nor any other settlement document shall be offered in any case or proceeding as evidence of any admission by Defendant of any liability on any claim or allegation. The Parties understand and agree that this Agreement and all exhibits thereto are settlement documents and shall be inadmissible for any purpose in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement or implementing order. The Parties agree that, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement implementing order.

**7.     COURT APPROVAL**

**7.1.     Preliminary Approval.** Plaintiff shall submit to the Court a motion for a Preliminary Approval Order, which will, among other things: (i) preliminarily approve the proposed settlement according to the terms in this Agreement, (ii) provide for the Settlement Notice to be sent to Class Members, and (iii) schedule a hearing on a motion for a Final Approval Order. The motion shall be unopposed by Defendant, unless it seeks relief not specified by this Agreement. In such event, Defendant reserves its rights to address any assertions not specified in this Agreement.

**7.2.     Final Approval.** Not later than 28 days before the date set for a hearing on a motion for a Final Approval Order, or such other time as the Court may require, Class Counsel shall notice, file, and move for a Final Approval Order, which shall propose findings and orders: (i) approving the settlement, (ii) adjudging the terms to be fair, reasonable, and adequate, (iii) reciting the release terms, (iv) directing that the settlement's terms and provisions be carried out; (v) entering judgment in accordance with this Agreement without further fees or costs to any party except as set forth in this Agreement, and (vi)

retaining jurisdiction to oversee administration and enforcement of the terms of this Agreement and the

Court's orders.

**7.3.    Effect of Failure to Obtain Final Approval Order.** In the event the Court effects a

material change or fails to enter final judgment in accordance with this Agreement, or such final

judgment is reversed or otherwise does not become a "final judgment" for purposes of res judicata, then

this entire Agreement will be voidable and unenforceable, subject to the Parties' agreement to the

contrary, and the costs of administration shall be split equally between the Parties. If the settlement is

not finally approved, the Parties agree that they will revert to their positions in the Action prior to the

time the settlement was reached. The Action shall proceed as if no settlement has been attempted, unless

the Parties jointly agree to seek reconsideration or appellate review of the ruling or seek Court approval

of a renegotiated settlement.

**7.4.    Waiver of Appeal Rights.** By entering into this Agreement, Plaintiff and Class Counsel

hereby waive any and all rights they may have to appeal any judgment, ruling, or order made by the

Court in this Action, including, without limitation, any Final Approval Order.

**8.    MISCELLANEOUS**

**8.1.    Parties' Authority.** The signatories hereto represent that they are fully authorized to

enter into this Agreement and are fully authorized to bind the Parties to all terms stated herein. It is

agreed that Class Members are so numerous that it is impossible or impractical to have each Class

Member execute this Agreement. The Final Approval Order shall deem that this Agreement has been

executed on behalf of Settlement Members by Plaintiff and Class Counsel, and shall have the same force

and effect as if executed by each Settlement Member.

**8.2.    Entire Agreement.** This Agreement, which includes the Definitions, Recitals, and all

Exhibits attached hereto, constitute the entire agreement between the Parties with regard to the subject

matter contained herein, and all prior and contemporaneous negotiations and understandings between

the Parties shall be deemed merged into this Agreement.

**8.2.1.    Materiality of Terms.** The Parties have arrived at this Agreement as a result of

arm's-length negotiations. Except as otherwise stated herein, all terms and conditions of this Agreement

are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS

1         **8.2.2.  Execution and Counterparts.** This Agreement may be executed by signing on

2    the designated signature block and transmitting that signature page via facsimile or as an attachment to

3    an e-mail to counsel for the other party. Any signature made and transmitted by facsimile or as an

4    attachment to an e-mail for the purpose of executing this Agreement shall be deemed an original

5    signature for purposes of this Agreement and shall be binding upon the party who transmits the signature

6    page. This Agreement may be executed in counterparts, and when all signatories have executed at least

7    one such counterpart, each counterpart shall be deemed an original, and when taken together with other

8    signed counterparts, shall constitute one signed Agreement, which shall be binding upon and effective as

9    to all Parties.

10        **8.2.3.  Binding Effect.** This Agreement shall be binding upon the Parties and, with

11   respect to Plaintiff and Class Members, their spouses, children, representatives, heirs, administrators,

12   executors, beneficiaries, conservators, attorneys, and assigns.

