**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone:  (805) 270-7100
Facsimile:   (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California    91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892
Email: sahagii@aol.com

Attorneys for Plaintiff, FRANCISCO J. CISNEROS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO J. CISNEROS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | **CASE NO. 2:19-cv-02798-VAP-SP**<br><br>*[Assigned for All Purposed to the Honorable Virginia A. Phillips]*<br><br>**NOTICE OF MOTION AND MOTION FOR SERVICE AWARD, ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS**<br><br>**(*Filed concurrently with Declarations of Marcus J. Bradley, Plaintiff Francisco Cisneros and Nathalie Hernandez and [Proposed] Order and Judgment*)**<br><br>**Date:       December 13, 2021**<br>**Time:       2:00 p.m.**<br>**Location:  CR 8A, 8th Floor**<br>**350 W 1st St.**<br>**Los Angeles, California**<br><br>Complaint Filed: November 27, 2018<br>Trial Date:       None |

1

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Plaintiff Francisco Cisneros ("Plaintiff"), by and through his counsel of record, will move this Court on December 13, 2021 at 2:00 p.m. in Courtroom 8A, of the above-entitled court located on the 8th Floor, 350 W. 1st Street, Los Angeles, California, to award Plaintiff a service award, Class Counsel attorneys' fees as well as reimbursement of costs.

This motion is made on the grounds that the requested award is fair, reasonable, and appropriate under the common fund doctrine, under either the percentage-of-the-fund method, or the lodestar method. The requested fee award of $279,115.75 which represents 33.3% of the settlement fund—a percentage of the fund that is well within the range that courts in this circuit approve.

Additionally, Class Counsel seek reimbursement of $8,351.51 in litigation costs and expenses they incurred in connection with the prosecution of this action. The costs and expenses for which Class Counsel seek reimbursement were reasonable and necessary to this litigation and were incurred for the benefit of the classes.

Additionally, Class Counsel seeks approval of the settlement administration payment of $35,583.09 to ILYM Group Inc., from the Gross Settlement for the administration of the settlement;

This motion will be based on this notice, upon the attached memorandum of points and authorities filed contemporaneously herewith, upon the attached Declaration of Marcus J. Bradley, the Declarations of Plaintiff, Francisco Cisneros, the Declaration of ILYM Operations Manager, Nathalie Hernandez, as well as upon the pleadings, documents, memoranda, and other records on file with the Court in this matter, and upon such other and further oral and/or documentary evidence as may be properly presented at the hearing on this matter.

Further, pursuant to Central District Local Rule 7-4(b), Plaintiff respectfully requests that this Court grant Plaintiff's relief from the twenty-five-page (25) limit

NOTICE OF MOTION AND MOTION FOR SERVICE AWARD, ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1   and permit the filing of the attached Memorandum of Points and Authorities not to

2   exceed thirty (30) pages.   Such additional page length is needed to fully address

3   the issues raised in this motion.

4

5   DATED:  November 15, 2021          **BRADLEY/GROMBACHER LLP**

6                                      **LAW OFFICES OF SAHAG MAJARIAN II**

7

8                          By:  ___/s/ Marcus J. Bradley_____

9                               Marcus J. Bradley, Esq.
                                Kiley Lynn Grombacher, Esq.
10                              Lirit A. King, Esq.
                                Sahag Majarian, II, Esq.
11
                                Attorneys for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR SERVICE AWARD, ATTORNEYS' FEES AND
REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   FACTS AND PROCEDURE ............................................................... 3

    A.    Class Counsel Devoted Significant Time and Resources to Litigating
        this Case on A Contingency Basis, Despite the Risks Involved. ...... 3

        1.    Discovery and Investigation.......................................... 4

III.  ARGUMENT..................................................................................... 13

    A.    The Attorneys' Fees Sought Are Reasonable Under Either the
        Percentage-of-the-Fund Method or the Lodestar Method. .............. 13

    B.    Class Counsel Are Entitled to an Award of Attorneys' Fees Because the
        Litigation Recovered a Certain and Calculable Fund for the Plaintiff
        Classes................................................................................... 13

    C.    The Requested Fee Is Reasonable Under the Percentage-of-the-Fund
        Method................................................................................... 14

    D.    The Requested Fee is Reasonable Under the Lodestar Cross-Check. ..... 16

        1.    Class Counsel's Lodestar Exceeds the Fee Amount Requested,
            and Is Based on Reasonable Hours and Rates. .......................... 16

        2.    The Legal Principles Behind Risk Multipliers Further Support the
            Reasonableness of the Fee Requested...................................... 17

    E.    Class Counsel are Entitled to Recover Their Reasonable Litigation Costs....18

    F.    The Court Should Approve the Requested Service Award in
        Recognition of Plaintiff's Time and Effort and the Risk He Undertook
        in Service to the Class ............................................................. 19

        1.    By Initiating This Action and Devoting Substantial Time to Assist
            with the Successful Prosecution and Settlement of the Act,
            Plaintiff Benefited the Class as a Whole...................................20

        2.    The Risks Plaintiff Took Support his Request for a Service Award.......21

        3.    The Reasonableness of Plaintiff's Request Favors Granting a
            Service Award ................................................................23

        4.    Plaintiff should be Awarded a Service Payment to Encourage
            Private Attorneys General to Enforce Important Remedial Statutes. .....25

        5.    Class Members Had Notice and an Opportunity to Object to
            Plaintiff's Request for a Service Award, Attorneys' Fees and
            Costs. To Date, No Class Member Has Objected to the Fees or

Costs Requested. .................................................................................27

IV.  CONCLUSION ...................................................................................27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal. 2008)................................................................23

*Barbosa v. Cargill Meat Solutions Corp.,*
    1:11-CV-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013)................15

*Barrera v. Home Depot U.S.A., Inc.,*
    No. 12-CV-05199-LHK, 2015 WL 2437897 (N.D. Cal. May 20, 2015 ..........26

*Blackwell v. Skywest Airlines, Inc.,*
    245 F.R.D. 453 (S.D. Cal. 2007)................................................................12

*Blum v. Stenson,*
    465 U.S. 886 (1984).................................................................................14

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980).................................................................................13

*Bower v. Cycle Gear, Inc.,*
    No. 14-CV-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) .........15

*Brazil v. Dell Inc.,*
    No. C-07-01700, 2012 WL 1144303 (N.D. Cal. Apr. 4, 2012).....................22

*Brown v. Fed. Express Corp.,*
    249 F.R.D. 580 (C.D. Cal. 2008) ...............................................................12

*Cabiness v. Educ. Fin. Sols., LLC,*
    No. 16-CV-01109-JST, 2018 WL 3108991 (N.D. Cal. June 25, 2018) ..........23

*Carlson v. C.H. Robinson Worldwide, Inc.,*
    No. 02-CV-3780, 2006 WL 2671105 (D. Minn. Sept. 18, 2006)...................24

