JS-6

# United States District Court
# Central District of California

Francisco J. Cisneros,

    Plaintiff,

v.

Airport Terminal Services, Inc. et al.

    Defendants.

Case No. 2:19-cv-02798-VAP-SPx

**Order GRANTING Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees (Dkts. 35-36)**

Before the Court is Plaintiff Francisco J. Cisneros's ("Plaintiff") Unopposed Motion for Final Approval of Class Action Settlement (Dkt. 35) and Motion for Service Award, Attorneys' Fees, and Reimbursement of Costs (Dkt. 36).

After considering all the papers filed in support of, and in opposition to, the Motions, the Court **GRANTS** the Motion for Final Approval of the Settlement and **GRANTS** in **PART** the Motion for Attorneys' Fees.

1

# I. BACKGROUND

## A. Procedural History

The parties are familiar with the background of this dispute. In short, this proposed class action settlement represents the outcome of a lawsuit pending for three years, alleging violations of labor and consumer credit laws. The class, as defined in the Settlement Agreement, would include "[a]ny individual who is or was employed as a non-exempt employee by Defendant in the State of California at any time between November 27, 2014, through the date of a Preliminary Approval Order." (Dkt. 35, at 2).

The parties participated in a mediation before an experienced wage and hour mediator on February 28, 2020. (Dkt. 25, at 3). Over the course of several weeks thereafter, the parties reached a Settlement Agreement. (*Id.*). The Court granted Preliminary Approval of the Class Action Settlement on March 26, 2021. (Dkt. 27). Plaintiff now moves for Final Approval of Class Action Settlement and for approval of the Service Award, Attorneys' Fees, and Reimbursement of Costs.

## B. Settlement Terms

The parties prepared a joint settlement agreement ("Settlement Agreement" or "SA"). (Dkt. 25-1, Ex. A). The Settlement Agreement established a settlement fund of $700,000.00. (*Id.*, ¶ 5.1). The parties now seek approval of a non-reversionary $837,431.01 settlement fund. (Dkt. 35, at 1). Plaintiff's counsel explains that, "[s]ubsequent to the distribution of the class date to the settlement administrator, it was determined that a pro-rated increase in the settlement amount was warranted following further

2

investigation and confirmatory discovery performed by Class Counsel." (*Id.*).

The SA allocates $30,000 to PAGA penalties. Class Members will receive 25% of the PAGA Penalty Fund ($7,500.00) which amounts to a net average of $189.70 for each class member. (Dkt. 25, at 5). These amounts are derived from "(i) … the total number of workweeks all Settlement Class Members worked during the period from November 27, 2014, through the date of a Preliminary Approval Order, (ii) determining the number of Settlement Class Members hired on or after March 26, 2017, and multiplying that number by five, and (iii) adding the two sub-totals to determine the "Total Settlement Class Member Shares." (*Id.*, at 6).

The remaining balance of the PAGA Penalty Fund (75% or $22,500.00) is allocated to the Labor and Workforce Development Agency ("LWDA"). (*Id.* at 4).

Class Counsel may seek up to 33% of the settlement fund for attorneys' fees, or $279,115.75. (Dkt. 35, at 2). The Settlement Agreement also provides that Plaintiff will receive a class representative award of $5,000.00. (*Id.*)

All notice and administration expenses (capped at $22,500.00), attorneys' fees and expenses, and the Class Representative award will be paid from the settlement fund. (*Id.* at 4-5). After disbursements to the

class, any money that remains in the settlement fund will be distributed to the California Secretary of State Unclaimed Property Fund. (*Id*. at 7).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited" and should consider the settlement as a whole. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. (*Id*.) A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213

4

F.3d 454, 458 (9th Cir. 2000) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement. *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008-DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998).

### III.  DISCUSSION

**A.  Fairness, Adequacy, and Reasonableness of the Settlement**

### 1. Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027.

As previously found by this Court, the parties engaged in arm's length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel. Additionally, the Settlement Agreement was reached after a full-day mediation conducted before experienced mediator, Lisa Klerman. (Dkt. 25-1, ¶ 7). The Settlement Agreement is therefore presumptively the product of a non-collusive, arms-length negotiation. *See Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (holding that a settlement that is the product of an arms-length negotiation "conducted by capable and experienced counsel" is presumed to be fair and reasonable); *Satchell v. Fed. ExpressCorp*., No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). This factor weighs in favor of approval.

### 2. Strength of Plaintiff's Case and Future Risk

Plaintiff's claims do not appear overwhelmingly strong. Plaintiff claims to believe in his case but recognizes that Defendants have demonstrated their ability to litigate this action through trial and appeal if necessary. (Dkt. 25, at 25-26).

6

Class Counsel maintains that the Settlement Agreement is more than reasonable in light of the litigation risks that Plaintiff and Class Members would face if the case were not settled. These risks include, *inter alia*, dismissal of class allegations, an adverse decision on the merits, loss of motions, the likely lengthy duration of further litigation, and the possibility that a trial would return a less favorable verdict.