13        **8.2.4.  Waivers, Modifications, Etc. to Be in Writing.** No waiver, modification or

14   amendment of the terms of this Agreement, whether purportedly made before or after the Court's

15   approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all

16   Parties and then only to the extent set forth in such written waiver, modification or amendment, subject

17   to any required Court approval. Any failure by any Party to insist upon the strict performance by the

18   other Party of any of the provisions of this Agreement shall not be deemed a waiver of future

19   performance of the same provisions or of any of the other provisions of this Agreement, and such Party,

20   notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of

21   any and all of the provisions of this Agreement. The time periods and dates provided in this Agreement

22   with respect to giving of notices and hearings are subject to Court approval and modification by the

23   Court or by written stipulation of Class Counsel and Defendant's Counsel.

24       **8.3.    Construction.** The determination of the terms and conditions of this Agreement has been

25   by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and

26   the terms and conditions of this Agreement are not intended to be, and shall not be, construed against

27   any party by virtue of draftsmanship.

28

**8.3.1.  Exhibits Incorporated by Reference.** The terms of this Agreement include the terms set forth in any attached Exhibit, which are incorporated by this reference as though fully set forth herein. Any Exhibit to this Agreement is an integral part of the settlement.

**8.3.2.  Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**8.3.3.  Invalidity of Any Provision.** Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to render all provisions of this Agreement valid and enforceable.

**8.4.    Further Acts and Cooperation Between the Parties.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of another, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. All papers to be filed with the Court by Plaintiff or Defendant in connection with this Agreement shall be submitted to the other Party at least two days prior to filing.

**8.5.    No Prior Assignments or Undisclosed Liens.** Plaintiff and Class Counsel represent and warrant that they have not assigned, transferred, conveyed, or otherwise disposed of, or purported to assign, transfer, convey, or otherwise dispose of any Released Claims or the Attorneys' Fees and Costs Award to be paid pursuant to this Agreement. Plaintiff and Class Counsel further represent and warrant that there are not any liens or claims against any of the amounts to be paid by Defendant pursuant to this Agreement. Plaintiff and Class Counsel agree to defend, indemnify, and hold Defendant harmless from any liability, losses, claims, damages, costs, or expenses, including reasonable attorneys' fees, resulting from a breach of these representations or from any lien or assignment.

**8.6.    No Undue Publicity.** Neither Plaintiff nor Class Counsel shall cause to be publicized, directly or indirectly, any discussion resulting in or the existence of this Agreement or its terms in any type of mass media, including, but not limited to, speeches, press conferences, press releases, interviews, television or radio broadcasts, newspapers, website postings, messages on the Internet, Facebook,

20

Twitter or any other social media. Breach of this provision shall entitle Defendant, in the exercise of its sole discretion, to nullify this Agreement at any time before the Effective Date. Without limitation by the foregoing, Defendant also may enforce this provision through an action for injunctive relief. Plaintiff waives any obligation by Defendant to file a bond in connection with any such action. This provision does not apply to any publications ordered by the Court or approved by Defendant. Notwithstanding the foregoing, Class Counsel shall be permitted to reference this case in declarations submitted to courts in support of their competency as class counsel.

8.7.  **Continuing Jurisdiction.** The Court shall retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the material terms of this Agreement absent the Parties' mutual agreement.

8.8.  **Disputes.** If the Parties have a dispute with regard to the language of this Agreement, they agree to engage mediator Lisa Klerman  to mediate any such dispute. The Parties will split the costs of the mediator, and all parties will bear their own fees and costs.

8.9.  **Governing Law.** All terms of this Agreement shall be governed by and interpreted according to the laws of the State of California.

Dated: January 26, 2021

**PLAINTIFF**

_____
Francisco J. Cisneros

**COUNSEL FOR PLAINTIFF AND CLASS**

Dated: January __, 2021

_____
Marcus J. Bradley
Kiley L. Grombacher
BRADLEY/GROMBACHER, LLP

21

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS

Twitter or any other social media. Breach of this provision shall entitle Defendant, in the exercise of its sole discretion, to nullify this Agreement at any time before the Effective Date. Without limitation by the foregoing, Defendant also may enforce this provision through an action for injunctive relief. Plaintiff waives any obligation by Defendant to file a bond in connection with any such action. This provision does not apply to any publications ordered by the Court or approved by Defendant. Notwithstanding the foregoing, Class Counsel shall be permitted to reference this case in declarations submitted to courts in support of their competency as class counsel.