*Ching v. Siemens Industry, Inc.,*
    C11-4838 MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .....................15

*Connolly v. Weight Watchers N. Am. Inc.,*
    No. 14-CV-01983, 2014 WL 3611143 (N.D. Cal. July 21, 2014)..................22

*Craft v. Cnty. of San Bernardino,*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) .....................................................18

*Dent v. ITC Serv. Grp., Inc.,*
    No. 12-CV-0009, 2013 WL 5437331 (D. Nev. Sept. 27, 2013).....................24

1

*Destefano v. Zynga, Inc.,*
    No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016). ...............................27

2

3

*DreamWorks Animation SKG Inc.,*
    No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) .........................22

4

5

*Elliott v. Rolling Frito-Lay Sales LP,*
    2014 WL 2761316 (C.D. Cal. June 12, 2014) .............................................................15

6

7

*Estrella v. Freedom Fin. Network, LLC,*
    C09-03156 SI, 2012 WL 4645012 (N.D. Cal. Oct. 1, 2012) .......................................15

8

*Garner v. State Farm Mut. Auto Ins.,*
    No. 08-CV-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)................................19

9

10

*Glass v. UBS Fin. Servs., Inc.,*
    C-06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...........................................25

11

12

*Gonzalez v. Officemax N. Am.,*
    2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) ..........................................12

13

*Graham v. Overland Solutions, Inc.,*
    No. 10-CV-0672 BEN, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012).........................24

14

15

*Guippone v. BH S&B Holdings, LLC.,*
    No. 09-CV-01029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ..............................22

16

17

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994).............................................................................................19

18

19

*Hester v. Vision Airlines, Inc.,*
    2014 WL 3547643 (D. Nev. July 17, 2014)................................................................15

20

*Hurst v. Buczek Enters., LLC,*
    870 F. Supp. 2d 810 (N.D. Cal. May 2, 2012)..............................................................6

21

22

*In re Anthem, Inc. Data Breach Litig.,*
    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .....................2

23

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011)..........................................................................................2

24

25

*In re Heritage Bond Litig.,*
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................15

26

27

*In re High-Tech Employee Antitrust Litig.,*
    No. 11-CV-02509- LHK, 2015 WL 5158730, (N.D. Cal. Sept. 2, 2015) .......................22

28

Table of Authorities

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 1166, 1177-78 (S.D. Cal. 2007). ....................................................19

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 4:14-MD-2541- CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017).........................................24

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)....................................................................... 14, 23

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)...........................................................................2

*In re Smithkline Beckman Corp. Sec. Litig.*,
    751 F. Supp. 525 (E.D. Pa. 1990)....................................................................25

*Jimenez v. Allstate Ins. Co.*,
    2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) ..............................................12

*Kenny v. Supercuts, Inc.*,
    252 F.R.D. 641 (N.D. Cal. 2008) .....................................................................12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234  (9th Cir. 1998) .......................................................................13

*Lusby v. GameStop Inc.*,
    No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015)......................................2

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).................................................................................17

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, No. CV
    07- 3072 AHM, 2009 WL 9100391 (C.D. Cal. June 24, 2009)..........................................15

Neary v. Regents of University of California,
    3 Cal. 4th 273 (1992) ...............................................................................12

*In re Omnivision*,
    559 F. Supp. 2d......................................................................................18

*Overton v. Walt Disney Co.*,
    136 Cal.App.4th 263, 38 Cal.Rptr.3d 693 (2006) .....................................................6

*Perkins v. Linkedin Corp.*,
    No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ...................................18

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010).........................................................................17

iii

Table of Authorities

*Reber v. Aimco/Bethesda Holdings, Inc.,*
    2008 U.S. Dist. LEXIS 81790 (C.D. Cal. August 25, 2008)..........................6

*Ridgeway v. Wal-Mart Stores Inc.,*
    269 F. Supp. 3d 975 (N.D. Cal. 2017) ......................................24

*Rodriguez v. West Publ'g Corp.,* p
    563 F.3d 948 (9th Cir. 2009).................................................1

*Ross v. U.S. Bank Nat. Ass'n,*
    No. 07-02951, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ...................22

*Sauby v. City of Fargo,*
    No. 07-CV-10, 2009 WL 2168942 (D. N. Dakota, Jul. 16, 2009) .................26

*Singer v. Becton Dickinson & Co.,*
    2010 WL 2196104 (S.D. Cal. June 1, 2010) ...................................15

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ..........................................2, 14

*State of Fla. v. Dunne,*
    915 F.2d 542 (9th Cir. 1990) .................................................14

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...........................................14, 20

*Stuart v. Radioshack Corp.,*
    C07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ..................15

*Tennille v. Western Union Co.,*
    No. 09-CV-00938, 2013 WL 6920449 (D. Col. Dec. 31, 2013) ..................26

*Thornton v. East Texas Motor Freight,*
    497 F.2d 416 (6th Cir. 1974).................................................25

*Van Vranken v. Atlantic Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995).......................................18, 25

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010)..............................................15

*Vincent v. Hughes Air W., Inc.,*
    557 F.2d 759 (9th Cir. 1977)..................................................2

*Wade v. Kroger Co.,*
    No. 01-CV-699, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008)..................24

Table of Authorities

*Wellens v. Sankyo,*
    No. C 13-00581, 2016 WL 8115715 (N.D. Cal., Feb, 11, 2016) .......................................24

*Wren v. RGIS Inventory Specialists,*
    No. C-06-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)........................................20

**<u>Statutes</u>**

Cal. Lab. Code § 203(a) ...............................................................................................................6

Cal. Lab. Code § 226(e) ...............................................................................................................6

Labor Code § 510(b) .....................................................................................................................6

**<u>Rules</u>**

Northern District Local Rule 7-4(b)............................................................................................3

**<u>Other Authorities</u>**

Elisabeth M. Sperle, *Here Today, Possibly Gone Tomorrow: An Examination of Service Awards and Conflicts of Interest in Class Action Litigation,* 23 Geo. J. Legal Ethics 873, 877 (2010)....................26

*McLaughlin on Class Actions* § 6:28 (15th ed. 2018)..................................................................20

*Newberg on Class Actions,* §15.73 .............................................................................................16

Stephen C. Yeazell, *Collective Litigation as Collective Action,* 1989 U. Ill. L. Rev. 43 (1989)....................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

Plaintiff successfully resolved his and the Settlement Class' California Labor Code and Private Attorney General Act claims resulting in a $837,431.01[1] non-reversionary settlement with an average net recovery of $116.40 per class member. (Declaration of Nathalie Hernandez ("Hernandez Decl.") at ¶13.) Given the successful efforts in achieving monetary payments for the members of the Class, particularly in the face of significant litigation risks and uncertainties, discussed *infra*, Plaintiff and Class Counsel seek the following awards: (1) a service award in the amount of $5,000 for Plaintiff; (2) attorney fees in the amount of $279,115.75 to Class Counsel; and (3) reimbursement of Class Counsel's costs and expenses in the amount of $8,351.51.