Given the relative strength of Plaintiff's claims, and the risks and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable. Hence, these factors favor approval.

### 3. Amount Offered in the Settlement

As noted above, the Settlement Agreement established a settlement fund of $700,000, which the parties have since increased to $837,431.01. (Dkt. 35, at 1). "The estimated average settlement payment to each Class Member is $116.40 and the highest estimated payment is $734.82." (*Id*. at 2).

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003). As discussed in more detail below, the Court finds that the amount offered in settlement weighs in favor of final approval.

### 4. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted in the Court's Order Granting Preliminary Approval, the parties litigated diligently for three years, including participating in comprehensive pre-mediation informal discovery and engaging in one full-day mediation. Accordingly, the Court finds this factor weighs in favor of approval. *See Linney*, 151 F.3d at 1239.

### 5. Experience and Views of Counsel

Class Counsel has ample experience litigating class actions similar to this case and hence has demonstrated the ability to prosecute vigorously on behalf of the class members. *See* Dkt. 35-3. Accordingly, the Court finds this factor weighs in favor of approval.

### 6. Presence of a Governmental Participant

As there is no governmental participant in this action, this factor is irrelevant for the purposes of final approval.

### 7. The Reaction of The Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

8

Following preliminary approval of the settlement by the Court, the Settlement Administrator provided notice to the Settlement Class via mail. (Dkt. 35, at 3). In addition, the Settlement Administrator has operated a toll-free telephone number for Class Members to call with inquiries about the settlement. (*Id.* at 4). During the allotted response period, the Settlement Administrator received no objections and 13 requests for exclusion. (*Id.*; Dkt. 37, at 3-4).

Given the absence of any objections and the small number of requests for exclusion, the Class response is favorable overall. Accordingly, this factor also weighs in favor of approval.

8.   Balancing the Factors

As all the relevant factors favor approval, the Court finds that the proposed Settlement Agreement is fair, reasonable, and adequate and **GRANTS** final approval of the Settlement Agreement.

**B.   Plaintiff's Motion for Attorneys' Fees**

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)). Here, Plaintiff seeks to employ the percentage-of-the fund method and the lodestar method and

requests $279,115.75, i.e., 33.3% of the Gross Settlement Amount, on behalf of Class Counsel.

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50). The Court addresses these factors below:

1. Results Achieved

Class Counsel has shown that it obtained a good result. Counsel has provided a detailed breakdown of the investigation they conducted into each of Plaintiff's claims, the potential defenses to those claims, and the potential financial amounts they could have recovered. *See* Dkt. 36, at 5-11. The Court is satisfied that, "[c]onsidered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery to plaintiff class members, the totality of relief provided under proposed Settlement is more than adequate and well within the range of reasonableness." *Id.* at 12. The result, however, is not extraordinary, and

although the matter was litigated for three years, Counsel did not engage in any motion practice. Accordingly, this factor is neutral.

### 2. Risks of Litigation

Class Counsel assumed some degree of risk by representing Plaintiff, although not extreme risk. The litigation lasted three years, and during that time, Class Counsel expended resources and time conducting a thorough investigation of the factual and legal issues. Class Counsel has also shown that Defendant asserted defenses that created a risk that the Class would receive no recovery. (Dkt. 36, at 5). Nonetheless, these risk factors are present in almost all litigation. There was no extraneous or unique risk here that merits a departure from the 25% benchmark. *Compare Monterrubio*, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), *and Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), *with Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent).

### 3. Contingent Nature of the Fees and Burdens Carried

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. Thus, whether Class Counsel has taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark. *Monterrubio*, 291 F.R.D. at 457. Here, Class Counsel took this case on a contingency fee basis. Thus, this factor weighs slightly in favor of an upward deviation from the benchmark.

### 4. Burdens Carried

Class Counsel has provided information as to the costs in prosecuting this action, which, combined, account for $8,351.51 of the total $279,115.75 requested. (Dkt. 36, at 18). The Court finds these expenses reasonable, but not overly burdensome, so this factor is neutral.

### 5. Skill and Quality of the Work

Class Counsel are experienced and skilled litigators who have successfully litigated many other class action employment cases. *See* Dkt. 35-3. As discussed, they achieved a favorable result in this case. Their work merits a small upward departure from the 25% benchmark.

### 6. Awards Made in Similar Cases

As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Class Counsel request the Court enhance the award, citing to cases in which courts have awarded

attorneys' fees at or above one third of the total settlement fund.  *See* Dkt. 36, at 15-16.  The results achieved in the cited authorities are not sufficiently similar to the result here to be persuasive.  Nevertheless, given the quality of the work performed by Class Counsel, and the contingent nature of the fees, this factor weighs in favor of a modest departure from the 25% benchmark.