**8.7.    Continuing Jurisdiction.** The Court shall retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the material terms of this Agreement absent the Parties' mutual agreement.

**8.8.    Disputes.** If the Parties have a dispute with regard to the language of this Agreement, they agree to engage mediator Lisa Klerman  to mediate any such dispute. The Parties will split the costs of the mediator, and all parties will bear their own fees and costs.

**8.9.    Governing Law.** All terms of this Agreement shall be governed by and interpreted according to the laws of the State of California.

**PLAINTIFF**

Dated: January __, 2021

_____
Francisco J. Cisneros

**COUNSEL FOR PLAINTIFF AND CLASS**

Dated: January 26, 2021

_____
Marcus J. Bradley
Kiley L. Grombacher
BRADLEY/GROMBACHER, LLP

21

66085560v.1

**DEFENDANT**

*Brandy Wallace*

Dated: January __, 2021

Brandy Wallace
Airport Terminal Services, Inc.

**COUNSEL FOR DEFENDANT**

Dated: February 9, 2021

Aaron R. Lubeley
SEYFARTH SHAW LLP

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE OF CLAIMS

66085560v.1

# EXHIBIT B

**BRADLEY GROMBACHER LLP**
**Transaction Report**
All Dates

**Airport Terminal Services (20181029)**

| Date | Transaction Type | Num | Adj | Name | Memo/Description | Account | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/03/2018 | Check | | No | LWDA | PAGA notice fee | ADVANCED COSTS:Filing Fees | BANK:CityBank OP (3424) | 75.00 | | 75.00 |
| 02/13/2019 | Expense | | No | FIRST LEGAL NETWORK | INV#19001547 | ADVANCED COSTS:Other Professional Services | AMEX CC -3004/4010 | 1,658.52 | | 1,733.52 |
| 02/28/2019 | Bill | 19002211 | No | FIRST LEGAL NETWORK | REQ. TO CONTINUE | ADVANCED COSTS:Other Professional Services | Accounts Payable | 93.02 | | 1,826.54 |
| 03/22/2019 | Expense | | No | FIRST LEGAL NETWORK | CISNEROS V. AIRPORT TERMINAL SERVICES/ Airport Terminal Services (20181029) | ADVANCED COSTS:Other Professional Services | AMEX CC -3004/4010 | 89.64 | | 1,916.18 |
| 03/22/2019 | Expense | | No | FIRST LEGAL NETWORK | CISNEROS V. AIRPORT TERMINAL SERVICES/ Airport Terminal Services (20181029) | ADVANCED COSTS:Other Professional Services | AMEX CC -3004/4010 | 87.52 | | 2,003.70 |
| 03/31/2019 | Bill | 19002681 | No | FIRST LEGAL NETWORK | POS FILE | ADVANCED COSTS:Other Professional Services | Accounts Payable | 72.02 | | 2,075.72 |
| 03/31/2019 | Bill | 19002692 | No | FIRST LEGAL NETWORK | REQUEST TO LEAVE TO AMNED FAC, PROP | ADVANCED COSTS:Other Professional Services | Accounts Payable | 134.02 | | 2,209.74 |
| 03/31/2019 | Bill | 19002727 | No | FIRST LEGAL NETWORK | FIRST AMENDED COMPLAINT | ADVANCED COSTS:Other Professional Services | Accounts Payable | 85.52 | | 2,295.26 |
| 04/04/2019 | Check | | No | Kiley Grombacher-Expense | 03/26/19 FRANCISCO J. CISNEROS VS AIRPORT TERMINAL SERVICES, INC.-Retrieve Order FILE NO. 20181029 | ADVANCED COSTS:Filing Fees | BANK:CityBank OP (3424) | 4.00 | | 2,299.26 |
| 01/01/2020 | Bill | 19006965 | No | FIRST LEGAL NETWORK | Airport Terminal 20190523 | ADVANCED COSTS:Filing Fees | Accounts Payable | 52.25 | | 2,351.51 |
| 01/27/2020 | Check | 2610 | No | LISA KLERMAN | Mediator-Cisneros v. Airport Terminal Services | ADVANCED COSTS:Mediation Costs | (3424) | 6,000.00 | | 8,351.51 |

**Total for Airport Terminal Services** — $ 8,351.51

**TOTAL** — $ 8,351.51    $ 8,351.51