Plaintiff seeks a modest service award in the amount of $5,000 to compensate him for his role in obtaining significant class-wide recovery and for providing a full general release of his claims.  Such amount is fair and reasonable in light of the significant time and effort Plaintiff expended assisting with this class litigation and class-wide settlement, and the risks he took in order to vindicate the rights of hundreds of other workers. For his work as a "private attorney general," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958- 59 (9th Cir. 2009), Plaintiff earned the service award he seeks here. The requested payment is in line with service awards that other courts in this Circuit have approved in similar wage and hour cases.

The requested attorneys' fee award is reasonable under both the percentage-of-the-fund method and a lodestar cross-check. See *In re Bluetooth Headset Prods.*

---

[1] As the Court will note, the original Gross Settlement Amount presented at the hearing on the Motion for Preliminary Approval was $700,000.00.  Subsequent the distribution of the class date to the settlement administrator, it was determined that a pro-rated increase in the settlement amount was warranted following further investigation and confirmatory discovery performed by Class Counsel. An explanation for this increase is discussed in the Declaration of Marcus J. Bradley and the accompanying Motion for Final Approval of Settlement.

*Liab. Litig.*, 654 F.3d 935, 942, 944 (9th Cir. 2011); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Many courts within this Circuit have approved attorneys' fee awards of up to one-third of the common fund. See, e.g., *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award of one-third of settlement). The reasonableness of the fee request is further underscored by Class Counsel's lodestar, $219,439.50 to date. *See* Declaration of Marcus Bradley In Support of Plaintiffs' Motion for Final Approval and for Award of Service Fee, Attorneys Fees and Reimbursement of Costs ("Bradley Decl.") ¶34.) As detailed in the accompanying declaration of Marcus Bradley, Class Counsel spent more than 278 hours litigating this case (not including the additional time they will incur through final approval and distribution of settlement payments to Class Members) without any guarantee of payment, and faced substantial risk that they would not be compensated for their time. Id. The hourly rates requested by Class Counsel are consistent with the market rates for attorneys of their level of skill and experience. The requested award is thus fair, reasonable, and appropriate under the common fund doctrine, particularly in light of the meaningful results achieved and the significant risks presented.

Class Counsel are also entitled to recover their reasonable litigation expenses from the common fund. See *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *28 (N.D. Cal. Aug. 17, 2018) (Koh, J.); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *5 (N.D. Cal. Mar. 31, 2015) (Lloyd, J.). Here, Class Counsel seek reimbursement of $8,351.51 in reasonable litigation costs and expenses they have incurred in connection with the prosecution of this action. See Bradley Decl. ¶42. These expenses are of the type ordinarily billed to paying clients, and were incurred for the benefit of the Class. Id.at ¶43   Class Counsel are therefore entitled to reimbursement of these expenses.

1

## II.    FACTS AND PROCEDURE

2

### A.    Class Counsel Devoted Significant Time and Resources to Litigating this Case on A Contingency Basis, Despite the Risks Involved.

3

4

Class Counsel have devoted substantial time and resources to investigating and litigating this case since in the face of significant risk and uncertainty. Before filing this lawsuit, Class Counsel investigated the facts by interviewing Plaintiff, reviewing Plaintiff's documents, and preparing pre-filing notices to the LWDA and Defendant. (Bradley Decl. ¶3.)

5

6

7

8

This lawsuit was initially filed by Plaintiff in the Los Angeles County Superior Court on November 27, 2018. On or about March 26, 2019, Plaintiff filed a First Amended Complaint.

9

10

11

Defendant removed the lawsuit to the United States District Court Central District of California on April 11, 2019 and answered the operative First Amended Complaint on May 17, 2019.

12

13

14

After the initial exchange of information, the Parties agreed to schedule a mediation, sought availability from mutually agreeable mediators, and were provided available mediation dates in February 2020. On July 15, 2019, the Court stayed the Action to permit the Parties to attempt to mediate the matter. The Parties subsequently met and conferred on numerous occasions and continued to discuss Plaintiff's claims and Defendant's defenses.

15

16

17

18

19

20

Defendant denies the allegations in their entirety, denies any liability or wrongdoing of any kind associated with the claims alleged in this action and further denies that, for any purpose other than settling this action, this matter is appropriate for class treatment. Defendant further contends that it has complied with all applicable California laws, the California Labor Code, the applicable California Wage Order(s), and the Unfair Competition Law. Defendant finally contends that, if this matter were to be litigated further, it would have strong defenses to oppose class certification and succeed on the merits of Plaintiffs' causes of action.

21

22

23

24

25

26

27

28

3

### 1.    Discovery and Investigation

Plaintiff's Counsel conducted discovery that yielded information and documentation concerning the claims set forth in the litigation, such as Defendant's policies and procedures regarding the payment of wages, the provision of meal and rest breaks, timekeeping policies, including recording hours, issuance of wage statements, termination wages, as well as information regarding the number of putative class members and the mix of current versus former employees, the average number of hours worked, the wage rates in effect, and length of employment for the average putative class member.

Further, Plaintiff retained an expert to analyze and review a sampling of class member data provided by Defendant. From this analysis, Class Counsel was able to analyze Defendant's liability in this action and prepare a realistic damage model.

The Parties agreed to attend mediation with respected wage-and-hour class action mediator, Lisa Klerman. The mediation took place on February 28, 2020 in Rancho Palos Verdes and lasted all day. At the conclusion of the mediation, the mediator made a proposal that was not accepted until March 9, 2020. In the interim, Defendant's Counsel provided Class Counsel with additional data points that resulted in a tentative settlement of the litigation, subject to finalization of a formal agreement and approval of the Court. The Parties signed a Memorandum of Understanding, and engaged in extensive negotiations about the terms and conditions of the resolution. The Parties entered into a more detailed, formalized Joint Stipulation of Class Action and PAGA Settlement and Release of Claims, of which it is now requested the Court finally approve.

### a.    The Parties Conducted a Thorough Investigation of the Factual and Legal Issues

The Settlement is the product of informed negotiations following extensive investigation by Class Counsel.    During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law.  In the course of discovery, Class Counsel received

and analyzed documents, *inter alia*, the following information and evidence with which to properly investigate and evaluate the claims, including: (1) Defendant's written policies regarding, e.g., meal and rest period policies, time-keeping, final pay, overtime and background checks; (2) wage statements; and (3) time and payroll records.