### 7. Lodestar Cross-Check

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.  Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.  Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).

1   Here, Class Counsel report that its lodestar "exceeds $219,439.50,"
2   based on a total of approximately more than 278 hours from
3   Bradley/Grombacher, LLP at hourly rates of $775.00 to $950.00 for each
4   attorney on the matter, $260.00/hour for paralegals, and $175/hour for law
5   clerks, totaling $219,439.50 in fees and $162,123.67 in litigation expenses.
6   (Dkt. 35-3, at 13).

8   After a review of Plaintiff's Counsel's declaration, the Court concludes
9   that the lodestar amount is not reasonable considering the work performed
10  and the prevailing rates in the community for attorneys of comparable skill,
11  experience and reputation.  Counsel failed to provide supporting evidence
12  as to the prevailing rates in the community for similar services by lawyers of
13  reasonably comparable skill.   *See* Dkt. 36, at 13.  It appears to the Court
14  that the requested hourly rates, i.e., rates of $775.00 for associates at the
15  firm, are higher than rates for attorneys of comparable skill and experience.
16  Further, Counsel has failed to provide detail regarding the number of hours
17  it spent on this case.

19  The fee Class Counsel seeks reflects a multiplier of 1.27 on the
20  lodestar, which is reasonable for a complex class action case.  *See Milburn*
21  *v. PetSmart, Inc*., No. 1:18-cv-00535, 2019 U.S. Dist. LEXIS 187530, at *29
22  (E.D. Cal. Oct. 28, 2019) (awarding 33.3% of common fund where lodestar
23  amounted to a negative multiplier); *see Hopkins v. Stryker Sales Corp*.,
24  11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013)
25  ("Multipliers of 1 to 4 are commonly found to be appropriate in complex
26  class action cases.").  In the recent $50 million settlement in *Spann*, Judge

Olguin held that a multiplier of 3.07 was "well within the range of reasonable multipliers." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016); *see also Vizcaino*, 290 F.3d at 1052–1054 (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"). Nonetheless, the lodestar does not provide a useful perspective on the attorneys' fees in this case because of the unsupported and inflated hourly rates for Class Counsel.

### 8. Conclusion

In sum, three of the *Vizcaino* factors weigh in favor of a small departure from the 25% attorneys' fee award benchmark and two factors are neutral. On the other hand, Class Counsel's lodestar calculation figures are not reasonable. The Court therefore finds that the facts of this case support a departure from the benchmark by 3% from 25% to 28%.

Accordingly, the Court **GRANTS** in **PART** the application for attorneys' fees equal to 28% of the settlement fund ($234,480.68). As the amount awarded is less than the amount requested by Class Counsel, the difference will become a part of the Net Settlement Amount which will be distributed to Participating Class Members as part of their Settlement Payments. (Dkt. 38-1, at 5).

**C.    Costs**

Class Counsel seeks $8,351.51 in litigation costs.  Class Counsel has submitted a detailed accounting as to those expenses, and the Court finds them to be reasonable.  (Dkt. 35-3, Exhibit B).

Settlement Administration costs reportedly total $35,583.09, a figure that is higher than the amount set forth in the Court's Order Granting Preliminary Approval, which capped notice and administration expenses at $22,500.00.  (Dkt. 35, at 4-5).  Nathalie Hernandez, the Operations Manager of the Settlement Administrator (ILYM Group, Inc.), has submitted a Declaration explaining that "[t]he increase in administration fees is due to the class size increase from when the quote had originally been requested" and that "[t]he incurred additional costs will also include the distribution for this matter."  (Dkt. 35-1, at 5).  The Court accepts the Settlement Administrator's statement of fees and costs, and finds that reimbursement of those expenses is reasonable.  The Court therefore **APPROVES** the reimbursements in the amount sought.

### D.     Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Class Counsel requests a service award of $5,000.00 to Plaintiff. Counsel notes that the named Plaintiff devoted substantial time and effort to this litigation, "from initiating the suit by seeking out qualified and suitable class counsel, to his involvement and dedication to the case at each stage of the lawsuit." (Dkt. 36, at 21). Class Counsel also notes that "Plaintiff undertook significant risk and burden in coming forward and filing suit against Defendant as named Plaintiff." (*Id.* at 22). There is no detail provided about time spent by Plaintiff, such as time for answering written discovery, attending a deposition, or attending the mediation, however.

The Court approves an award of a total of $5,000.00 for the named Plaintiff as an incentive award.

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion for Final Approval of Class Action Settlement.  The Court **GRANTS** in **PART** the Motion for Attorneys' Fees.  It awards attorneys' fees in the amount of $234,480.68 and costs in the amount of $8,351.51, costs to the Settlement Administrator in the amount of $35,583.09, and a Service Award to Plaintiff of $5,000.00.

**IT IS SO ORDERED.**

Dated:    12/15/21

Virginia A. Phillips
United States District Judge