Overall, Class Counsel performed an exhaustive investigation into the claims at issue, which included: (1) determining Plaintiff's suitability as putative class representative through interviews, background investigation, and analysis of his employment files and related records; (2) evaluating all of Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing Defendant's labor policies and practices; (5) researching settlements in similar cases; (6) conducting a discounted valuation analysis of claims; (7) drafting the mediation brief; (8) participating in a full-day mediation session; and (9) finalizing the Settlement Agreement. The extensive document and data exchanges have allowed Class Counsel to appreciate the strengths and weaknesses of the claims alleged against the benefits of the proposed Settlement.

### b. Defendant Has Asserted Defenses that Create Risk that the Class will Receive No Recovery if the Claims at Issue are Not Settled

Throughout this litigation, Defendant has indicated that they intended to vigorously contest class certification and Plaintiff's claims on the merits. While Plaintiff does not agree with Defendant's arguments regarding class certification or their defenses on the merits to Plaintiff's claims, Plaintiff recognizes that there is a risk that the Court and/or a jury will agree with Defendant, and thus, limit or eliminate Class Members' ability to recover on the claims at issue. A summary of the defenses on the merits that Defendant had asserted to Plaintiff's various claims include without limitation, the following:

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Plaintiff's Overtime and "Off the Clock":*

- Employees were permitted to, and indeed have, worked overtime for which they were paid consistent with California law. Additionally, Defendant's policy is that all employees are paid for every minute worked with "off-the-clock" work strictly .

*Plaintiff's Direct Meal and Rest Break Claim:*

- Defendant's meal and rest break policies comply with California law and breaks were indeed made available to employees.  Defendant argued that the issue of whether the employee chose not to take his or her meal is an individualized issue which would preclude class certification of the meal and rest break issues.

- Employees are required to take compliant meal and rest breaks under Defendant's policies.

*Plaintiff's Wage Statement Claim*

- There is no evidence of a knowing and intentional violation of 226(a). See Cal. Lab. Code § 226(e); *Hurst v. Buczek Enters.*, LLC, 870 F. Supp. 2d 810, 829 (N.D. Cal. May 2, 2012) (finding that failure to provide compliant wage statements was not knowing and intentional and granting summary judgment on wage statement claim); *Reber v. Aimco/Bethesda Holdings, Inc.*, 2008 U.S. Dist. LEXIS 81790, at *25 (C.D. Cal. August 25, 2008) (same)

*Plaintiff's Separation Pay Claim*

- To the extent this claim is alleged as a derivative claim, it fails for the same reasons as the underlying claims.

- This claim fails because even if Plaintiff's or Class Members were not paid all amounts owed at separation (which Defendant vehemently denies), there was a good faith dispute as to whether additional wages are owed and Plaintiff cannot show that any such alleged underpayment was "willful" so as to justify the payment of penalties under California *Labor Code* section 203.  *See Cal. Lab. Code* § 203(a) (requiring a "willful" violation to assert liability);

### c.    Exposure Analysis.

Based upon the analysis of a sampling of Defendant's business records,

6

Plaintiff's counsel, in conjunction with an expert, Berger Consulting Group, determined the following:

**Meal and Rest Breaks:** The data produced indicated a low meal period violation rate. Indeed, the number of shifts over 6 hours are estimated that 30% of the shifts that are eligible for a meal period. Assuming Plaintiff achieved certification, proved these theories on the merits, and defeated all of Defendant's defenses, Class Members would be entitled to two premiums under Labor Code § 226.7.

Accordingly, Class Counsel were able to establish that there were some 25,800 instances when they might prove liability for premium wages om account of missed meals on a class-wide basis. Accordingly, Defendant's ***maximum*** exposure under Plaintiff's meal period claims is $442,212.00 [25,800 shifts x $17.14 avg. hourly rate x 1 premium]. Bradley Declaration in Support of Motion for Preliminary Approval ¶ 17. Dkt. 25-1.

At all times relevant, Defendant had facially compliant meal and rest period policies. Further, Defendant argued that the rest and meal period claims were inherently unsuited for class treatment as they require an inquiry into which periods putative class members failed to take as well as why the period was not taken, which would devolve into an unmanageable series of mini-trials, devoid of common evidence. Employers are not required to record rest periods and such periods are paid. Thus, unlike meal periods, were there are often records showing whether an employee clocked out or not, there is no such evidence to prove a missed rest period or that the employer refused to authorize and permit one. Managing such claims at trial has become exceedingly difficult. Plaintiff will depend on sample witness testimony and surveys to prove the claims. While a victory with such evidence is certainly possible, relevant caselaw makes such claims risky from a trial management and due process perspective. See *Duran v. U.S. Bank National Assn.*, 59 Cal. 4th 1, 31 (2014) (explaining "[I]f sufficient common questions exist to

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

support class certification, it may be possible to manage individual issues through the use of surveys and statistical sampling."); *Tyson Foods, Inc. v. Bouphakeo* (2015) 136 S.Ct. 382; *Comcast Corporation v. Behrend* (2013) 133 S.Ct. 1426.

**"Off-The-Clock" Work:** For the "off-the-clock" (OTC) claim, Plaintiff's expert was provided with assumptions regarding the frequency as OTC is not recorded. I asked the expert to assume that the class worked OTC on average 5 minutes per shift waiting for a cart to transport employees to their work site. This resulted in 27,729 hours of unpaid time with a maximum potential exposure of $482,761.89. Again, given the lack of "control" over the employees, this claim was discounted by 90% resulting in value of $48,276.18.

**Unreimbursed Business Expenses:** Plaintiff also investigated a claim for unreimbursed business expenses based on the personal cellphone use for business purposes. Plaintiff claimed he was forced to use his cellphone to communicate with co-workers and his employer to carry out job duties. For these unreimbursed business expenses Plaintiff's expert calculated $189,670.00 based on an assumption of $10 per month for 18,967 months in the class period. Defendant argued this was more a matter of the employee's convenience, rather than necessity and any such use was unreasonable. *See Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 568 (whether an expense is necessary depends on the reasonableness of the employee's choices). Accordingly, the claim was heavily discounted by 90% to $18,967.00.

**Failure to Make Proper Background Check Disclosure Claim:**

The background check claims allege violations of the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (FCRA) and its California counterparts—the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code §§ 1786 et seq. (ICRAA), and the Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785 et seq. (CCRAA). The potential damages for the FCRA claim are actual damages, and if the violations are "willful," then statutory damages of no less than

$100 to no more than $1,000 per violation. 115 U.S.C. § 1681n(a)(1)(A). For violation of ICRAA, the damages are actual damages only for class actions. Cal. Civ. Code § 1786.50(a)(1) and for violation of CCRAA, the actual damages for negligent violations. Cal. Civ. Code § 1785.31 or for willful violations, statutory damages of no less than $100 to no more than $5,000 per violation.

Plaintiff discounted this claim as required disclosures were in electronic form and after reviewing Plaintiff believes Defendant complied with the applicable acts. To the extent there is an alleged violation FCRA based on the prior disclosures due to the ability to display both disclosures on the same screen (based on the electronic disclosure) that does not convert the disclosure to a non- standalone disclosure.

Since about February 2018, however, Defendant has used HireRight applications—and FCRA disclosures that fully comply with the FCRA's standalone requirement. In addition, Defendant has defenses to this claim based on federal preemption and the unique circumstances that require Defendant to provide the background checks (including, for example, independent TSA and LAWA background check authorizations permissible under other federal law). To the extent there was any technical violations for the prior disclosures, the violations were not willful and any background check recoveries thus would be limited to actual damages. As a result, individualized actual damages issues would not be amenable to class certification and would be non-existent or speculative, at best. Finally, the applicable statute of limitations is two years under each of the statutes, since all applicants were informed that a background check was being obtained. As a result, potential liability for background check claims should be limited to reports procured on or after March 26, 2017 (or two years before background check claims were first alleged in the first amended complaint) and, therefore, Plaintiff does not have standing to pursue claims based on background check disclosures he never received. As a result, potential liability for background check claims, at best, would be limited to reports procured before ATS switched to the HireRight application in or shortly

1   after February 2018 and the damage claims would be limited to actual damages that

2   Plaintiff is not aware that would exist for any employee.

3       **Waiting Time Penalties:** For waiting time penalties, Plaintiff's expert

4   calculated the waiting time penalty to be $4,623,985.00 for 1,272 terminated

5   employees. Defendant strongly disagrees with these calculations and contend that

6   Plaintiff's damage model relies upon incorrect assumptions and is derivative of

7   unsupportable claims. The value of these penalties required a substantial discount

8   for settlement at this juncture.

9       **Wage Statement Penalties:** For wage statement penalties, the exposure is

10  $8,105,450.00 based on the data provided by Defendant. There were 2,271

11  estimated putative class members who worked in the period April 6, 2018 to

12  February 2, 2020 for which there are 82,190 paychecks issued. Again, this number

13  was heavily discounted given recent case law holding that meal and rest break

14  penalties cannot form the basis for wage statement penalties.

15      **PAGA:** Plaintiff's PAGA claim is derivative of all of Plaintiff's above-

16  described wage and hour claims based on the Labor Code. The amount of PAGA

17  penalties that could conceivably be alleged if we argued for the stacking of potential

18  civil penalties, even if proved, likely would be significantly reduced by a Court.

19  With appropriate discounting, it is estimated that the reasonable potential PAGA

20  exposure in this case to be less than $300,000.00.

21      Here, for example, to establish liability for meal and rest period violations,

22  individualized inquiries would likely be required.  This is because, based on the

23  testimony provided, Plaintiff could not simply rely on timecards, especially as to

24  rest periods which are not included on timecards.  It may be necessary to provide

25  individualized testimony about the circumstances pertaining to each employee or

26  department to establish liability.  Given the size of the workforce, this could prove

27  unmanageable.  As is always the case with a trial, Plaintiff needed to accept that

28  there was a possibility that he would not prevail at trial.

Plaintiff was cautiously optimistic about the chances of prevailing at certification on his claims as well as at trial. Nevertheless, Plaintiff recognized that if the litigation had continued, he may have encountered significant legal and factual hurdles that could have prevented the Class from obtaining full recovery for their claims, or perhaps even any recovery (under the worst-case scenario). In particular, Plaintiff's decision to settle was influenced by the following considerations: (i) the strength of Defendant's defenses both to certification and on the merits; (ii) the risk of losing on any of a number of dispositive motions that could have been brought between now and trial (e.g., motions to decertify the class, motions for summary judgment, motion to strike the PAGA claims as unmanageable, and/or motions in limine) which may have eliminated all or some of Plaintiff's claims, or barred evidence necessary to prove such claims; (iii) the risk of losing at trial; (iv) the chances of a favorable verdict being reversed on appeal; and (v) the difficulties attendant to collecting on a judgment.

The potential risks attending further litigation also support preliminary approval. Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526. Proceeding to certification and subsequently through trial (and the inevitable appeals) could add years or more to the resolution of this case, which has already been pending for approximately three years.

To be sure, a number of cases have found wage and hours actions to be amenable to class resolution. However, some courts have gone the other way, finding that some of the very claims at issue here--meal period, rest period, and off-the-clock violations--were not suitable for class adjudication because they raised

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

too many individualized issues.[2] Thus, given the uncertainty surrounding both certification and liability as to the claims alleged in the litigation, it was a virtual certainty that the litigation would proceed, at some point in the course of the litigation, through the appellate process.

Additionally, early resolutions save time and money that would otherwise go to litigation. Parties' resources, as well as the Court's, would be further taxed by continued litigation. And if this action had settled following additional litigation, the settlement amount would likely have considered the additional costs incurred, such that there may have been less available for Class Members. Cost savings is one reason why California policy strongly favors early settlement. *See Neary v. Regents of University of California*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements and observing that "[s]ettlement is perhaps most efficient the earlier the settlement comes in the litigation continuum."). Moreover, given that the class members in this case are primarily low wage workers, averaging $17 per hour, for whom receiving speedy remuneration is particularly important, the potential for years of delayed recovery is a significant concern. Considered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery to plaintiff class members, the totality of relief provided under the proposed Settlement is more than adequate and well within the range of reasonableness. This concern also supports settlement.

---

[2] *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

12

Moreover, as developments throughout this litigation have shown, the law regarding certification of similar claims and class-wide proof of damages by just and reasonable inference in wage and hour cases, among other issues, is precarious. Additionally, in late 2015, the California Private Attorneys General Act (PAGA) was amended to allow employers the right to "cure" certain commonly litigated defects in employee wage statements within 65 days of notice by the employee in order to avoid litigation. Such amendment represents the general risk of the law changing over time.

In summary, although Plaintiff and his counsel maintained a strong belief in the underlying merits of the claims, they also acknowledge the significant challenges posed by continued litigation through trial. Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

## III. ARGUMENT

### A. The Attorneys' Fees Sought Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method.

Class Counsel seek fees in the amount of $279,115.75, or 33.3% of the settlement fund. The amount requested is reasonable under both the percentage-of-the-fund method and a lodestar cross-check.

### B. Class Counsel Are Entitled to an Award of Attorneys' Fees Because the Litigation Recovered a Certain and Calculable Fund for the Plaintiff Classes.

Courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, class counsel have an equitable right to be compensated from that fund as a whole. See, e.g., *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (U.S. Supreme Court "has

13

recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (recognizing common fund doctrine). The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund, those who benefit from the fund will be unjustly enriched. *Boeing Co.*, 444 U.S. at 478. To prevent this unfair result, courts exercise their inherent equitable powers to assess attorneys' fees against the entire fund, thereby spreading the cost of those fees among all those who benefit from it. *Id.*

The settlement of this litigation resulted in the recovery of $837,431.01 to be distributed to Class Members. Because none of the Class Members paid fees to Class Counsel for their efforts during the litigation, equity requires Class Members to pay a fair and reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their case individually. *Id.* at 478-82.

## C.    The Requested Fee Is Reasonable Under the Percentage-of-the-Fund Method.

Where, as here, fees are requested from a common fund, the court has discretion to use either the percentage-of-the-fund method or the lodestar method to evaluate the reasonableness of the fee amount requested. *In re Bluetooth*, 654 F.3d at 942. In common fund cases, it is widely accepted for courts to award fees "based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); see *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (district court appropriately calculated the fee award as a percentage of the total settlement fund, including notice and administrative costs and litigation expenses); *Six (6) Mexican Workers*, 904 F.2d at 1311 ("[A] reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing

14

a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases").

Many federal courts within this Circuit have awarded one-third of the common fund in fees. See, e.g., *Bower v. Cycle Gear, Inc.*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (approving fee award of 30% of the settlement fund, which was equivalent to class counsel's lodestar with a multiplier of 1.37); *In re Pac. Enterprises*, 47 F.3d at378-79 (affirming fee award of 33 percent of settlement); *Hester v. Vision Airlines, Inc.*, 2014 WL 3547643 at *11 (D. Nev. July 17, 2014) (awarding 30% of common fund); *Ching v. Siemens Industry, Inc.*, C11-4838 MEJ, 2014 WL 2926210 at *7-8 (N.D. Cal. June 27, 2014) (awarding 30% of gross settlement fund of $425,000); *Elliott v. Rolling Frito-Lay Sales LP*, 2014 WL 2761316 at *8 (C.D. Cal. June 12, 2014) (awarding 30% of gross settlement fund); *Barbosa v. Cargill Meat Solutions Corp.*, 1:11-CV-00275-SKO, 2013 WL 3340939, at *15 (E.D. Cal. July 2, 2013) (awarding 33.3% of fund in wage-and-hour class action); *Estrella v. Freedom Fin. Network, LLC*, C09-03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012) (awarding 33⅓ percent of $1.9 million settlement fund); *Stuart v. Radioshack Corp.,* C07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33⅓ percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (awarding 33⅓ percent); *In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding one-third of common fund). Indeed, "[n]ationally, the average percentage of the fund award in class actions is approximately one third." *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles,* No. CV 07- 3072 AHM, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009); see also

*Newberg on Class Actions*, §15.73, and the cases cited therein: "regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."

> **D.    The Requested Fee is Reasonable Under the Lodestar Cross-Check.**
>
> **1.    Class Counsel's Lodestar Exceeds the Fee Amount Requested, and Is Based on Reasonable Hours and Rates.**

While courts have discretion in common fund cases to calculate a fee award using either the percentage-of-the-fund approach or the lodestar approach, courts are encouraged to crosscheck both figures against one another to confirm the reasonableness of the award. In re *Bluetooth*, 654 F.3d at 942, 944-45; *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").

Here, a lodestar cross-check confirms that the 33.3% fee award requested is reasonable. As set forth in the accompanying declaration of Marcus Bradley, Class Counsel's lodestar to date exceeds $219,439.50 (which does not include attending the hearing on the motion for final approval of the settlement and settlement administration). The hours and rates used to calculate Class Counsel's lodestar are reasonable. Class Counsel have devoted more than 278 hours to this litigation. Bradley Decl. ¶37. This time was spent on numerous essential litigation tasks in prosecuting this action, including but not limited to: (1) conducting pre-filing investigation, both legal and factual; (2) drafting the complaints; (3) conducting informal ongoing investigation, including interviewing class members; (4) drafting initial disclosures and reviewing documents produced in discovery; (5) preparing for and participating in settlement negotiations; (6) revising and negotiating the Settlement Agreement, preparing for the motion for preliminary approval, appearing at the motion for preliminary approval hearing, and other settlement

16

tasks; (7) case management including a significant amount of time post-settlement attempting to revise the settlement formula and reviewing the data thereto; and (8) communicating with class members.

In calculating this lodestar hours figure, Class Counsel exercised billing judgment as they would for a fee-paying client, reducing hours to eliminate redundancies, inefficiencies, and other time not appropriately charged to a paying client. Id. ¶37.

The rates used in calculating Class Counsel's lodestar are also reasonable. The lodestar should be calculated using hourly rates that are "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. Courts typically apply each attorney's current rates for all hours of work regardless of when performed to account for the delay in payment resulting from the years it took to litigate the case. See *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (court should account for delay in payment by applying current rather than historic hourly rates); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453-54 (9th Cir. 2010). Here, Class Counsel's experience, reputation, and ability justify the rates charged. See Bradley Decl. ¶¶26-31. Further, these rates are commensurate with those prevailing for attorneys with comparable skill and experience litigating complex wage-and-hour class and collective actions. Id. at ¶38.

## 2. The Legal Principles Behind Risk Multipliers Further Support the Reasonableness of the Fee Requested.

In common fund cases, courts frequently apply multipliers to the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors. See *Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases") (internal quotation marks and citation omitted). Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency

17

cases." Id. For these reasons, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4 or even higher. See id. (approving multiplier of 3.65); *Perkins v. Linkedin Corp.,* No. 13-CV-04303-LHK, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (multiplier of 1.45 was reasonable); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging from 4.5 to 19.6); *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 298 (N.D. Cal. 1995) (noting that multipliers in the 3-4 range are common in class action lodestar awards).

As the case law suggests that Class Counsel here is justified in seeking a risk multiplier. Here, Class Counsel would require just under a 1.3 multiplier.  The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re Omnivision, Inc*, 559 F. Supp. 1036 2d at 1047 (N.D. Cal. 2008). In this case, Class Counsel have invested more than 278 hours of work with no compensation. See Bradley Decl. ¶¶ 37, 39. Moreover, Class Counsel have done so while facing the real possibility of no recovery. This factor also supports the requested fees.

### E.    Class Counsel are Entitled to Recover Their Reasonable Litigation Costs

Class Counsel also request reimbursement from the fund in the amount of $8,351.51for litigation costs and expenses reasonably incurred, which is approximately $12,500 less than the $20,000 they are authorized to seek under the terms of the Settlement Agreement. Like attorneys' fees, these expenses should be paid from the common fund because all Class Members should share their fair share of the costs of the litigation, from which they benefitted. The expenses for which Class Counsel seek reimbursement are the normal costs of litigation that are traditionally billed to paying clients. See, e.g., *Vincent*, 557 F.2d at 769; *Harris v.*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys should recover reasonable out of pocket costs of the type ordinarily billed to paying clients). Class Counsel have incurred at least $8,351.51 in litigation costs and expenses to date, and will inevitably incur additional necessary costs through the conclusion of this matter for which they will not be reimbursed, including costs related to the motions for final approval, attorneys' fees, and service award, and assisting in the settlement administration process. The expenses for which Class Counsel seek reimbursement are detailed in the supporting declaration of Class Counsel but generally include filing, service, mediation and expert fees. Bradley Decl. ¶44, Exhibit A.

As set forth therein, all of these costs were necessary to the prosecution of this litigation, were the sort of expenses normally billed to paying clients, and were made for the benefit of the class. Id. at ¶45. Accordingly, they are reimbursable. See, e.g., *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007).

## F.    The Court Should Approve the Requested Service Award in Recognition of Plaintiff's Time and Effort and the Risk He Undertook in Service to the Class

Class representatives play a crucial role in bringing justice to those who would otherwise be unable to vindicate their rights. See Rodriguez, 563 F.3d at 958–59 (service awards may recognize a plaintiff's "willingness to act as a private attorney general"). In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." Id. at 958. "Numerous courts in the Ninth Circuit and elsewhere have approved service awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class." *Garner v. State Farm Mut. Auto Ins.*, No. 08-CV-1365, 2010 WL 1687832, at *17, n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases). In examining this commitment to the class and the reasonableness of a requested service payment, courts must consider all "relevant factors includ[ing] the actions the plaintiff has taken to protect the

19

interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted).

Here, each of these factors weigh in favor of granting this motion. The $5,000 that Plaintiff seeks is a reasonable amount to compensate Plaintiff for the time he spent pursuing this case, the risk involved in bringing this case as named Plaintiff, the delay resulting from bringing this case on a class rather than an individual basis, the information and insight he provided to class counsel to prosecute the case efficiently, his role in the settlement process, and the service rendered to the unnamed class members resulting from the settlement achieved in this case. As discussed in detail below and in Plaintiff's declaration submitted herewith, Plaintiff contributed an exceptional amount of time and effort on behalf of the class.

### 1. By Initiating This Action and Devoting Substantial Time to Assist with the Successful Prosecution and Settlement of the Act, Plaintiff Benefited the Class as a Whole

Service awards are payments to class representatives for their service to the class in bringing the lawsuit. See *Rodriguez*, 563 F.3d at 958-59; see also 2 *McLaughlin on Class Actions* § 6:28 (15th ed. 2018). Class representatives bring critical factual knowledge to employment class actions, including information about employer policies and practices that affect wages. See *Wren v. RGIS Inventory Specialists*, No. C-06-05778, 2011 WL 1230826, at *32-37 (N.D. Cal. Apr. 1, 2011) supplemented, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (recognizing Plaintiffs' efforts in time spent meeting with class counsel and informing them of employers' practices and procedures, as well as reviewing pleadings and motions, searching for and producing documents and responding to interrogatories).

Here, Plaintiff protected the interests of the class by bringing this action and spending numerous hours assisting in the prosecution and settlement of this case.

Because of his efforts, the entire class will now benefit from the settlement of the case. Plaintiff now submits a declaration in support of this motion for a service award describing the tasks he performed as the named, representative Plaintiff and the details of his participation in assisting in the prosecution of this case.

Plaintiff initiated this case on behalf of the class, conferred with class counsel multiple times before the lawsuit was filed to inform counsel of the facts underlying his claims, provided counsel with relevant documents and the names of other witnesses, and reviewed the draft complaints. Cisneros Declaration at ¶3-15.

Among other tasks detailed in his declaration, Plaintiff spent significant time searching for and providing documents, conferring with counsel and participating in the mediation and settlement discussions culminating in the settlement of this case by conferring with class counsel in preparation for the settlement. Id. at ¶21.

Plaintiff committed an exceptional amount of time and effort to this litigation, from initiating the suit by seeking out qualified and suitable class counsel, to his involvement and dedication to the case at each stage of the lawsuit. See generally Id., ¶¶ 3-16. In addition to the hours that Plaintiff expended pursuing these class claims, he provided class counsel with information and documents regarding the litigation which was essential to framing the claims in his Complaints and prosecuting the case, thereby substantially reducing the need for formal pretrial discovery. Bradley Decl. ¶47. By actively participating in settlement strategy and negotiations, Plaintiff contributed significantly to the successful outcome of the case. For these efforts in furtherance of the class, this Court should grant the requested service award.

### 2.    The Risks Plaintiff Took Support his Request for a Service Award

Service awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958-59; *Brazil v. Dell Inc.*, No. C-07-

21

01700, 2012 WL 1144303, at *2-3(N.D. Cal. Apr. 4, 2012). In the workplace context, where workers are often blacklisted if they are considered "trouble makers," employees who sue their employers are particularly vulnerable to retaliation and termination. See *In re High-Tech Employee Antitrust Litig*., No. 11-CV-02509- LHK, 2015 WL 5158730, at *16–18 (N.D. Cal. Sept. 2, 2015) (granting service awards based in part on the named plaintiffs' risk of future workplace retaliation and diminished future employment prospects for being labeled "troublemakers" in their industry); *Nitsch v.*

*DreamWorks Animation SKG Inc*., No. 14-CV-04062-LHK, 2017 WL 2423161, at *14 (N.D. Cal. June 5, 2017) (same); *Connolly v. Weight Watchers N. Am. Inc*., No. 14-CV-01983, 2014 WL 3611143, at *4 (N.D. Cal. July 21, 2014) (named plaintiffs assume "the risk of being stigmatized or disfavored by their current or potential future employers by suing their Apr. 8, 2011) (awarding enhancements to named plaintiffs in recognition that "they risk their good will and job security in the industry for the benefit of the class as a whole"); *Ross v. U.S. Bank Nat. Ass'n*, No. 07-02951, 2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010) (enhancements based on "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles").

Here, Plaintiff undertook significant risk and burden in coming forward and filing suit against Defendant as named Plaintiff. See *Guippone v. BH S&B Holdings, LLC.*, No. 09-CV-01029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating that person."). Although Plaintiff could likely have confidentially resolved his individual claims, he was willing to risk exposure and act as the named Plaintiff to secure a remedy not only for himself, but for his fellow workers who might be

unwilling, afraid, or unable to bring their own case. See <u>Nantiya Ruan, Bringing Sense to Service Payments: An Examination of Service Payments to Named Plaintiff in Employment Discrimination Class Actions</u>, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the realistic fear of reprisal facing employees who bring workplace law class actions). The risk of retaliation and deterred future employment weighs in favor of the requested service award.

### 3. The Reasonableness of Plaintiff's Request Favors Granting a Service Award

The amount being requested, $5,000.00 for the only named Plaintiff, is reasonable in light of the factors courts balance to ascertain the reasonableness of service payments. Courts balance "the number of named plaintiffs receiving service payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton*, 327 F.3d at 977; see also *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).

Here, the proportion of the requested incentive award to class members' individual recoveries is reasonable. See *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (considering the same *Staton* factors and affirming service awards of $5,000 for nine plaintiffs). The total service award ($5,000) is approximately 0.5 percent of the total settlement value of $875,000. This is not a case where the representative plaintiff receives many thousands of dollars while the class members get a coupon or nominal damages. See *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2018 WL 3108991, at *8 n.5 (N.D. Cal. June 25, 2018) (indicating that the court would be unlikely to award a service payment in an amount that was "approximately 500 times the size of the average award for other class members.").

In addition, the named Plaintiff agreed to execute a broader release than the releases that apply to other class members. This release warrants additional compensation. See *Dent v. ITC Serv. Grp., Inc.*, No. 12-CV-0009, 2013 WL

23

5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding enhancement in part because wage plaintiff signed a general release); *Wade v. Kroger Co.*, No. 01-CV-699, 2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) (awarding plaintiffs additional compensation because they agreed to a "release of all claims . . . that is broader than the release given by other members of this class"); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-CV-3780, 2006 WL 2671105, at *4 (D. Minn. Sept. 18, 2006) (authorizing additional payments to plaintiff who "g[a]ve additional consideration-that is, a broader release of claims than the release to be signed by other class members").

Finally, the service payment that Plaintiff seeks is in line with and, in some cases, is much lower than awards approved by other federal judges in class actions in this Circuit. See, e.g., *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541- CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 to each class representative); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (awarding $15,000 to each of nine class representatives); *Wellens v. Sankyo*, No. C 13-00581, 2016 WL 8115715, at *4 (N.D. Cal., Feb, 11, 2016) (awarding $25,000 to each of the six named Plaintiffs in an action alleging gender discrimination in the workplace "in light of their time and effort pursuing this litigation, the substantial benefit to the Class from the Settlement, and the risks that they have faced in representing the Class"); *Graham v. Overland Solutions, Inc.*, No. 10-CV-0672 BEN, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (awarding $25,000 to each named plaintiff for their time, effort, risks undertaken for the payment of costs in the event the action had been unsuccessful, stigma upon future employment opportunities for having initiated an action against a former employer, and a general release of all claims related to their employment); *Garner*, 2010 WL 1687832, at *17 n.8 ("Numerous courts in the Ninth Circuit and elsewhere have approved service awards of $20,000 or more") (collecting cases); *Glass v. UBS Fin. Servs., Inc.*, No.

24

C-06-4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff).

### 4.    Plaintiff should be Awarded a Service Payment to Encourage Private Attorneys General to Enforce Important Remedial Statutes.

Courts in this Circuit routinely grant service payments as sound policy that encourages "private attorneys general" to bring important civil rights and wage rights cases that would not otherwise be heard. *Rodriguez*, 563 F.3d at 958-59. Many courts justify service payments based on the need to encourage litigants to bring class actions, furthering the public policy underlying the statutory scheme. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those [employees] who protest and help to bring rights to a group of employees who have been the victims of [employer wrongdoing]."); see also *In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 award because named Plaintiff "rendered a public service" and "conferred a monetary benefit" on the shareholder class). As one court noted:

> The purpose of service awards for class representatives is to encourage people with significant claims to pursue actions on behalf of others similarly situated. Numerous courts have recognized that service awards are an efficient and productive way of encouraging members of a class to become class representatives, and in rewarding individual efforts taken on behalf of the class.

*Tennille v. Western Union Co.*, No. 09-CV-00938, 2013 WL 6920449, at *14 (D. Col. Dec. 31, 2013) (internal quotations and citations omitted). "Collective litigation is the compromise of individual positions, interest and autonomy in the service of a joint good." Stephen C. Yeazell, *Collective Litigation as Collective*

25

*Action*, 1989 U. Ill. L. Rev. 43, 46 (1989). Without individuals who are willing to step forward and represent a class, the public policy goals of class actions will be undermined as fewer individuals would be willing to serve the greater good by investing their personal time and resources and exposing themselves to the potential risks and harms for doing so. In fact, "[r]ecent case law seems to reflect a judicial attitude that encouraging participation in class actions suits is a societal good, and if a fee is needed in order to ensure more people are willing to 'take the plunge' by serving as the named plaintiff in a class action lawsuit, then incentive awards can be justified." Elisabeth M. Sperle, *Here Today, Possibly Gone Tomorrow: An Examination of Service Awards and Conflicts of Interest in Class Action Litigation*, 23 Geo. J. Legal Ethics 873, 877 (2010).

Moreover, as a matter of public policy, class representatives should be rewarded for the personal sacrifices they made to vindicate the rights of others. Courts have recognized that serving as a named class representative requires personal sacrifice. See, e.g., *Barrera v. Home Depot U.S.A., Inc*., No. 12-CV-05199-LHK, 2015 WL 2437897, at *2 (N.D. Cal. May 20, 2015) (identifying financial and other risks as a factor to considering in awarding service payments); *Sauby v. City of Fargo*, No. 07-CV-10, 2009 WL 2168942, at *2 (D. N. Dakota, Jul. 16, 2009) (citing *Droegemueller v. Petroleum Development Corp*., 2009 WL 961539 (D. Colo. Apr. 7, 2009)); see also Sperle, 23 Geo. J. Legal Ethics at 880-82 (2010) (identifying personal sacrifice, opportunity costs, personal burdens and risk of retaliation for named class representatives).

This Court should thus grant the service payment to Plaintiff in recognition of his compromises and service to the common good.

/ / /

/ / /

/ / /

/ / /

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**5.    Class Members Had Notice and an Opportunity to Object to Plaintiff's Request for a Service Award, Attorneys' Fees and Costs. To Date, No Class Member Has Objected to the Fees or Costs Requested.**

The Notice of Settlement, sent to all Class Members described the terms of the settlement, including the maximum amounts Plaintiff was authorized to request and receive for a service award, attorneys' fee and costs. Hernandez Decl., Ex A at Section 9.  No class members have objected to the service award, fee request or cost reimbursement requests.  Hernandez Decl. ¶¶10-11.  This also supports granting the requested fees. See, e.g., *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016)

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award Plaintiff a service award in the amount of $5,000, Class Counsel $279,115.50 in attorneys' fees and $8,351.51 in costs and expenses from the Settlement Fund as well as payment of $35,583.09 to ILYM Group Inc., for the administration of the settlement.

DATED:  November 15, 2021        **BRADLEY/GROMBACHER LLP**
**LAW OFFICES OF SAHAG MAJARIAN II**


By:    /s/ Marcus J. Bradley
_____
        Marcus J. Bradley, Esq.
        Kiley Lynn Grombacher, Esq.
        Lirit A. King, Esq.
        Sahag Majarian, II, Esq.

        Attorneys for Plaintiff

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT